IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BONAN HUANG<br>NAN HUANG,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>Jury trial demanded |

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against defendants Bonan Huang and Nan Huang, and alleges as follows:

## SUMMARY

1. Between at least November 2013 and January 2015 (hereinafter the "relevant period"), defendants Bonan Huang and Nan Huang committed insider trading by misappropriating information from their employer and using this material nonpublic information to enrich themselves through unlawful trading.

2. During the relevant period, defendants Bonan Huang and Nan Huang worked for a large credit card issuer (hereinafter "Credit Card Company") as data analysts, tasked with investigating potential fraudulent credit card activity.

3. As a part of its business, Credit Card Company maintained a nonpublic database that recorded the credit card activity of its millions of customers. Defendants Bonan Huang and Nan Huang accessed this database hundreds, if not thousands of times, to retrieve aggregate credit card sales information relating to numerous consumer retail companies.

4. As set forth herein, defendants Bonan Huang and Nan Huang used the nonpublic sales data from Credit Card Company's database (hereinafter "Sales Database") to make

profitable securities transactions in advance of the public release of these companies' quarterly sales announcements. Defendants Bonan Huang and Nan Huang placed these trades immediately before the companies announced quarterly sales and earnings reports, securing enormous short term profits.

5. By misappropriating the Credit Card Company's data in this way, defendants Bonan Huang and Nan Huang violated Credit Card Company's code of conduct and other rules and regulations Credit Card Company established to regulate its employees use of data and computing resources and breached a fiduciary duty, or obligation arising from a relationship of trust and confidence.

## VIOLATIONS

6. By virtue of the conduct alleged herein, defendants Bonan Huang and Nan Huang engaged in insider trading in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5]. Unless defendants Bonan Huang and Nan Huang are permanently restrained and enjoined, they will again engage in the acts, practices and courses of business set forth in the Complaint and in similar acts, practices, and courses of business.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7. The Commission brings this action under the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]. The Commission seeks to permanently enjoin defendants Bonan Huang and Nan Huang from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, and seeks an order requiring defendants Bonan Huang and Nan Huang to disgorge all profits realized or other ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together with prejudgment

interest. The Commission also brings this action, pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1], for civil penalties against defendants Bonan Huang and Nan Huang.

8. To maintain the status quo and preserve assets sufficient for defendants Bonan Huang and Nan Huang to pay disgorgement, prejudgment interest, and civil penalties in accordance with any final judgment of this Court, the Commission seeks emergency relief: (i) imposing asset freezes on certain brokerage and bank accounts owned or controlled by defendants Bonan Huang and Nan Huang; and (ii) preventing the destruction of documents.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 21, 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u, 78u-1 and 78aa].

10. Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts or transactions constituting the violations alleged occurred within the Eastern District of Pennsylvania, and were effected, directly or indirectly, by making use of the means or instruments or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange.

## DEFENDANTS

11. Bonan Huang, a citizen of the Peoples' Republic of China, age 32, resides in Glen Allen, Virginia. Until January 16, 2015, Huang worked in the fraud department at Credit Card Company as a senior data analyst. Huang began working at Credit Card Company in July 2011 and was terminated by Credit Card Company on January 16, 2015.

12. Nan Huang, age 36, resides in Richmond, Virginia. Until January 16, 2015, Huang worked in the fraud department at Credit Card Company as a senior data analyst. Huang

began working at Credit Card Company in December 2008 and was terminated by Credit Card Company on January 16, 2015.

## COMMONLY-USED TRADING TERMS

13. A stock option, commonly referred to as an "option," gives its purchaser-holder the option to buy or sell shares of an underlying stock at a specified price (the "strike" price) at a later date. Options are generally sold in "contracts," which give the option holder the opportunity to buy or sell 100 shares of an underlying stock.

14. A "put" option gives the purchaser-holder of the option the right, but not the obligation, to sell a security at the specified strike price within a specified time period. Generally, the buyer of a put option anticipates that the price of the underlying security will decrease during a specified amount of time.

15. A "call" option gives the purchaser-holder of the option the right, but not the obligation, to purchase a security at the specified strike price within a specific time period. Generally, the buyer of a call option anticipates that the price of the underlying security will increase during a specified amount of time.

## FACTS

### A. Bonan Huang and Nan Huang's Employment with Credit Card Company

16. Defendants Bonan Huang and Nan Huang worked as senior data analysts in the fraud department at Credit Card Company, which is one of the largest credit card issuers in the United States. In this role, defendants Bonan Huang and Nan Huang were responsible for investigating possible fraud against Credit Card Company and the retailers who were paid via Credit Card Company's network.

## Bonan Huang and Nan Huang Misappropriated Information from Capital One and Traded on this Information

17.     As a part of its business, Credit Card Company maintained a large database compiling the credit card activity of its customers. Specifically, this Sales Database aggregated all the purchases Credit Card Company's customers made. This information was nonpublic. The database was searchable and Credit Card Company's authorized employees had the ability to retrieve a subset of the data in the database by, for example, searching for transactions involving a specific merchant.

18.     On December 23, 2011, January 8, 2013, April 16, 2013, defendant Bonan Huang opened individual, IRA, and Roth IRA trading accounts, respectively, with OptionsHouse, an online trading firm. Defendant Bonan Huang also traded using accounts at Scottrade and TradeStation, but the majority of this trading activity occurred using his accounts at OptionsHouse.

19.     On July 7, 2012, November 28, 2012, and November 29, 2012, defendant Nan Huang opened individual, IRA, and Roth IRA trading accounts, respectively, with OptionsHouse. Defendant Nan Huang also traded using accounts at E*Trade, Interactive Brokers, Legent Clearing, and Penson Financial Services, Inc., but the majority of this trading activity occurred using his accounts at OptionsHouse.

20.     From at least November 2013 through January 2015, defendants Bonan Huang and Nan Huang conducted hundreds, if not thousands, of key word searches on the Sales Database for nonpublic credit card sales data of at least 170 publicly-traded consumer retail companies owed payments by Credit Card Company's customers. Defendants Bonan Huang and Nan Huang conducted searches for sales data for companies for multi-day periods and,

importantly, for multi-month periods. These searches were not done in furtherance of defendants' employment duties at Credit Card Company.

21.     It is believed and therefore averred that these searches allowed defendants Bonan Huang and Nan Huang to view and analyze aggregated sales data for a specific company over a defined time period. Accordingly, defendants Bonan Huang and Nan Huang could determine whether a specific company's sales, through Credit Card Company's network, were increasing or decreasing on a periodic basis.

22.     After conducting these searches, defendants Bonan Huang and Nan Huang frequently saved the sales data for specific companies on Credit Card Company's computers, often designating the saved data by the ticker symbol used for trading the securities of the company. For example, a search for credit card sales for Apple, one of the most heavily-traded stocks in the United States, would be saved as "AAPL," the ticker-symbol used to identify Apple stock.

23.     Defendants knew or were reckless in not knowing that the information they obtained from the Sales Database was material, nonpublic information.

### B. The Extent of Bonan Huang and Nan Huang's Trading

24.     From January 2012 to January 2015, defendants Bonan Huang and Nan Huang deposited a total of $147,300 into their six OptionsHouse accounts. During this time period they transferred approximately $1,763,500 out of these six accounts. As of January 15, 2015, the total balance in the six accounts was approximately $1,063,000. Accordingly, Bonan Huang and Nan Huang made approximately $2,826,500 trading during this period in their OptionsHouse account. This represents a three-year return of approximately 1,819%.

6

25. Bonan Huang transferred some of the trading proceeds from his OptionsHouse accounts to bank accounts at Bank of America. Nan Huang transferred some of the trading proceeds from his OptionsHouse account to bank accounts at Barclays Bank Delaware.

26. Defendant Bonan Huang's accounts at Scotttrade and Tradestation appear to have been used to conduct similar trading as his accounts at OptionsHouse. Nan Huang's accounts at InterActive Brokers, E*Trade, and Legent appear to have been used to conduct similar trading as his accounts at OptionsHouse.

27. Defendants Bonan Huang and Nan Huang did not make identical trades involving these consumer retail companies but their trades were often similar. The allegations described below regarding defendants Bonan Huang and Nan Huang's trading of Companies A, B, and C, demonstrate how they misappropriated material nonpublic information from Credit Card Company to enrich themselves.

### Trading on Company A

28. On January 15, 2014, Company A, a consumer retail company that sells outdoor sporting goods, announced it would publicly release its fourth quarter and full fiscal year 2013 financial results before the market opened on February 13, 2014.

29. On February 7, 2014 and February 8, 2014, defendant Nan Huang conducted a search in the Credit Card Company's nonpublic Sales Database for credit card sales data for Company A. On February 12, 2014, at approximately 6:00 a.m., defendant Bonan Huang repeated this search.

30. On February 12, 2014, when Company A's stock price was approximately $70 per share, defendant Bonan Huang purchased 19 contracts of put options on Company A's stock with strike prices ranging from $65 to $70 and expiration dates of February 22, 2014, and sold

7

13 put options on Company A's stock with a strike price of $60 and expiration date of February 22, 2014, for a total net cost of $4,277. Purchasing and selling these put options in this combination meant that Bonan Huang would maximize his profit if Company A's share price decreased to a range of $60 to $65 imminently.

31. Also on February 12, 2014, when Company A's stock price was approximately $70, defendant Nan Huang purchased 170 contracts of put options on Company A's stock with strike prices of $65 and $70 and expiration dates of February 22, 2014, for $51,890. Purchasing these put options meant that defendant Nan Huang would profit from a decrease in the share price for Company A's stock by February 22, 2014.

32. Before the market opened on February 13, 2014 Company A released its sales and earnings data for the fourth quarter of 2013. Company A's announced that their same quarter sales decreased approximately 10%, and the share price for Company A decreased from $69.81 to $64.26, or approximately 8% that day.

33. On February 13, 2014, Bonan Huang closed his options positions for Company A for an illegal profit of $1,450.05, realizing an approximate 34% return on his one-day investment. On February 13, 2014, defendant Nan Huang sold his options for Company A for $107,950 realizing an illegal 108% return on his one-day investment.

**Trading on Company B**

34. On April 22, 2014, Company B, a consumer retail company that sells women's and men's fashion accessories, announced that it would publicly report its third quarter financial results on the morning of April 29, 2014.

35. On April 27, 2014, defendant Bonan Huang conducted a search in Credit Card Company's nonpublic Sales Database for credit card sales data for Company B.

36. On April 28, 2014, when Company B's stock price was trading at approximately $50 a share, defendant Bonan Huang purchased 420 contracts of put options on Company B's stock with strike prices ranging from $46 to $50.50 and expiration dates ranging from May 2, 2014 to May 17, 2014, for $63,440. Purchasing these put options meant that defendant Bonan Huang would profit from an imminent decrease in Company B's stock price.

37. Also on April 28, 2014, defendant Nan Huang purchased 230 contracts of put options on Company B's stock with a strike price of $50 and an expiration date of May 2, 2014, for $38,830. Purchasing these put options meant that defendant Nan Huang would profit from an imminent decrease in Company B's stock price.

38. On April 29, 2014, Company B publicly released its sales and earnings data for the third quarter of 2013. This data showed that Company B's same quarter sales decreased 7%, and the share price for Company B fell almost $5 a share from April 28, 2014 to the market close on April 29, 2014.

39. On April 29, 2014 defendant Bonan Huang sold his options for Company B for $147,140 realizing a one-day illegal return of approximately 132%, and defendant Nan Huang sold his options for Company B for $97,200 realizing a one-day illegal return of approximately 150%.

**Trading on Company C**

40. On June 16, 2014, Company C, a consumer retail company that sells "fast-casual" food, announced that it would publicly announce its second quarter 2014 financial results after the market closed on July 21, 2014.

9

41.     On July 20, 2014, both defendant Bonan Huang and defendant Nan Huang conducted a search in the Credit Card Company's nonpublic Sales Database for credit card sales data for Company C.

42.     On July 21, 2014, when Company C's stock price was approximately $589 a share, defendant Bonan Huang purchased 21 contracts of "call" options on Company C's stock with strike prices ranging from $582.50 to $627.50 and expiration dates ranging from August 5, 2014 to November 5, 2014, for $43,270. Purchasing these call options meant that defendant Bonan Huang would profit from an increase in the price of Company C's stock. Some of the options contracts defendant Bonan Huang purchased were executed on the Philadelphia Stock Exchange located in the Eastern District of Pennsylvania.

43.     On July 21, 2014, defendant Nan Huang purchased 34 contracts of call options on Company C's stock with strike prices ranging from $597.50 to $617.50 and expiration dates ranging from August 5, 2014 to November 5, 2014, for $56,500. Purchasing these call options meant that defendant Nan Huang would profit from an increase in the price of Company C's stock.

44.     On July 21, 2014, after the market closed, Company C released its sales and earnings data for the second quarter of 2014. This data showed that Company C's same quarter revenue increased by 28.6%. By market close on July 22, 2014, Company C's share price had increased from approximately $590 a share to approximately $660 a share, for a one-day increase of approximately 10.6%.

45.     On July 22, 2014 defendant Bonan Huang sold his options for Company C for $133,066, realizing a one-day illegal return of approximately 208%, and on July 22, 2014 (and

dates shortly thereafter) defendant Nan Huang sold his options for Company C for approximately $244,710, realizing a short-term illegal return of approximately 333%.

### C. Defendants Bonan Huang and Nan Huang Breached Their Duty to Capital One and Violated Capital One's Policies

46.     Defendants Bonan Huang and Nan Huang knew or were reckless in not knowing that they owed their employer a fiduciary duty, or an obligation arising from a relationship of trust and confidence, to maintain the confidentiality of Credit Card Company's data and not to use it for their own personal use.

47.     During the relevant time period, Credit Card Company had explicit policies and procedures in place imposing an obligation on its employees, including defendants Bonan Huang and Nan Huang, to maintain the confidentiality of its information and prohibiting its employees, from trading on material nonpublic information.

48.     Credit Card Company's "End User Responsibilities and Acceptable Use Standard," which applied to defendants Bonan Huang and Nan Huang stated:

> Use all computing assets primarily for business purposes. Ensure that any personal use does not interfere with normal business activities, involve any illegal or illicit behaviors, associate with any for-profit outside business activity, involve solicitation, or impact the [Credit Card Company] brand.

49.     Credit Card Company's "Code of Business Conduct and Ethics," dated July 2013, which applied to defendants Bonan Huang and Nan Huang, specifically and explicitly proscribed trading on the basis of material nonpublic information obtained during the course of employment with Credit Card Company:

> **Do not engage in insider trading or tipping.**
>
> [Credit Card Company] will not tolerate or excuse violations of insider trading laws. In general, these laws prohibit buying or selling stock in any public company, including [Credit Card Company], when you have material information that has not been released to the public.

11

> You must also refrain from communicating material nonpublic information to anyone who might use it to buy or sell securities. "Tipping" others may violate laws and can result in penalties to all parties involved, including [Credit Card Company]. For additional information, see the Securities Law Policy.
>
> Material information not available to the public may be provided only to colleagues who need the information to perform their duties. If you have access to such information, you must not use it to buy or sell related securities, stock or derivatives until the second business day after the information has been made public. Even if public announcements are made regarding inside information, you may not release information that is still confidential.
>
> The same restrictions apply to trading stock of [Credit Card Company] business partners; you cannot use any material nonpublic information you may obtain about their businesses for your own personal advantage . . . . In addition, you may not communicate material nonpublic information to others who could then use the information to buy or sell securities.
>
> When in doubt, assume information is material and nonpublic, and do not act upon it. Simply put, you must not take part in any trading that may appear improper.

50. By misappropriating Credit Card Company's confidential sales data for consumer retail companies, and then trading in these companies as described above, defendants Bonan Huang and Nan Huang violated Credit Card Company's stated policies and procedures regarding confidentiality and securities trading and breached their duty to Credit Card Company.

51. In each instance, the misappropriated information was material – it would be important to a reasonable investor in making his or her investment decision, and, indeed, it was important to defendants Bonan Huang and Nan Huang, when misappropriating the information. There is a substantial likelihood that misappropriated nonpublic information would have been viewed by a reasonable investor as having significantly altered the total mix of information available to investors.

52. At all times relevant to this Complaint, defendants Bonan Huang and Nan Huang acted knowingly and/or recklessly.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

53. The Commission re-alleges and incorporates the allegations in paragraphs 1 through 52.

54. By engaging in the conduct described above, from at least November 2013 through January 2015, defendants Bonan Huang and Nan Huang, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    (a)    employed devices, schemes or artifices to defraud;

    (b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    (c)    engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

55. By engaging in the foregoing conduct defendants Bonan Huang and Nan Huang violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court enter a final judgment:

### I.

Permanently restraining and enjoining defendants Bonan Huang and Nan Huang from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Ordering defendants Bonan Huang and Nan Huang to disgorge the unlawful trading profits derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

### III.

Ordering defendants Bonan Huang and Nan Huang to pay a civil penalty up to three times the profits made pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

### IV.

Granting such other and further relief as this Court may deem just, equitable, and necessary.

Respectfully submitted,

BY: _____
G. Jeffrey Boujoukos (PA Bar 67215)
David L. Axelrod
Christopher J. Kelly
Attorneys for Plaintiff
Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100
Facsimile: (215) 597-2740