# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION

               Plaintiff,

     v.

BONAN HUANG, et al.

               Defendants.

Case No.  2:15-cv-00269-MAK

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
APPENDIX TO MOTION FOR SUMMARY JUDGMENT AGAINST
<u>DEFENDANTS BONAN HUANG AND NAN HUANG</u>**


**PART 1 OF 10
(0001-0101)**

## TABLE OF CONTENTS

| EX. | DESCRIPTION | PAGE(S) |
|---|---|---|
| I. | Declaration of Dwight C. Lee Brooks dated October 23, 2015 | 0001-4 |
| | Exhibit 1:  Code of Conduct, effective July 2013, Bates labeled SECP-COF-00006067-6099 | 0005-37 |
| | Exhibit 2:  End User Standard, effective October 3, 2014 Bates labeled SECP-COF-00006308-6315 | 0038-45 |
| II. | Declaration of Matthew D. Cain, Ph.D dated October 23, 2015 | 0046-47 |
| | Exhibit 1:  Expert Report of Matthew D. Cain dated September 18, 2015 | 0048-66 |
| | Exhibit 2:  Defendants' Trades around Quarterly Announcements of Companies for Which They Searched and Downloaded Credit Card Transactions Information from Capital One | 0067-88 |
| III. | Declaration of Stephen Graham dated October 23, 2015 | 0089-93 |
| | Exhibit 1:  Expert Report of Stephen Graham dated September 18, 2015 | 0094-150 |
| | Exhibit 2:  Rebuttal Report of Stephen Graham dated October 16, 2015 | 0151-173 |
| | Exhibit 3:  Defendants' Trades Preceded by Query to Teradata | 0174-192 |
| IV. | Declaration of Dustin E. Ruta dated October 23, 2015 | 0193-201 |
| | Exhibit 1:  Dr. Torben Voetmann's Expert Rebuttal Report dated October 9, 2015 | 0202-256 |
| | Exhibit 2:  Dr. Torben Voetmann's Deposition Transcript dated October 16, 2015 | 0257-477 |
| | Exhibit 3:  Cabela Inc.  Press Release dated January 15, 2014 | 0478 |
| | Exhibit 4:  Portions of Bonan Huang's searches of Capital One's database for credit card sales data for Cabela | 0479-480 |

| DESCRIPTION | PAGE(S) |
|---|---|
| Exhibit 5:  Portions of Nan Huang's searches of Capital One's database for credit card sales data for Cabela. | 0481 |
| Exhibit 6:  OptionsHouse trading activity | 0482 |
| Exhibit 7:  OptionsHouse trading activity | 0483 |
| Exhibit 8:  Cabela Inc. Press Release dated Febuary 13, 2014 | 0484-496 |
| Exhibit 9:  Cabela Inc. daily share price | 0497 |
| Exhibit 10:  Chipotle Press Release dated June 16, 2014 | 0498 |
| Exhibit 11:  Portions of Bonan Huang and Nan Huang's searches on Capital One's database for credit card sales data for Chipotle | 0499-500 |
| Exhibit 12:  OptionsHouse trading activity | 0501 |
| Exhibit 13:  Partially redacted OptionsHouse trading activity | 0502-504 |
| Exhibit 14:  Chipotle Press Release dated July 21, 2014 | 0505-512 |
| Exhibit 15:  Chipotle daily share price | 0513 |
| Exhibit 16:  United Airlines production bates number SEC-UNITED-E-0000003-6 | 0154-517 |
| Exhibit 17:  United Airlines production bates number SEC-UNITED-P-0000012-15 | 0518-521 |
| Exhibit 18:  Yahoo! Finance download | 0522-523 |
| Exhibit 19:  Restoration Hardware Press Release dated September 10, 2013 | 0524-537 |
| Exhibit 20:  Capital One production bates number SECP-COF-00001848-850 | 0538-540 |
| Exhibit 21:  OptionsHouse production file name 4ZE89435.xls | 0541-544 |
| Exhibit 22:  OptionsHouse production file name 5PD45586.xls | 0545-548 |

**DESCRIPTION**                                          **PAGE(S)**

<u>Exhibit 23</u>: Plaintiff's First Set of Interrogatories          0549-562
Directed to Bonan Huang

<u>Exhibit 24</u>:   Plaintiff's First Set of Interrogatories        0563-576
Directed to Nan Huang

<u>Exhibit 25</u>:  Plaintiff's Second Set of Interrogatories        0577-589
Directed to Bonan Huang

<u>Exhibit 26</u>:  Plaintiff's Second Set of Interrogatories        0590-602
Directed to Nan Huang

<u>Exhibit 27</u>:  Plaintiff's First Set of Requests for Admission  0603-664
Directed to Bonan Huang

<u>Exhibit 28</u>:  Plaintiff's First Set of Requests for Admission  0665-717
Directed to Nan Huang

<u>Exhibit 29</u>:  Plaintiff's Second Set of Requests for Admission 0718-722
Directed to Bonan Huang

<u>Exhibit 30</u>:  Plaintiff's Second Set of Requests for Admission 0723-731
Directed to Nan Huang

<u>Exhibit 31</u>:  Defendant's Responses and Objections to Plaintiff's  0732-737
 First Set of Interrogatories Directed to Bonan Huang

<u>Exhibit 32</u>:  Defendant's Responses and Objections to Plaintiff's  0738-743
First Set of Interrogatories Directed to Nan Huang

<u>Exhibit 33</u>:  Defendant Bonan Huang's Answers to Plaintiff's   0744-748
Second Set of Interrogatories

<u>Exhibit 34</u>:  Defendant Nan Huang's Answers to Plaintiff's     0749-753
Second Set of Interrogatories

<u>Exhibit 35</u>:  Defendant Bonan Huang's Supplemental Answers to  0754-757
Plaintiff's Second Set of Interrogatories, dated September 28, 2015

<u>Exhibit 36</u>:  Defendant Nan Huang's Supplemental Answers to    0758-761
Plaintiff's Second Set of Interrogatories, dated September 28, 2015

<u>Exhibit 37</u>:  Defendant Bonan Huang's Answers to Plaintiff's   0762-769
First Set of Requests for Admission

| DESCRIPTION | PAGE(S) |
|---|---|
| <u>Exhibit 38</u>:  Defendant Nan Huang's Answers to Plaintiff's First Set of Requests for Admission | 0770-777 |
| <u>Exhibit 39</u>:  Defendant Bonan Huang's Responses to Plaintiff's Second Set of Requests for Admission | 0778-782 |
| <u>Exhibit 40</u>:  Defendant Nan Huang's Responses to Plaintiff's Second Set of Requests for Admission | 0783-787 |
| <u>Exhibit 41</u>:  Scottrade, Inc. address information downloaded from website | 0788-789 |
| <u>Exhibit 42</u>:  Apex Clearing Corporation address information downloaded from website | 0790-791 |
| <u>Exhibit 43</u>:  MB Trading address information downloaded from website | 0792-793 |
| <u>Exhibit 44</u>:  COR Clearing, LLC address information downloaded from website | 0794 |
| <u>Exhibit 45</u>:  OM Securities, LLC address information downloaded from website | 0795-796 |
| <u>Exhibit 46</u>:  TradeStation Securities, Inc. address information downloaded from website | 0797-799 |
| <u>Exhibit 47</u>:  Interactive Brokers, LLC address information downloaded from website | 0800-801 |
| <u>Exhibit 48</u>:  E*Trade Financial Corporation address information downloaded from website | 0802-803 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | Case No. 2:15-cv-00269-MAK |
| Plaintiff, | |
| v. | |
| BONAN HUANG, et al. | |
| Defendants. | |

## DECLARATION OF DWIGHT C. LEE BROOKS

I, Dwight C. Lee Brooks, based on my personal knowledge, hereby declare and state:

1. I am over eighteen years of age and competent to make this declaration.

2. I am employed by Capital One Services, LLC as a Senior Director in Data Analytics. Capital One Services, LLC provides services to Capital One Financial Corporation ("Capital One") and its subsidiaries. Capital One is a diversified bank that offers a broad array of financial products and services to consumers, small businesses, and commercial clients, including credit cards.

3. Between July 2011 and January 16, 2015, Bonan Huang was employed by Capital One Services, LLC as a Senior Data Analyst.

4. Between December 2008 and January 16, 2015, Nan Huang was employed by Capital One Services, LLC as a Senior Data Analyst.

5. Most recently, Bonan Huang was responsible for analyzing potential fraudulent credit card transactions, and Nan Huang was responsible for providing data used in the evaluation of certain Capital One associates' job performance.

6.      As its employees, Bonan Huang and Nan Huang owed various duties to Capital One, including as set forth in the company's policies and procedures.

7.      Among other things, Bonan Huang and Nan Huang were bound by the following policies:  (1) Capital One Financial Corporation Code of Business Conduct and Ethics ("Code of Conduct"); and (2) Capital One Financial Corporation End User Responsibilities and Acceptable Use Standard ("End User Standard").  A true and correct copy of the Code of Conduct, effective July 2013, is attached as Exhibit 1.  A true and correct copy of the End User Standard, effective October 3, 2014, is attached as Exhibit 2.  At all times between February 2012 and January 2015, the provisions in the Code of Conduct and End User Standard relating to the prohibitions against using Capital One information or property for personal use were the substantially the same.

8.      All Capital One employees, including Bonan Huang and Nan Huang, were given Code of Conduct training annually to ensure that they understood that they were prohibited from using Capital One's information and property, including Capital One's credit card transaction information, for their own personal use.

9.      As employees of Capital One's Fraud Decision Support Services department, Bonan Huang and Nan Huang had access to Capital One's database of credit card transactional information, referred to as the Teradata Database Management System ("Teradata").  Among other things, Teradata held data concerning individual credit card transactions and authorizations at each merchant accepting Capital One credit cards.

10.     Capital One did not sell or otherwise disclose the credit card transaction information in Teradata to anyone outside the company.  The aggregated credit card transaction information stored in Teradata is Capital One's proprietary, nonpublic information that is supposed to be used solely for Capital One's internal purposes, such as resolving fraud inquiries

2

or billing issues.  Capital One takes steps to protect the information from being used or disseminated improperly, including through the prohibitions set forth in the Code of Conduct. Capital One only grants access to Teradata to those employees who have a legitimate work-related reason to use such information for the performance of their duties.

11.     Bonan Huang and Nan Huang wrote computer codes using Simple Query Language, in addition to other technologies, to download from Teradata aggregated Capital One credit card transaction and authorization data with respect to numerous merchants.

12.     Upon learning of Bonan Huang's and Nan Huang's activities in December 2014, Capital One began investigating defendants' use of Capital One's data and concluded that defendants violated the Code of Conduct by repeatedly downloading Capital One's merchant credit card transaction information for their own personal use.  Nan Huang had no legitimate work-related reason to search for any merchant-related credit card transaction information, and Bonan Huang had no legitimate work-related reason to search for merchant specific information in the manner and scope in which he was.  Bonan Huang's and Nan Huang's Teradata searches for merchant specific information vastly exceeded those searches run by their colleagues by orders of magnitude.  Whereas, in 2014, Bonan Huang ran a total of 12,069 searches for credit card transaction information on specific merchants with respect to authorized and posted transactions, and Nan Huang ran a total of 3,173 searches for such information, all of the other more than 2,000 employees of Capital One with access to Teradata collectively ran a total of 3,811 such searches.

13.     On January 16, 2015, Capital One terminated Bonan Huang and Nan Huang for cause for violating the Code of Conduct and directed them to turn in their work-issued computers and smartphones.

0003

14.     At no point in time did Bonan Huang or Nan Huang seek permission or disclose to Capital One that they were trading securities of companies for which they were searching Teradata for Capital One' proprietary and nonpublic merchant transaction information.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 23, 2015, at Goochland, Virginia.

Dwight C. Lee Brooks

4



Capital One Financial Corporation

# Code of Business Conduct and Ethics



Capital One Public                                        Updated July 2013

Confidential Treatment Requested
by Capital One Financial Corp.

# Letter from Capital One's Chairman and CEO

Dear Associate

To be known as one of the most successful and trusted financial services companies in the world, we must continue to conduct ourselves—both as an organization and as individuals—according to the highest standards of honesty and fairness. Our core Values of *Excellence* and *Do the Right Thing* embody our commitment to ethical business practices and inspire our culture and the decisions we make each day.

Additionally, our Code of Business Conduct and Ethics outlines our responsibilities as associates. Each of us has a role to play in building and maintaining our world-class brand and reputation. By adhering to the Code, you are doing your part to reinforce our Values and ensure that Capital One is recognized for the highest standards, integrity and professionalism.

Our Code is more than just a guideline of "do's and don'ts." It provides practical information and resources that help us enhance our relationships with our customers, each other, and all of the people that support Capital One's success.

Our commitment to living our Values and living up to exacting standards for integrity and professionalism is essential to building an enduringly great company. All of our stakeholders —our customers, communities, regulators and shareholders—expect nothing less. I ask for your continued commitment and support in fulfilling all of our ethical commitments and living our Values every day at Capital One.

Sincerely,

Richard D. Fairbank
Chairman and Chief Executive Officer
Capital One Financial Corporation

**Capital One Public**

Confidential Treatment Requested
by Capital One Financial Corp.

■ Code of Business Conduct and Ethics

# Table of Contents

Resources Available to Assist You                                    1

I  Understanding the Code of Conduct                         3

II  Managing Capital One's Information                       6

III  Avoiding Conflicts of Interest                             12

IV  Conducting Our Business                                    17

V  Working With Each Other                                    22

Capital One Public

Confidential Treatment Requested
by Capital One Financial Corp.

◼ Code of Business Conduct and Ethics

# Resources Available to Assist You

The Code of Business Conduct and Ethics describes broad principles governing Capital One and our associates' conduct. It addresses key issues contained in Capital One's other policies, such as conflicts of interest, corporate opportunities, confidentiality, fair dealing, protection and proper use of company assets, compliance with rules, laws, regulations and requirement to report illegal or unethical behavior. Additional information related to this policy, including Conflict of Interest Disclosure and Bank Bribery Act Compliance Procedures, can be found in the Policy section of One Place.

| Additional Capital One Policies Referenced in the Code |
| --- |
| Anti Money Laundering Policy (5301) |
| Compliance Management Policy (5300) |
| Corporate Security Policy (0180) |
| Human Resources Policy (1400) |
| Information Security Policy (2701) |
| Information Security Standards (2701.1.001) |
| End User Responsibilities and Acceptable Use Standard (2701.1.002) |
| Information Handling Procedures (2701.2.001) |
| Enterprise Business Continuity Management Policy (2702) |
| Securities Law Policy (0303) |
| Third Party Management Policy (1502) |
| Bank Bribery Act/Anti-Bribery Compliance Standard (0103.1.001) |
| Foreign Corrupt Practices Act Standard (5300.1.022) |

Confidential Treatment Requested
by Capital One Financial Corp.

▓ Resources Available to Assist You

You must immediately report any suspected or potential violation of this Code, other Capital One policies or applicable laws or regulations. If you are ever unsure about what to do, contact your manager or one of the resources below.

| Where to Get Help | |
|---|---|
| ETHICS LINE—The ETHICS LINE is operated by an external company and is staffed 24 hours a day, seven days a week. Calls are anonymous and are not recorded. | ▪ US & Canada: (866) 785-9735 (toll-free)<br>▪ UK: 0808 234 7482 |
| Human Resources | ▪ U.S. (Associate Relations Center): (804) 284-6600 or (888) 376-8836, option 6 (toll-free)<br>▪ Europe (Ask HR Europe Helpdesk): 0800 952 6100<br>▪ Canada (HR Consulting, Associate Relations): (416) 549-2553 |
| Corporate Security Services | ▪ U.S./Canada/Europe: (804) 284-3030 |
| Information Security<br>*Computer Related Security Event* | ▪ Occurs when computing devices are misused to gain unauthorized access to information<br>▪ Examples include sharing of log-in credentials, unauthorized use of other's work computers/laptops, and network intrusion<br>▪ Should be reported via detailed email to informationsecurityclrt@capitalone.com |
| Information Security<br>*Data Security Event* | ▪ Includes any event in which a customer, consumer, or associate's personal information was or is reasonably believed to have been acquired or reviewed by an unauthorized person or business<br>▪ Examples include customer information being sent to another customer and/or sensitive |

**Formatted:** Default Paragraph Font

Confidential Treatment Requested
by Capital One Financial Corp.

0009
SECP-COF-00006071

■ Resources Available to Assist You

Information found in the trash

- ■ Should be reported via the "Data
  Security Event" option in Archer
  (under "Apps" on Pulse)

Confidential Treatment Requested
by Capital One Financial Corp.

0010
SECP-COF-00006072

# I  Understanding the Code of Conduct

## Our Commitment to the Code of Conduct

### We are committed to the highest personal and professional standards.
This Code of Business Conduct and Ethics is a statement of Capital One's commitment to meeting and exceeding the requirements of the laws and regulations that apply to it, and to maintaining its reputation for honesty, fair dealing and integrity. By working with Capital One, you are agreeing to uphold these commitments.

The Code is not intended to be an employment contract and does not alter the terms and conditions of your employment, which is at-will. It is intended to provide guidance to help you address a variety of situations. However, the Code cannot address every conceivable situation. The fact that an issue is not specifically addressed in the Code does not relieve you of your obligation to maintain the highest ethical standards under any and all circumstances.

Nothing in the Code or the referenced policies is intended, nor should be construed, to interfere with or prohibit associates from discussing their wages, hours and other terms and conditions of employment for purposes of engaging in protected concerted activity, consistent with labor laws.

## Applicability

### The Code applies to all employees, executives and members of the Board of Directors.
All directors, officers and associates, including those employed by Capital One's subsidiaries in all businesses, countries and regions, must comply with the Code. If you engage or manage vendors, agents, contractors, consultants or temporary workers, please refer to the Third Party Management Policy.

## Governance

The Board of Directors is responsible for approving the Code and any material changes to the Code. The Chief HR Officer is responsible for overseeing and managing the Code, including providing guidance on the implementation and communication of the Code; ensuring consistency in application of the Code; ensuring and overseeing the establishment of standards and procedures for the Code as necessary or appropriate; providing advisory input to individual owners of policies referenced in the Code (at the policy owner's discretion); and identifying and proposing material changes to the Code as necessary or appropriate, subject to approval by the Board. The Chief HR Officer or his or her designee is authorized to make and approve non-material changes to the Code. Owners of individual policies referenced in the Code may, at their own discretion, bring issues to the Chief HR Officer for advisory input.

In carrying out these responsibilities, the Chief HR Officer may consult with the company's Corporate Ethics function or Ethics Officer for additional subject matter expertise or when further advice or counsel is

Confidential Treatment Requested
by Capital One Financial Corp.

■ Understanding the Code of Conduct

warranted, e.g., matters raising significant ethics, reputation or legal issues. The Chief HR Officer and the Ethics Officer each have the authority, as either may determine necessary or appropriate, to consult with the Executive Committee on matters related to the Code.

The Board must approve any waiver of the Code for Directors and Executive Committee members. Except with respect to the responsibility to approve such waivers and the approval of material changes to the Code, any of the Board's responsibilities hereunder are performed by the Audit Committee.

## Compliance

**All associates must comply with this Code.**
It is your responsibility to learn, understand and comply with all provisions of the Code. Ignorance of the Code is not an acceptable excuse for violating any of its provisions.

Capital One managers are responsible for ensuring that the individuals they supervise comply with the Code. If you have a question or do not understand something in the Code, ask your manager or contact Associate Relations (Ask HR Europe Helpdesk for UK Associates, Onsite HR Representative for India).

**Comply with other Capital One policies.**
This Code should be read in conjunction with the other Capital One policies that apply to you. In some cases, the rules of another policy may be more restrictive than those outlined in the Code or vice versa. If so, you are expected to follow the more restrictive rule.

**Comply with applicable laws and regulations.**
You are responsible for knowing, acting in good faith under and complying with the laws and regulations that govern Capital One. If you have any doubt about whether your action or inaction could violate a law or regulation, ask your manager or contact Associate Relations (Ask HR Europe Helpdesk for UK associates, Onsite HR Representative for India). In some cases, local laws and regulations may set higher standards than the rules outlined in the Code, or vice versa. If so, you are expected to follow the highest applicable standard.

**Use good judgment.**
Capital One expects you to exercise good judgment and avoid engaging in any activities that might give even the appearance of unlawful or unethical behavior. Before you act, ask yourself the following questions.

- ■ Is this the right thing to do?
- ■ Is this legal?
- ■ Am I authorized to do this?
- ■ Is this prohibited by the Code and other applicable policies?
- ■ Would I want to see this reported in the news media?

If you have any doubt about the answers, stop and seek guidance from your manager or one of the resources listed on page 2.

Confidential Treatment Requested
by Capital One Financial Corp.

0012
SECP-COF-00006074

■ Understanding the Code of Conduct

## Enforcement

**Immediately report suspected or potential violations.**

You must immediately report any suspected or potential violation of this Code, other Capital One policies or applicable laws or regulations. If you are ever unsure about what to do, ask your manager or use one of the resources listed on page 2.

**Retaliation or failure to report retaliation is prohibited.**

Capital One prohibits any retaliatory action against anyone who, in good faith, raises concerns or questions regarding this Code, other Capital One policies or applicable laws or regulations, including but not limited to concerns related to ethics, discrimination or harassment.

If you believe that you or someone else is being or has been retaliated against, you are obligated to report it to your manager or Associate Relations (Ask HR Europe Helpdesk for UK associates, Onsite HR Representative for India). Capital One takes claims of retaliation seriously. Allegations of retaliation will be investigated and appropriate action will be taken. Individuals who engage in retaliatory conduct will be subject to disciplinary action up to and including termination of employment.

**Handle information sensitively.**

You must handle all information related to the report of a suspected or potential violation of this Code, other Capital One policies or applicable laws and regulations sensitively. Capital One has a compelling interest in protecting the integrity of investigations. In certain circumstances, Capital One has a legitimate business reason to preserve the confidentiality of information shared or discussed during an investigation. This includes instances where a witness or investigation participant may need protection from harassment, intimidation or retaliation; evidence may be destroyed or altered; testimony is in danger of being fabricated or altered; or willful efforts to conceal facts or evidence may occur. Where the company determines that strict confidentiality is needed in instances raising such concerns, associates must follow any confidentiality instructions and should communicate it only to those with a business need to know or if required in connection with any governmental investigation or report.

**Cooperate with investigations.**

You must cooperate fully with any internal or external investigation of a suspected or potential violation of this Code, other Capital One policies or applicable laws and regulations. Failure to cooperate, knowingly making false statements or otherwise misleading internal or external investigators is grounds for disciplinary action up to and including termination of employment. Such behavior may also be a criminal act that can result in severe penalties.

## Non-Compliance

**Non-compliance may result in termination or civil and criminal penalties.**

The Code is in place to outline associates' responsibilities. Capital One will stop conduct that does not comply with the Code as soon as reasonably possible. Subject to law and existing agreements, noncompliance with the Code, other Capital One policies that apply to you, or laws and regulations that govern Capital One may result in disciplinary action, up to and including termination from employment.

Confidential Treatment Requested
by Capital One Financial Corp.

0013
SECP-COF-00006075

■ Understanding the Code of Conduct

Violations of the Code or of other Capital One policies may also be violations of the law and may result in civil and criminal penalties for you, your manager and Capital One.

Confidential Treatment Requested
by Capital One Financial Corp.

0014
SECP-COF-00006076

■ Code of Business Conduct and Ethics

# II Managing Capital One's Information

### Customer Information

**Protect the privacy of all customer and consumer information.**
Each of us has a responsibility to protect the confidentiality of information that customers and consumers entrust to us. If you do not have a legitimate business reason to access customer or consumer information, do not seek to do so. If you have legitimate access, you must protect against the actual or potential unauthorized release or use of such information. If you must share Capital One information outside of the company for business purposes, share only the minimum information needed for the business services provided and only with appropriate approvals and controls (e.g., encryption). Outside parties who are given access to this information are also responsible for protecting it. You should ensure outside parties are aware of and are bound to comply with this obligation. If you need additional guidance to ensure authorized use of data transmission protocols, contact the Information Security Project Help mailbox.

> **Formatted:** Default Paragraph Font

### Business and Financial Records

**Ensure the integrity of Capital One's public financial reports.**
Capital One is committed to full, fair, accurate, timely and understandable disclosure in public reports and documents filed with or provided to regulatory authorities, stockholders and the public. Capital One's financial statements and reports must be prepared in accordance with generally accepted accounting principles and fairly present, in all material respects, the financial condition and results of our operations. If you are involved in, or supervise the preparation of such reports, you must ensure they meet these requirements and protect such information as confidential until made public.

**Handle all Capital One information and records properly.**
You must help ensure that reporting of any and all business information (financial or otherwise) is accurate, complete and timely, regardless of its form (computerized, paper or otherwise). You must

- Accurately record items including, but not limited to, cash records, costs, sales, shipments, time sheets, vouchers, bills, payroll and benefits records, test data and regulatory data.
- Follow all laws, external accounting requirements and internal procedures for reporting financial and other business information.
- Never deliberately make a false or misleading entry in a report or record.
- Never establish an unrecorded fund for any purpose.
- Never alter or destroy Capital One records, except as authorized by established policies and procedures.
- Never sell, purchase, transfer or dispose of Capital One assets without proper authorization and documentation.

Confidential Treatment Requested
by Capital One Financial Corp.

■ Code of Business Conduct and Ethics

- Cooperate with our internal and external auditors, and never seek to improperly influence, coerce, manipulate or mislead them.
- Never improperly use, divulge or transmit confidential company business and financial information.

**Report hours worked accurately.**
Capital One is committed to following all wage and hour rules and regulations including minimum wage, overtime and child labor laws. You are expected to devote the necessary time to your work and to make the best use of your time. If you are required to record your time, it must be recorded exactly as it occurred. You must never let a coworker complete your time record for you. To assure that all work performed for Capital One is compensated correctly, it is essential that, where required, all work time is reported and recorded accurately.

Confidential Treatment Requested
by Capital One Financial Corp.

0016
SECP-COF-00006078

■ Managing Capital One's Information

## Confidential and Proprietary Information

**Protect all nonpublic information.**

All nonpublic confidential and proprietary business information – including information that would be harmful to Capital One's business operations, our customers, or our associates if released without authorization or that can be used by our competitors – can be used only for Capital One's business purposes or legally authorized purposes. It should only be shared with those who have a legitimate business need to know and cannot be shared with anyone outside of Capital One unless appropriate authorization is received. This includes business plans or strategies, trade secrets, work product, models and credit policies and practices, and official HR files containing private employee information, such as social security numbers. Exposure of such information can not only impact customer and stakeholder trust, but also Capital One's competitive edge, financial position, legal and regulatory compliance, growth strategies, and brand.

If you are authorized to communicate confidential and proprietary information on a selective basis to one or more individuals, you should make sure that they know the information is confidential and agree to treat the information as confidential. Following the Information Security Policy and supporting Information Handling Procedures, take appropriate actions to safeguard the information you send. Depending on the circumstances, disclosure of confidential information to approved persons outside Capital One, including agents, may require specific contractual language addressing privacy, confidentiality and data security obligations. Nothing in this section shall be construed to interfere with or prohibit associates from discussing their wages, hours, and other terms and conditions of employment for purposes of protected concerted activity, consistent with labor laws.

**Formatted:** Default Paragraph Font

## Statements to the Public or Media

**Refer requests for public comment on behalf of Capital One to Corporate Communications.**

Refer all media inquiries for commentary on behalf of Capital One promptly to Corporate Communications. Do not speak on behalf of Capital One unless you receive approval in advance from Corporate Communications. This includes public speaking engagements and articles in which an associate would speak on behalf of the Company. Only those individuals specifically authorized to make public disclosures on behalf of Capital One or its business may do so.

**Follow guidelines for Social Media.**

The "Associate Use" Social Media Guidelines provide associates with general guidance for use of Social Media sites. Capital One's Social Media Standards and Guidelines provide associates with information on how to develop and use Social Media sites for "Official" business purposes at Capital One. These documents are meant to provide helpful information about how to engage in social media channels in such a way to protect you and the company from compliance, legal, operational and reputation risks.

Confidential Treatment Requested
by Capital One Financial Corp.

0017
SECP-COF-00006079

■ Managing Capital One's Information

## Intellectual Property Rights

**Respect intellectual property rights.**

As a condition of your employment with Capital One, you have agreed to assign to Capital One all of your rights, titles and interests in any Capital One intellectual property. Any intellectual property that you develop alone or with others during your employment that is directly or indirectly related to Capital One business belongs to Capital One. You must also respect the intellectual property rights of third parties. Also:

- Do not bring to or use at Capital One any confidential information from your prior employers or other third parties.
- Do not load unlicensed or unauthorized software on any Capital One computer.
- Do not accept or use anyone else's confidential information except as authorized under an agreement approved by the Legal Department.
- Know and follow copyright and other laws regarding intellectual property.

Confidential Treatment Requested
by Capital One Financial Corp.

0018
SECP-COF-00006080

▨ Managing Capital One's Information

## Electronic Communications

**Use equipment properly.**

Use of Capital One computer and communication resources (such as telephones, PDAs, voice mail, e-mail, collaboration tools, instant and text messaging, facsimiles, mobile phones, pagers, computer systems and networks) must be consistent with all other Capital One policies, including those regarding harassment, privacy, copyrights, trademarks, trade secrets, patents, acceptable use and other intellectual property. As permitted by law, these resources are subject to monitoring and you can have no expectation of privacy or confidentiality with respect to any communication, record, or data that is created, sent, received or stored on any Capital One system. Any use of these Capital One resources provides consent for any service provider to provide the Company with any communication, record or data made with the resources. You should use Capital One assets primarily for business purposes. You may use Capital One assets for incidental personal use provided that such use is limited and reasonable, does not violate Capital One policies and procedures, and does not in any way interfere with or jeopardize use of such assets, including your time, for business purposes. Any incidental personal use does not in any way diminish the fact that there can be no expectation of privacy or confidentiality.

In addition to the privacy statement above, Capital One reserves the right to operate security cameras to monitor workspace both within our facilities and our building/property perimeter (such as parking lots). Capital One can access and search all offices and work areas on company property, including but not limited to locked and unlocked desks, file cabinets, files and lockers, without prior notice, for business or security-related reasons at its sole discretion. Employees have no expectation of privacy in this regard.

## Records Retention and Management

**Comply with Information Retention.**

Capital One has a legal obligation to manage retention and destruction of information with appropriate and consistent guidelines. All information generated, whether documents or data, may be subject to litigation and regulatory inquiry. Clear and defensible practices regarding information retention allow Capital One to manage its records and mitigate risk to eliminate unnecessary costs and expense. Each associate, as well as the contingent labor such associates oversee, has an on-going responsibility to effectively store, track and properly manage Official Records and Non-Official Records to facilitate compliance with existing laws, regulations and Legal Hold Orders. The Information Retention Policy provides the guidelines to be followed for compliance. Associates are required to annually attest their on-going compliance regarding record retention. Business areas are required to submit certification on a semi-annual basis. Failure to comply with the required Information Retention Policy may violate Capital One's legal obligations, which may lead to serious financial sanctions, negative court rulings and reputational harm, among other adverse consequences.

Confidential Treatment Requested
by Capital One Financial Corp.

0019
SECP-COF-00006081

▨ Managing Capital One's Information

**Comply with Legal Hold Orders.**
When Capital One reasonably anticipates or is involved in litigation, the Legal Department issues a "Legal Hold Order" to suspend the destruction of documents and information that must be retained for litigation purposes. Capital One associates are obligated to read each monthly Legal Hold Order e-mail communication as well as any other targeted communications they receive from the Legal Department and to protect from destruction any documents or information subject to a Legal Hold Order. Failure to comply with a Legal Hold Order is not only unethical, it also violates Capital One's legal obligation and may lead to serious financial sanctions and other negative court rulings.

## Other Assets and Property

**Use all Capital One assets properly.**
All Capital One assets should never be used for any unlawful or unauthorized purpose. The use of Capital One funds for non-Capital One use is also prohibited. You must prevent damage, theft or misuse of Capital One assets and must return all Capital One assets in your possession when your employment is terminated.

Confidential Treatment Requested
by Capital One Financial Corp.

0020
SECP-COF-00006082

# III Avoiding Conflicts of Interest

### General Principles

**Avoid even the appearance of impropriety.**
You must avoid any activities, interests or relationships that might interfere with, or appear to interfere with, your ability to act in the best interest of Capital One or its customers. You cannot take personal advantage of your position or authority with Capital One or engage in conduct that is detrimental to Capital One's interests or reputation in any way.

Various Capital One business units have specific policies regarding potential conflicts of interest. Directors and executive officers are subject to additional requirements. You are responsible for knowing and complying with all policies that apply to you. Because it is impossible to describe every potential conflict, Capital One also relies on your commitment to exercise sound judgment, to seek advice when appropriate, and to adhere to the highest ethical standards as you conduct your personal and professional affairs.

For additional information on handling potential conflicts of interest, see the Conflict of Interest Disclosure Procedure.

### Money Laundering and Contraband

**Do not engage in money laundering or contraband activities.**
Capital One will not condone, facilitate or support money laundering or contraband, and will help governments prevent illegal trade involving our products. Money laundering is the process by which individuals or entities try to conceal illicit funds or otherwise make the source of illicit funds appear legitimate. Contraband is the illegal trading of goods in violation of customs or tax laws. Involvement in such schemes, assisting or advising others involved with such schemes or informing a third party of a related investigation, can be a criminal offense. For additional information, see the Anti Money Laundering Policy.

### Insider Trading and Tipping

**Do not engage in insider trading or tipping.**
Capital One will not tolerate or excuse violations of insider trading laws. In general, these laws prohibit buying or selling stock in any public company, including Capital One, when you have material information that has not been released to the public.

You must also refrain from communicating material nonpublic information to anyone who might use it to buy or sell securities. "Tipping" others may violate laws and can result in penalties to all parties involved, including Capital One. For additional information, see the Securities Law Policy.

Confidential Treatment Requested
by Capital One Financial Corp.

0021
SECP-COF-00006083

■ Avoiding Conflicts of Interest

Material information not available to the public may be provided only to colleagues who need the information to perform their duties. If you have access to such information, you must not use it to buy or sell related securities, stock or derivatives until the second business day after the information has been made public. Even if public announcements are made regarding inside information, you may not release information that you know is still confidential.

The same restrictions apply to trading stock of Capital One business partners; you cannot use any material nonpublic information you may obtain about their businesses for your own personal advantage or in a way that could hurt the image or reputation of Capital One. In addition, you may not communicate material nonpublic information to others who could then use the information to buy or sell securities.

When in doubt, assume information is material and nonpublic, and do not act upon it. Simply put, you must not take part in any trading that may appear improper.

Capital One directors and executive officers are subject to additional Securities and Exchange Commission rules and should review these requirements before engaging in any transactions of Capital One securities.

## Personal Investing and Finances

### Avoid investing in companies closely tied to Capital One.

You must not make any personal investment in an enterprise if the investment might affect or appear to affect your ability to make unbiased business decisions on behalf of Capital One. This includes investments in a public or private company that is a vendor to or is a competitor of Capital One, or otherwise does business with or is involved in a transaction with Capital One.

You must never invest in a supplier if you have any involvement in the selection or assessment of, or negotiations with, the supplier or if you supervise anyone who has such responsibility. You must never invest in a customer if you are responsible for dealings with that customer or supervise anyone with such responsibility. When deciding whether any other investments create similar conflicts of interest, either perceived or actual, ask yourself:

- Would the investment affect any decisions I will make for Capital One?
- How would the investment look to my coworkers—would they think it could affect how I do my job for Capital One?
- How would it look to someone outside Capital One, such as a customer, supplier, stockholder or the media?

If you made a personal investment that may give rise to these concerns before joining Capital One, or your position at Capital One changes in such a way as to create a conflict of interest or the appearance of such a conflict, you must immediately report this information to your manager or Associate Relations (Ask HR Europe Helpdesk for UK Associates, Onsite HR Representative for India).

Confidential Treatment Requested
by Capital One Financial Corp.

0022
SECP-COF-00006084

■ Avoiding Conflicts of Interest

## Outside Employment and Directorship

**Use caution with other business interests.**
You must be careful if you have an ownership or other financial interest in any other business. Your outside interests could compromise, or appear to compromise, your duties to Capital One. You may not hold a directorship or engage in any outside business or employment without prior authorization. Associates should contact Associate Relations (Ask HR Europe Helpdesk for UK associates, Onsite HR Representative for India) for referral and approval of such requests prior to engaging in any outside business, employment or directorship. All requests will be evaluated to ensure no conflict of interest exists and decisions will be provided to the requesting associate.

You must not engage in any business relationship or transaction on behalf of Capital One in which you or a close relative or friend has a direct or indirect interest, or from which you or they may derive a personal benefit, if such a relationship or transaction might give rise to the appearance of a conflict of interest. In some cases, your business line regulations may be more restrictive than the rules outlined in the Code, or vice versa. If so, you are expected to follow the more restrictive rule.

## Gifts and Entertainment

### Acceptance of Gifts and Gratuities

**Do not accept preferential treatment or gifts.**
The Bank Bribery Act (BBA) strictly prohibits associates, officers, directors, agents and representatives of Capital One from soliciting or corruptly accepting offers from any suppliers, service providers or customers. You should not receive preferential treatment from any customers, suppliers, service providers or other third parties of Capital One unless available to the general public.

You must not solicit entertainment or gifts for yourself or others from anyone with whom Capital One does or is seeking to do business. Nor may you accept entertainment or gifts that could compromise, or appear to compromise, your work on behalf of Capital One.

You may not accept gifts of cash or cash equivalents from any outside party as a result of your association with Capital One. Other unsolicited and infrequent gifts and business courtesies, including meals and entertainment, may be permissible only if the associate follows the requirements specified in the Bank Bribery Act Standard. In addition to other requirements specified within the Bank Bribery Act Standard, gifts and business gratuities must be authorized in accordance with the provisions of the Bank Bribery Act Standard.

The BBA also makes it a crime for actual or potential Capital One customers or vendors to corruptly offer anything of value to the group of insiders noted above. You should report any such offer to the Ethics Line. For a full list of requirements regarding gifts and business courtesies, permissible activities, the required steps for permissibly receiving things of value from outsiders, and more details, see the Bank Bribery Act Standard. The failure to observe the rules and requirements set forth in the Bank Bribery Act Standard may

Confidential Treatment Requested
by Capital One Financial Corp.

0023
SECP-COF-00006085

■ Avoiding Conflicts of Interest

be viewed by prosecutors and regulators alike as an indication that a thing of value was accepted corruptly, thereby leaving the door open for criminal prosecution of non-compliant associates.

0024
SECP-COF-00006086

Confidential Treatment Requested
by Capital One Financial Corp.

■ Avoiding Conflicts of Interest

**Giving of Gifts/Entertainment**

When considering the offering of gifts or entertainment, you must not give the gift if it could be seen by others as engaging in improper or illegal dealings. Gifts should always be reasonable and customary for the circumstance and should never be cash. Entertainment must be for a valid business purpose. You may not offer gifts or entertainment unless you are authorized to do so. Various Capital One business units have specific guidelines regarding the giving of gifts and entertainment; please check with your manager if you have questions. Please reference the Anti-Corruption Section listed below for additional information.

**Comply with restrictions on personal borrowings.**

Personal borrowings by directors, officers and their affiliated businesses from Capital One and its subsidiary banks are subject to and must comply with various restrictions.

You may not accept any benefits from Capital One that have not been duly authorized and approved pursuant to applicable Capital One procedures, including any Capital One loans or guarantees of your personal obligations. In addition, you should not make loans with the expectation of reciprocity.

**Self Dealing**

**Do not place personal interests above those of Capital One.**

Self dealing occurs when any Capital One associate conducts business in a manner that places their interests above those of Capital One. Associates may not search for, access or modify accounts held by themselves, friends, or relatives. Associates may not search for, access or modify accounts held by their co-workers unless they have a valid business reason to do so. Associates may not approve extensions of credit or overdrafts, waive finance charges, services charges or fees, or otherwise deal for themselves, friends, or relatives. Associates may only approve extensions of credit or overdrafts, waive finance charges, service charges or fees for co-workers when they are authorized to do so. Associates are also prohibited from personally extending products or services to any customer whom the associate knows applied for and was denied that product or service by Capital One. All associates are to avoid even the merest appearance of impropriety when dealing with friends, relatives or co-workers. For additional information, see the Bank Bribery Act Standard.

**Trading On Your Association with Capital One**

**Do not use your association with Capital One for personal advantage.**

You must not use Capital One's name, property, facilities, relationships or other assets for personal benefit or for outside work. Use of such for charitable or pro bono purposes can be made only with prior authorization from your manager and only after any other notification and approvals are obtained in accordance with the policies of your business unit and Capital One.

Confidential Treatment Requested
by Capital One Financial Corp.

0025
SECP-COF-00006087

▨ Avoiding Conflicts of Interest

**Competing Against Capital One**

**Do not compete against Capital One.**
You may not take an opportunity that is intended for Capital One which arises in the course of your employment or position, or through the use of Capital One information, assets or other property for yourself. You may not compete against Capital One.

During your employment or association with Capital One, except as expressly authorized, you may not directly or indirectly:

- Solicit for a competitor, or divert or attempt to divert from doing business with Capital One, any customer, supplier or other person or entity with whom Capital One has or had a business relationship or whom, to the best of your knowledge, Capital One has taken action toward establishing a relationship
- Award orders, contracts and commitments to suppliers (for goods and services) based on a personal benefit or favor to you or anyone with whom you have a personal relationship

Confidential Treatment Requested
by Capital One Financial Corp.

0026
SECP-COF-00006088

# IV Conducting Our Business

### Fair Dealing

**You represent Capital One.**
You represent Capital One and our reputation while at work, while attending work-related off site events such as conferences, meetings, and sporting events, and while wearing Capital One branded attire.

**Deal fairly with everyone.**
Capital One is committed to dealing fairly with its associates, customers, suppliers and competitors. You are prohibited from taking unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair-dealing practice.

**Do not unduly influence or be unduly influenced by others.**
You may not solicit, demand or accept for the benefit of any person anything of value from anyone in return for any business, service or confidential information. This applies whether you intend to be influenced or rewarded either before or after such a transaction is discussed or consummated.

You may not give any gift, favor, entertainment, reward or any other item of monetary value that might influence or appear to influence the judgment or conduct of the recipient in the performance of his or her job.

**Do not seek to benefit from a customer relationship.**
You may never demand, request or solicit any benefit under a will or trust instrument of a Capital One customer. You may not accept any benefit, or consent to any provision naming you a beneficiary or otherwise providing you with a benefit, under a will or trust instrument of a Capital One customer with a value greater than $1,000, or other currency equivalent.

No associate or member of an associate's family may accept fiduciary responsibility under a customer's will, trust or other instrument without prior approval. Associates should contact Associate Relations (Ask HR Europe Helpdesk for UK Associates, Onsite HR Representative for India) for referral of requests to the Code of Conduct's governing committee. This does not apply to a will, trust or other instrument established by a member of the associate's family.

**Provide products and services objectively.**
Capital One associates, their relatives and friends are encouraged to use Capital One services and products for their personal needs. However, such services and products are to be provided on the same terms that they are provided to all other similarly situated individuals.

You should not take any action nor should you, or anyone you have a personal relationship with, receive a benefit that makes it difficult to perform your work responsibilities objectively and effectively. Any personal

Confidential Treatment Requested
by Capital One Financial Corp.

0027
SECP-COF-00006089

▓ Conducting Our Business

financial or other transaction with anyone having or contemplating having a business relationship with Capital One should be on normal and customary terms.

"Tying" arrangements, under which the availability or price of one product is conditioned on the customer's purchase of another product, are illegal under some circumstances.  Such arrangements should not be entered into without first consulting Legal.

## Employment of Relatives and Friends

**Employment of relatives or friends must not create a conflict of interest.**
The general policy of Capital One is to hire, promote and otherwise employ people on the basis of their job qualifications and individual merit. For purposes of this Code, "relative" includes: a spouse, parent, child, sibling, in-law, grandparent, grandchild, aunt, uncle, first cousin, niece, nephew, step-relative, or any individual with whom you have a close personal relationship, such as a domestic partner, co-habitant, or significant other. Friends are defined as anyone with whom you have a close, personal relationship and with whom your relationship could create a real or perceived conflict of interest.

**Capital One does not limit the employment of relatives or friends of current associates unless:**
- A supervisor/subordinate relationship is created between two related persons
- A real or perceived conflict of interest exists because of the employment of individuals in close, personal relationships at certain levels of Capital One or in positions where one of the associates exercises or appears to have influence over the other's compensation, performance evaluation, job security or other terms and conditions of employment
- The associates will be working in the same department and their job duties could adversely impact the risk management and control environment of the area resulting from their ability to process or review each other's work

You may not give special consideration in the employment, promotion or compensation by Capital One of another individual due to a family or personal relationship with you or with any other director, officer or associate of Capital One. After you are hired, it is your responsibility to notify management if you find yourself in a relationship with anyone in your same management team.

## Fair Competition and Anti-Trust

**Abide by fair competition and antitrust requirements.**
In general, you should never discuss competitive issues with competitors. You should always assume that competition and antitrust laws apply, unless you learn otherwise. You must never discuss or exchange information with competitors that would have the affect of:

- Fixing prices, including setting minimum, maximum or stabilizing prices
- Fixing terms relating to price, pricing formulas, trade promotions, credit terms, etc.
- Dividing up markets, customers or territories
- Limiting production
- Rigging a competitive bidding process, including arrangement to submit deceptive bids
- Boycotting a competitor, supplier, customer or distributor

Confidential Treatment Requested
by Capital One Financial Corp.

0028
SECP-COF-00006090

■ Conducting Our Business

It is imperative that you never do anything to prevent others from entering the market or to eliminate competition. Practices that monopolize, attempt to monopolize, or abuse a dominant position in the market are illegal. Charging different prices to customers who are competitors may also be illegal. Violations of fair competition and antitrust laws may lead to criminal penalties including jail terms and large fines for individuals and Capital One.

**Do not obtain or use information about competitors improperly.**
To compete in the marketplace, it is often necessary to gather information about our competitors. However, some forms of information gathering are wrong and may violate the law. While information that is publicly available is generally fair to use, you must never use:

- A competitor's confidential or proprietary information, even if someone offers or provides it to you
- Confidential or proprietary information in any form possessed by new hires about prior employers
- Information about a competitor's bid if you are involved in the bidding process, especially if related to government contracts

**Do not engage in unfair business practices.**
You should never compete by engaging in unfair business practices such as:

- Disparaging or making false statements about competitors or their services
- Stealing or misusing competitors' trade secrets
- Cutting off competitors' sources of supply
- Inducing customers to break contracts with competitors
- Paying bribes to help our business or to hurt a competitor

## Bribes and Improper Payments

**Do not make or receive a bribe or improper payment.**
No Capital One funds or assets may be paid, loaned or given as a bribe, "kickback" or other illegal payment. You also cannot receive any gifts, loans or other favors that could appear to influence or compromise your personal judgment.

All payments for goods or services must be made according to customary trade terms. Payments must reflect the value of the goods or services, and payments must be fully accounted for in Capital One's books and records.

## Anti-Corruption Requirements

**Avoid giving gifts, gratuities or other benefits to government officials.**
Various laws exist limiting and generally prohibiting the giving of gifts (e.g., meals, entertainment, lodging and gift items) to public officials.  In no instance should you offer or give a benefit to a public official, either directly or through a third party, if this action is intended, or might in any way be construed to be intended, to influence the decisions of the public official in his or her official capacity, to reward the public official for a decision already made or to take advantage of his or her position.  Generally speaking, a "benefit" may

Confidential Treatment Requested
by Capital One Financial Corp.

0029
SECP-COF-00006091

include, for example, items such as gifts, payments, favors, favorable account terms or treatment, or any other type of special treatment or consideration.

You should interpret these prohibitions broadly and conduct your relations with public officials in a manner that does not raise even an appearance of impropriety. Should you have any questions or concerns regarding your dealings with a public official immediately contact your Compliance Officer or the legal group that supports your business segment.

The Foreign Corrupt Practices Act expands on the above requirements and makes it a criminal offense for Capital One, including its service providers and joint ventures, or its associates, contractors, etc. to give or offer anything of value to (i) any official of a foreign government or an instrumentality of a foreign government, (ii) any foreign political party or official thereof or any candidate for foreign political office or (iii) to family members of any of the foregoing, in order to (a) influence any act or decision of a foreign official in their official capacity, (b) induce a foreign official to engage or fail to engage in any act in violation of the lawful duty of the official, or (c) secure any improper business advantage; or induce a foreign official to use his influence with a foreign government to affect or influence any act or decision of such government. Associates should be mindful that less-than-obvious offers of value like favorable loan terms, debt forgiveness or cancellation, etc. to above-described individuals or entities are covered by the Act. Similar prohibitions that can give rise to criminal liability exist in the U.K. and Canada. The U.K. Bribery Act of 2010 also makes it impermissible to provide something of value to another commercial entity, including its employees, representatives or agents, in order to induce a person to improperly perform a relevant function or activity or to reward a person for the improper performance of such a function or activity. The bottom line is that no person associated with Capital One should provide anything of value to someone outside the company to improperly perform an act or to improperly forgo an act.

Associates and other individuals engaging in conduct that violates these anti-corruption rules may incur both civil and criminal liability, as could Capital One and any individual with oversight responsibilities for the individuals or corporate efforts in question. Remember, an associate's reckless disregard for potential criminal activity will be viewed by external constituents as that associate intentionally performing or permitting the criminal activity. Willful blindness is part of a problem, it is not a solution. Also, as noted above, acts performed by third parties on our behalf or at our request will be viewed as having been performed by Capital One and can give rise to individual and corporate liability.

Prior to conducting business in a foreign country, lines of business should first contact the FCP Officer for additional guidance.

**Comply with all government contracting requirements.**
If you are involved in bidding on or providing service under a government contract, you are expected to know and comply with all applicable rules. Special rules apply when the government is our customer—rules that in some cases are very different than those that apply when dealing with a commercial customer. Violations can result in criminal and civil penalties and may bar Capital One from contracting with the government in the future.

**Adhere to our rules regarding government proceedings.**
You should immediately contact the Legal Department if you are contacted by law enforcement or other government officials with respect to your duties, except where such contact is prohibited by applicable

Confidential Treatment Requested
by Capital One Financial Corp.

0030
SECP-COF-00006092

law, including but not limited to instances where you are contacted regarding your wages and other terms and conditions of employment.. As you work with law enforcement and government officials, any information you provide must be completely honest and truthful. If you receive a subpoena related to Capital One or your work, immediately contact the RFPA Subpoena mailbox. If you become aware of pending, imminent or contemplated litigation or a government examination or investigation, you must immediately contact the Legal Department. Pursuant to the Legal Hold Order Policy, you must also save all records and documents that may be relevant to the subpoena, litigation or investigation, including any records that may otherwise be automatically destroyed or erased (such as e-mail and voice mail messages). Nothing in this section is intended to interfere with or prohibit you from engaging with law enforcement or government officials on an anonymous basis when allowed by applicable law and regarding your wages and other terms and conditions of employment.

**Be careful when doing business internationally.**
Capital One's business must be conducted in accordance with the applicable trade restrictions, export controls or anti-boycott laws and regulations imposed by various countries. You must not take any action, furnish any information or make any declaration that could be viewed as participation in an illegal foreign boycott. If you receive boycott-related requests for information, whether oral or written, you should immediately notify the Legal Department. When doing business internationally, follow all guidance from the Corporate and IT Security Departments with respect to data and information security.

**Do not mix personal and business political activities.**
Capital One encourages you to engage in political activity and to support the candidates, parties or initiatives of your choice. However, you must do so on your own time, using your own resources. You may not use your work time or any Capital One facilities or equipment for these activities.

In the U.S., Capital One's political contributions are strictly regulated, as is the use of Capital One facilities for political activities. Proposed payments by Capital One to government officials, candidates for public office, political parties or ballot initiatives must be authorized in advance by Government Affairs. You may not make non-cash contributions, such as the use of corporate facilities, services or other assets or work on a political campaign as a Capital One representative. You must not use Capital One funds to purchase tickets to political dinners or other functions where the proceeds are used to support a candidate or political party.

You must be careful not to use corporate funds indirectly to make political contributions and should not seek reimbursement for any personal contributions. Political contributions or other political activities cannot be taken into account in determining your bonus, salary or any other compensation. You may not set up a political action committee on behalf of Capital One without prior authorization from Government Affairs. In some U.S. locations, you may have to register as a lobbyist if you have contact with government officials or with people trying to influence legislation, rulemaking or official decisions.

**Do not engage in transactions related to unsanctioned foreign boycotts**
Capital One is subject to the anti-boycott provisions of the Export Administration Act, which discourages and sometimes prohibits U.S. banks from engaging in transactions related to unsanctioned foreign boycotts. For these purposes, "unsanctioned foreign boycotts" refer to sanctions targeting nations that are friendly with the United States and that are not the subject of economic sanctions implemented by the

Confidential Treatment Requested
by Capital One Financial Corp.

0031
SECP-COF-00006093

◼ Conducting Our Business

U.S. If Capital One Associates see actual or proposed contract language that would have the effect of causing Capital One to, in any way, participate in a foreign nation's boycott of a third party nation, Associates should immediately report the matter to the Ethics Line, flagging the matter as a potential "illegal boycott" when doing so.

While international letters of credit are the matters most likely to raise issues under the anti-boycott provisions, any contract could be problematic. In order to help ensure compliance by Capital One with the U.S. Government's anti-boycott mandate, Associates should, among other things, look for (i) a requirement for a certification that the goods did not originate from a boycotted country. (A positive certificate of origin, however, is legal); (ii) a requirement for certification that the exporter/importer does not do business with a boycotted country; (iii) a requirement for certification that the supplier of the goods or the provider of services does not appear on the blacklist of a boycotting country; and/or the words, "Do not negotiate with blacklisted banks," or a condition to that effect.

Confidential Treatment Requested
by Capital One Financial Corp.

0032
SECP-COF-00006094

# V  Working With Each Other

### Diversity

**Respect other people.**

Capital One actively creates and promotes an environment that is inclusive of all people and their unique abilities, strengths and differences. We expect you to respect and embrace diversity in each other, our customers, suppliers and all others with whom you interact in the course of your employment.

### Equal Employment Opportunity

**Treat people equally.**

Capital One makes all decisions of employment with consideration to appropriate principles of Equal Employment and Affirmative Action. Capital One is committed to hiring, developing, promoting and providing other terms and conditions of employment without regard to a person's sex, race, color, age, national origin, religion, disability,  genetic information, marital status, sexual orientation, gender identity/reassignment, citizenship, pregnancy or maternity , veteran status, or any other status protected by national, federal, state or local law. In some cases, local laws and regulations may provide greater protections than those outlined here.[1]  Associates will be covered by the laws of their local jurisdiction.

### Discrimination and Harassment

**Do not harass or discriminate against others.**

Capital One is committed to providing a work environment free from all forms of discrimination, including harassment, and seeks to foster an environment that supports free-flowing information, creative ideas and flexibility. Discrimination in any form, including harassment, on the basis of any status or activity protected by applicable law or company policy, is improper, and Capital One will not tolerate it in the workplace.

Since discrimination and harassment can take many forms, each associate must avoid engaging in conduct that may be perceived by others as such. Capital One will investigate all allegations of discrimination and harassment and will take prompt and appropriate corrective action. Reports of discrimination or harassment should be made to your manager or Associate Relations (Ask HR Europe Helpdesk for UK Associates, Onsite HR Representative for India).

Associates engaged in discrimination, harassment or retaliation against individuals for raising claims of discrimination or harassment will be subject to disciplinary action, up to and including termination of employment. For additional information, see the Human Resources Policy.

---

[1] For example, in the UK philosophical belief is included as a prohibited factor

Confidential Treatment Requested
by Capital One Financial Corp.

0033
SECP-COF-00006095

▓ Working With Each Other

## Drugs, Alcohol and Other Intoxicating Substances

**Do not work under the influence.**
You may not possess, use, sell, purchase or transfer alcohol, controlled substances or other intoxicating substances on Capital One premises, in Capital One vehicles or during work hours. The legally prescribed use of personal prescription drugs is not prohibited by this policy. Alcohol consumption on Capital One premises or during work hours is also prohibited unless consumed by people of legal drinking age at Capital One-sponsored functions that are approved in advance by your manager. You must not be under the influence of alcohol, controlled substances (except where such use is legally prescribed for you) or intoxicating substances during work hours, regardless of when the alcohol, drugs or intoxicating substances were consumed.   Notwithstanding the above, it shall not be a violation of this policy to possess, give, or receive (for example, as a gift), an unopened container of alcohol on work premises, in Capital One vehicles or during work hours.  Associates found to be in violation of this policy may be subject to disciplinary action up to and including termination.

In our commitment to maintain a drug free workplace, Capital One may require a drug test of associates for the following circumstances:

- ▪ Reasonable grounds exist and justify a drug test, and/or
- ▪ There is a clear and present physical danger to the employee, other employees or members of the general public.
- ▪ Employees are granted the opportunity to have drug test samples retested by a certified drug testing facility.

An employee who refuses to consent and submit to a test when requested may be subject to disciplinary action, up to and including termination. Examples of refusal to submit could include, but are not limited to, refusing to comply with the process, failure to provide adequate urine for testing without a valid medical explanation after receiving notice of the requirement for urine testing, and/or engaging in conduct that clearly obstructs the testing process and leaving the scene of an on-the-job accident.

All information from an employee's drug and alcohol tests will be confidential to the extent required by law.

## Health and Safety

**Support a healthy and safe work environment.**
Safety of people in the workplace is a primary concern. It is Capital One's policy to comply with all applicable health and safety laws and regulations and to ensure that all work is performed in a safe and responsible manner. Each work location has safety rules and procedures that must be followed. You must also be alert to safety risks as you go about your work and report safety issues to Corporate Real Estate. Report on the job injuries to your manager and Corporate Security.

Confidential Treatment Requested
by Capital One Financial Corp.

0034
SECP-COF-00006096

▓ Working With Each Other

## Criminal Convictions

**Immediately report any criminal convictions against you.**

To the extent allowed by law, you must immediately notify Capital One of any convictions or agreements to enter into pretrial diversion or similar programs for criminal offenses involving dishonesty, breach of trust, and money laundering, as well as convictions for violence (including violent sex crimes) and hate crimes. In the U.S. and Canada, associates must contact Associate Relations and present copies of court documents detailing the conviction along with a statement explaining the circumstances surrounding the conviction. In Europe, associates must inform their manager, or if they wish their details to remain confidential, may contact the Ask HR Europe Helpdesk.   Failure to do so could result in disciplinary action up to and including termination. Convictions and pretrial diversion program entries for offenses involving dishonesty, breach of trust, and money laundering, as well as convictions for violence (including violent sex crimes) and hate crimes may be grounds for dismissal.

For additional information, see the Human Resources Policy.

## Workplace Violence

**Immediately report all threats or acts of workplace violence.**

Capital One is committed to maintaining a safe, secure work environment and will not tolerate any acts or threats of workplace violence. Workplace violence is any act or threat of violence or aggression directed toward associates, vendors, customers or visitors that results in or creates a risk of physical injury or emotional trauma or places associate safety and productivity at risk. This can include:

- Weapons in the workplace
- Stalking
- Threatening or performing aggressive acts
- Sending harassing and/or threatening communications
- Any other hostile behavior

You must report all threats or acts of workplace violence whether the violence is directed at you or if you witness violence directed at others. Capital One will thoroughly investigate all reports.

Confidential Treatment Requested
by Capital One Financial Corp.

0035
SECP-COF-00006097

▓ Working With Each Other

Note: This Policy will be translated into French to better support the Canadian affiliates.  The translated version will be approved by the French Translator, attesting that it is an accurate translation of the English version. The French version will have the same document number, but a separate record to manage future renewals.

Note: This Policy governs all Capital One locations and entities, including subsidiaries, with the exception of the Philippines which will have an amended version to align with specific country laws.

Confidential Treatment Requested
by Capital One Financial Corp.

0036
SECP-COF-00006098



Confidential Treatment Requested
by Capital One Financial Corp.



# Capital One Financial Corporation
# End User Responsibilities and Acceptable Use Standard

## Standard

| | |
|---|---|
| Document Number: | 2701.1.002 |
| Parent Policy: | Information Security Policy |
| Applicable To: | Capital One Financial Corporation, its subsidiaries and affiliates |
| Renewal Approval Date: | April 1, 2014 |
| Material Change Approval Date: | N/A |
| Non-Material Change Approval Date: | October 3, 2014 |
| Current Version Effective Date: | October 3, 2014 |
| Renewal Frequency: | Every Year |

## Key Responsibilities

| | |
|---|---|
| Approval Authority: | Vice President, Information Security [Chris Tignor] |
| Document Owner: | Director, Information Security [Pete Kofira] |
| Document Manager: | Manager, Information Security [Carter Cassada] |
| Approval of Non-material Changes: | Vice President, Information Security [Chris Tignor] |
| Approval of Exceptions to Standard: | Vice President, Information Security [Chris Tignor] |

## Standard Overview

The End User Responsibilities and Acceptable Use Standard requires that users maintain the proper level of protection over Capital One computing assets and information while performing day to day activities.  This document defines end user responsibilities and provides education on how to appropriately protect Capital One assets at all times, both on and off Capital One premises.

Proper protection of Capital One assets requires users being aware of the risks associated with their use.  These risks include loss or theft of equipment and information, unauthorized

CAPITAL ONE CONFIDENTIAL
Prepared by Information Security

Confidential Treatment Requested
by Capital One Financial Corp.

0038
SECP-COF-00006308



disclosure of information, unauthorized remote access to the organization's internal systems, and/or misuse of resources.  This Standard provides requirements around acceptable behaviors to limit these risks.

All end users are responsible for compliance with these requirements to ensure protection and appropriate use of Capital One assets and information resources.  Consideration should also be given to the Information Handling Procedure (2701.2.001) for requirements around the classification and handling of Capital One information.

## Standard Statement

## 1.0   Passwords

Passwords are a critical part of information and Capital One network security. They are used to ensure that only authorized users have access to Capital One resources.  Passwords, if compromised, can put the entire network at risk; therefore, all users of Capital One information systems are required to take appropriate steps to ensure that they create strong, secure passwords and safeguard them at all times.

1.1     Keep passwords confidential.

1.2     Do not keep a record (e.g. paper, software file or hand-held device) of passwords, unless it can be stored securely and the storage method has been approved.

1.3     Change passwords whenever there is any indication of possible system or password compromise.

1.4     Select strong passwords. Use alphanumeric passwords with a mix of upper and lower case letters. Do not use one's own name, dictionary words, username and common terms such as 'password'.

CAPITAL ONE CONFIDENTIAL
Prepared by Information Security

Confidential Treatment Requested
by Capital One Financial Corp.

0039
SECP-COF-00006309



1.5   If a system does not enforce automatic password change, change passwords at least every 60 days.

1.6   Do not include passwords in any automated log-on process, e.g. stored in a macro or function key.

1.7   Do not use the same password for business and non-business purposes.

1.8   Do not share individual user passwords.  Users are responsible for all activity performed by their IDs.


## 2.0   Unattended Equipment/Information

Unattended user equipment (workstations and mobile devices) or information requires appropriate protection to avoid theft, damage, alteration or compromise to the security of Capital One resources and information.

2.1   Terminate active sessions when finished, and secure the workstation or mobile device with an appropriate locking mechanism when leaving the system unattended (i.e. password protected screen saver).

2.2   Log-off of a system when the session is finished (i.e. do not just turn off the PC screen or terminal).

2.3   Secure portable computing equipment such as laptops when not in use. Protection may be provided by locking the device in a drawer or cabinet, or by use of cable locks, locking mounts, or other theft-deterrent devices.

2.4   Secure mobile equipment such as Blackberry or other Smartphone devices when not in use.  Use locking mechanisms to keep these devices from unauthorized access and use.

2.5   Maintain a clean and secure desk and/or work area to reduce the risks of information being inappropriately disclosed, used, altered or destroyed.

2.6   Remove printouts and faxes from the device immediately.

2.7   Dispose of documents labeled Confidential or Confidential/Proprietary in appropriate locked shred bins, or shred them using a cross-cut type shredder.

2701.1.002 - End User Responsibilities and Acceptable Use Standard          CAPITAL ONE CONFIDENTIAL
Prepared by Information Security

3

Confidential Treatment Requested
by Capital One Financial Corp.

0040
SECP-COF-00006310



## 3.0   Equipment Off Premises

Mobile computing devices must be protected in a manner that prevents damage, theft or data exposure.  Such devices should not be used to store any sensitive Capital One information. If Capital One information resides on such devices, even temporarily, extra precautions must be taken to prevent unauthorized access to their contents by way of strong access controls and encryption.

3.1   Do not leave equipment, devices or media unattended when taken off Capital One premises or in public areas. Ensure equipment is secured and out of plain sight when not in use. For example, laptops should be stored in the trunk of your car or taken with you when parked in public places.

3.2   Carry mobile computing devices while traveling only when necessary. Transport mobile computing devices in carry–on luggage or on your person, and do not leave unattended in public places. Travel restrictions and regulations allow airport security and law enforcement personnel to examine device contents and even confiscate devices. Ensure no sensitive data is stored on the device and cooperate with authorized personnel to abide by laws and regulations.

3.3   Place mobile computing devices in standby mode or power off when carrying between buildings or transporting from one location to another.

3.4   Do not use or connect to non–Capital One networks, except for legitimate, owner–permitted connections for the sole purpose of making an immediate Virtual Private Network (VPN) connection to the Capital One network.  This includes connections for the purpose of Internet queries, which should be made through the Capital One VPN connection for the protection of the user, mobile computing devices, and Capital One data.

*Legitimate, owner–permitted connections are defined as network connections where the user has been granted permission to use the network by the owner of the connection either because that network is public (e.g. a connection provided through a business such as Starbuck's or Panera Bread Company) or the private connection owner is aware of the user.*

3.5   Do not take equipment off premises without authorization.

3.6   When working in public areas, take measures to ensure unauthorized parties do not obtain Capital One information, including but not limited to:
- Verbal communications (phone, in person, etc.)

CAPITAL ONE CONFIDENTIAL
Prepared by Information Security

Confidential Treatment Requested
by Capital One Financial Corp.

0041
SECP-COF-00006311



- Written information
- Information displayed on screens (laptop, cell phone, tablet, etc.)

## 4.0    Instant Messaging and Electronic Mail

Capital One authorized electronic mail (email) and instant messaging (IM) systems and software are used primarily for business purposes on Capital One approved end user computing resources.  Incidental personal use of email and IM is permitted when an associate is not on working time, if it is limited and reasonable.  Working time is defined as all hours when an associate is expected to be working but does not include work breaks and meal periods.

Be aware that the user has no right to privacy with regard to instant messaging and electronic mail.  Any permissible, incidental personal use does not in any way diminish the fact there can be no expectation of privacy or confidentiality.   All emails and instant messages are the property of Capital One; therefore, Capital One may perform the following functions to ensure the proper use of these tools/systems:

- review of email or instant messages
- retrieval of user deleted emails and user deleted instant message conversations from back up systems

4.1    Do not download from the Internet and install personal instant messaging systems or email software.  These systems are unauthorized and unsupported by Capital One.

4.2    Do not engage in inappropriate email and/or instant messaging conduct or activities, including but not limited to:

- Using email and/or instant messaging for unlawful or malicious activities.
- Knowingly opening or sending an email or instant messaging attachment or other file that has been identified as containing malicious code.
- Knowingly opening or sending pornographic materials.
- Using abusive or objectionable language or harassment.
- Violating Intellectual Property laws.
- Misrepresenting oneself or Capital One.
- Engaging in activities that could cause congestion and disruption of networks and systems, including the sending of chain messages.

4.3    Do not send, save, view or forward material that is fraudulent, harassing, embarrassing, sexually explicit, profane, obscene, intimidating, defamatory, or otherwise unlawful via electronic messages.  Prohibited content includes, but is not limited to, comments,

CAPITAL ONE CONFIDENTIAL
Prepared by Information Security

Confidential Treatment Requested
by Capital One Financial Corp.

0042
SECP-COF-00006312



jokes, and images that could offend someone on the basis of his or her race, color, creed, religion, sex, sexual orientation, gender identity, age, national origin, ancestry, citizenship, disability, or veteran status.

4.4   Do not use electronic mail or instant messaging accounts assigned to other individuals to send messages. Emails are only accessed by the intended recipient or other users specifically authorized to read them.

4.5   Do not send Company, Confidential, or Confidential/Proprietary information to personal or web based email addresses such as Yahoo mail, Hotmail or Gmail except for general, non-sensitive correspondence with customers as outlined in the Information Handling Procedure (2701.2.001).

4.6   Do not use non-Capital One email addresses to conduct Capital One business, including but not limited to, forwarding or auto-forwarding Capital one emails or meeting invites to non-business email addresses or accounts.

4.7   Do not send Confidential or Confidential/Proprietary information via email to third party recipients unless authorized and ensure it is appropriately secured using encryption.

4.8   Do not include Confidential or Confidential/Proprietary information in auto-replies.


## 5.0   Internet

Capital One systems for accessing the Internet are intended to be used primarily for business purposes.  Inappropriate use of the Internet is prohibited and could place Capital One at considerable financial and/or legal risk and open to public embarrassment.   All Internet access and activity is logged and monitored, and users shall have no expectations of privacy.

5.1   Do not engage in personal Internet activity that interferes with normal business activities.  Any personal use cannot:
   - be associated with for-profit outside business activity,
   - involve solicitation, or
   - impact the Capital One brand identity

5.2   Do not engage in inappropriate or potentially harmful Internet conduct or activities, including but not limited to:
   - Posting or disclosing non-public Capital One information on any publicly accessible Internet computer, bulletin board, chat room, blogs and social media sites.

Confidential Treatment Requested
by Capital One Financial Corp.                                          0043
                                                                       SECP-COF-00006313



- Clicking on pop–up links.
- Participating in gambling activities.
- Using the Internet for unlawful or malicious activities.
- Accessing pornographic or other objectionable material.
- Using abusive or objectionable language or harassment.
- Violating Intellectual Property laws.
- Misrepresenting oneself or Capital One.
- Engaging in other activities that could cause congestion and disruption of networks and systems, including the sending of chain messages.

5.3   Do not download unauthorized content, files or software from the Internet.

5.4   Do not upload or store Capital One Company, Confidential, or Confidential/Proprietary information to the Internet or unauthorized storage locations.

5.5   Do not procure cloud services prior to going through the appropriate Third Party Management process.

## 6.0   Capital One Network and Computing Assets

Protect the Capital One network from unauthorized use, malicious systems, viruses or applications which could expose Capital One information to unauthorized users.

6.1   Do not attach equipment or devices to the Capital One network unless with formal approvals via appropriate processes.  Personal devices are not to be used for business use unless using software approved for such use or explicit approval has been obtained from Information Security.

6.2   Use all computing assets primarily for business purposes.  Ensure that any personal use does not interfere with normal business activities, involve any illegal or illicit behaviors, associate with any for–profit outside business activity, involve solicitation, or impact the Capital One brand.

6.3   Do not install unapproved or unlicensed software on your Capital One provided end user machines. Ensure that all software is procured and installed via the organizational procurement and desktop management processes.

6.4   Do not procure equipment and end user devices unless through appropriate procurement processes and with the approval of the IT support teams.

CAPITAL ONE CONFIDENTIAL
Prepared by Information Security

Confidential Treatment Requested
by Capital One Financial Corp.

0044
SECP-COF-00006314



6.5     Do not attempt to circumvent or modify security controls.

6.6     Do not write, generate, compile, copy, collect, propagate, execute or attempt to introduce any computer code designed to self-replicate, damage or otherwise hinder the performance of, or access to, any Company information resource.

6.7     Do not jailbreak/root corporate mobile devices.

6.8     Do not use personal hotspots or MiFis while on Capital One premises.

6.9     Storage, capture, or transmission of Confidential or Confidential/Proprietary information on company issued or personal mobile devices is prohibited except via authorized, secure applications or via a device approved for this use.

## 7.0    Reporting Information Security Incidents and Weaknesses

Information security incidents and weaknesses associated with Capital One information systems must be communicated in a manner allowing timely corrective action to be taken. All workers are responsible for reporting any event(s) that might have an impact on the security of Capital One assets.

Examples of information security incidents and weaknesses are:

- Non-compliance with policy requirements
- System access violations or unauthorized access
- Intentional abuse or misuse of Capital One computing resources or information
- Suspected or actual intrusion events.

7.1     Contact your manager and the Computer Incident Response Team at informationsecuritycirt@capitalone.com immediately when faced with a security incident or identification of a potential security weakness.

7.2     Do not, under any circumstance, attempt to prove a suspected security weakness, as testing weaknesses might be interpreted as a potential misuse of the system. This could cause damage to the information system or service and result in disciplinary action for the individual performing the testing.

### Documents Associated With This Standard

Information Security Policy (#2701)

Confidential Treatment Requested
by Capital One Financial Corp.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | |
| Plaintiff, | Case No.  2:15-cv-00269-MAK |
| v. | |
| BONAN HUANG, et al. | |
| Defendants. | |

## DECLARATION OF MATTHEW D. CAIN, Ph.D

I, Matthew D. Cain, based on my personal knowledge, hereby declare and state:

1.      I am over eighteen years of age and competent to make this declaration.

2.      I am a Financial Economist employed in the Office of Litigation Economics, within the Division of Economic and Risk Analysis, at the United States Securities and Exchange Commission at its Washington, D.C. headquarters. As part of my job, I provide financial, economic, and statistical analyses to assist the Commission in its enforcement investigations.

3.      A true and correct copy of my expert report in this matter is attached as Exhibit 1. As in my report, for purposes of this declaration I am relying upon the testimony of Stephen Graham regarding the identities of the companies for which the Defendants, Bonan Huang and Nan Huang, searched and downloaded merchant-specific credit card transaction information from Capital One's Teradata Database Management System ("Teradata").

4.      Between February 2012 and January 2015, Defendants placed thousands of trades ahead of hundreds of earnings announcements relating to 171 companies for which they searched and downloaded merchant-specific information from Teradata.

5.      Bonan Huang and Nan Huang, respectively, traded in the securities of 157 and 149 companies for which they were in the possession of Capital One's information.

6.      A table summarizing Defendants' trading positions around quarterly earnings announcements in securities of the companies for which they had Capital One's credit card revenues information is attached as Exhibit 2.  A given trading position can include any combination of: stock purchase/sale, option purchase/sale, option exercise or expiration. I take the sum of the aggregated shares traded for a given Defendant in a given security around a given company earnings announcement date, and report these aggregations in the table.

7.      The columns in Exhibit 2 are: (1) Defendant name, (2) the earliest date in which an opening position was established, (3) the date of the company's earnings announcement, (4) the adjusted earnings announcement date, which is the next trading day if the earnings announcement was made after the close of trading, (5) company trading symbol, (6) number of shares underlying the trading position, and (7) the number of underlying shares that were closed out on the adjusted earnings announcement date.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 23, 2015, at Huron, Ohio.

Matthew D. Cain

2

**Exhibit 1: Expert Report of Matthew D. Cain, Ph. D.**

**Expert Report**

**of**

**Matthew D. Cain, Ph.D.**

**Securities and Exchange Commission, Plaintiff**

**v.**

**Bonan Huang and Nan Huang, Defendants**

**Case No. 2:15-cv-00269-MAK (E.D. Pa.)**

**September 18, 2015**

## I.      Qualifications

1.      I am a Financial Economist employed in the Office of Litigation Economics, within the Division of Economic and Risk Analysis, at the United States Securities and Exchange Commission at its Washington, D.C. headquarters. As part of my job, I provide financial, economic, and statistical analyses to assist the Commission in its enforcement investigations.

2.      I joined the SEC in January 2014. Prior to joining the SEC, I was an assistant professor of finance in the Mendoza College of Business at the University of Notre Dame. Both my research and my teaching have related to the economics of corporate law and financial markets. My academic research has been published in leading legal, finance, economics, and accounting journals. I have taught courses in financial markets and institutions, financial management, corporate restructuring, and mergers and acquisitions at both the graduate and undergraduate levels at the University of Notre Dame and Purdue University. I hold a Ph.D. in Finance from Purdue University and a B.S. in Finance from Grove City College. Prior to pursing a Ph.D., I was an analyst at National City Bank in the Debt Capital Markets Group. My curriculum vitae, which contains a list of my publications and experience, is attached hereto as **Exhibit A**.

3.      I receive an annual salary for the performance of my duties at the SEC. I have not been specially compensated for the preparation of my report, nor is my compensation in any way dependent upon the outcome of this case.

1

0050

## II.      Scope

4.      I have been asked by the Division of Enforcement to calculate the ill-gotten gains that Bonan Huang and Nan Huang (the "Defendants") obtained due to trading on material nonpublic information that they accessed in the course of their employment with Capital One from February 16, 2012 to January 31, 2015.

## III.     Documents Reviewed

5.      **Exhibit B** summarizes the facts and data that I considered in this matter. I make specific references to documents throughout the report. The facts and calculations set forth herein are based upon these documents, my personal knowledge, professional experience, and the exhibits discussed herein.

## IV.     Summary of Results

6.      I calculate the trading profits separately for Bonan Huang and for Nan Huang. I focus on the subset of trading profits involving companies that were identified as "tainted" or "tainted with statistical significance" by the SEC's expert Stephen Graham (the "Graham Report"). "Tainted" companies are those companies for which the Defendants accessed material nonpublic information during the course of their employment at Capital One. "Tainted companies with statistical significance" are a subset of the tainted companies that exhibit statistically significant correlations between their sales data in Capital One servers and the companies' actual reported quarterly sales, as explained in the Graham Report. I further focus on the subset of the Defendants' securities transactions around companies' quarterly earnings announcements.

2

7.      I find that from February 16, 2012 through January 31, 2015, Bonan Huang traded profitably through 308 earnings announcements in 122 unique tainted companies, generating trading profits of $2,294,696. He traded profitably through 239 earnings announcements in 88 unique tainted companies with statistical significance, generating trading profits of $1,936,193. During the same time period, Nan Huang generated trading profits of $4,403,545 in 105 unique tainted companies across 196 earnings announcements. Nan Huang generated trading profits of $4,046,661 in 86 unique tainted companies with statistical significance across 168 earnings announcements. These ill-gotten gain estimates are calculated before assessing any pre-judgment interest. The trading profits are summarized in **Exhibit C**. I note that of the trading profits through the announcement dates, over 99.65% of the Defendants' profits were obtained from tainted trades and over 89.00% were obtained from tainted trades with statistical significance.

8.      I also find that approximately 75% of Bonan Huang's trading profits and 79% of Nan Huang's trading profits in tainted companies surrounding company earnings announcements were made on positions that were held open for a duration of one (overnight) day or less. Approximately 93% of Bonan Huang's and 95% of Nan Huang's profits in tainted companies were made on positions held open for fewer than 10 calendar days. The results are similar for trading profits in tainted companies with statistical significance for both Defendants. These figures are summarized in **Exhibit D**.

9.      In sum, the Defendants generated significant trading profits on short-term trading positions established around companies' quarterly earnings announcements. A detailed explanation of my calculations proceeds in the following section.

## V.    Analysis

10.    I analyze the trading records covering trading activity by Bonan Huang and Nan Huang across multiple brokerage accounts. These files are listed in **Exhibit B**. The trading records contain separate rows for stock purchases, stock sales, option purchases, and option sales. I assume that if shares of stock are purchased or sold at the same price as the strike price of matching options that were previously bought or written for the same company, then these shares of stock represent an exercise of the given options. I further assume that stock and option purchases and sales occur on a first-in-first-out ("FIFO") accounting basis over time. As directed by counsel, I exclude any trading activity prior to February 16, 2012.

11.    **Exhibit C** provides a summary of trading profits earned by Bonan Huang and Nan Huang. I calculate trading profits (or losses) as the difference between the sale price and the purchase price multiplied by the number of shares or option contracts. If an option is exercised, I factor into the trading profit calculations the price paid or received when the option was originally purchased or sold. The overall profits or losses from the option exercised will also depend on the difference of the exercise price and the price that these shares were purchased for or sold on the market.

12.    I received a list of "tainted" stock symbols and company names from Stephen Graham, as explained in the Graham Report. It is listed in **Exhibit B** as "Tainted Ticker List from Stephen Graham.pdf" and is attached in its entirety in **Exhibit E**. This list represents the set of companies for which the Defendants accessed confidential sales transaction information from Capital One's data servers. I refer to trades made in the stocks and options of these companies as "tainted trades." The ticker list I received also includes a flag for ticker symbols with statistical significance in the Graham Report. I separately list this set of companies in **Exhibit F**.

4

13.     Next, I identify the trades that occurred around the quarterly earnings announcements of companies. If the Defendants successfully accessed and utilized material nonpublic information about the real-time revenues of companies, then they would be able to profitably trade on this information before it is released to the general public.

14.     In the first step, I download quarterly earnings announcement dates for all relevant companies from i/b/e/s.[1] Next, I merge all earnings announcement dates with each company traded, by trading symbol (stock or option ticker). I keep only the *first* earnings announcement date that occurs after the opening of a trade and before the closing of that trade by a given Defendant. If the duration of a given trade does not encompass any earnings announcement dates, then I exclude that trade and its profits from the analysis. If the timestamp of an i/b/e/s earnings announcement date is after 4:00pm EST, then I roll that date forward to the next trading day, since earnings announcements occurring after normal trading hours would be expected to affect trading prices on the subsequent trading day.[2]

15.     Finally, I calculate trading profits from the opening of a given trade through the earnings announcement date. If the actual trade was closed out on the earnings announcement date, then I use the actual trade price from the trading data (calculating a realized profit). If the actual trade was closed out after the earnings announcement date, then I use the closing stock or option price on that day (calculating an unrealized profit).[3] Thus, I calculate trading profits from

---

[1]  I download the data from the Wharton Research Data Services (WRDS) website (https://wrds-web.wharton.upenn.edu/wrds/), "Detail History Actuals, Unadjusted" section of i/b/e/s.

[2]  The i/b/e/s earnings announcement on 3/16/2012 for Best Buy Inc. (ticker: BBY) has a timestamp of zero, and I was unable to locate a valid earnings announcement news release on Factiva or in Edgar for the company on this date, so I drop this announcement observation from the analysis.

[3]  I obtain closing stock prices from the Center for Research in Security Prices (CRSP) and option prices from OptionMetrics, both downloaded from the Wharton Research Data Services (WRDS) website (*Supra* note 1). Option closing prices are based on the midpoint of the closing best bid and best offer prices recorded in OptionMetrics. At the time of the download, OptionMetrics data was only available through August 31, 2014. For prices after this date, I calculate an option price as the difference between the closing stock price and the strike price for in-the-money options, or zero for out-of-the-money options.

the opening of a trade through the earnings announcement date, which encompasses the time period of the Defendants' information advantage. Once a company announces its trailing revenues and earnings results, this private information is now public; any profits generated subsequent to this release would not be tainted by the information.

16.     Column (3) of **Exhibit C** presents the trading profits through earnings announcement dates for the tainted and non-tainted companies. For this calculation, I sum up the trading profits through the announcement date across a given company earnings announcement. If this sum is positive for a given Defendant around a given earnings announcement, I include profits from these trades in Column (3); otherwise, I exclude them from the trading profits calculation.

17.     To illustrate this, assume that a trader has three open trades of Amazon.com stock through an earnings announcement date. Assume further that two of the trades earn profits of $100 and $200, respectively, and the third trade produces a loss of $50 through the announcement date. The sum of the net profit on the three trades is $250. I would consider all three trades in the profit calculation, allowing the $50 loss to offset some of the gains, since I consider this earnings announcement to represent one profitable information-taking event.

18.     Column (3), Row (1) reports $2,294,696 in trading profits through the announcement date in tainted trades for Bonan Huang across 122 companies for 308 earnings announcements. Row (2) of Column (3) reports $4,403,545 in trading profits through the announcement date in tainted trades for Nan Huang across 105 companies in 196 earnings announcements. These numbers represent the Defendants' ill-gotten gains from trading in tainted companies. These two figures sum in Row (3) to total ill-gotten gains of $6,698,242.

19.     The Defendants' profitable trading through the announcement date in non-tainted companies (Row (6)) sums to $22,986, or less than 0.35% of their total profitable trading through the announcement date. In other words, of the trading profits through the announcement dates, over 99.65% of the Defendants' profits were obtained from tainted trades.

20.     Separately, I perform these calculations but limited to the tainted companies with statistical significance. Bonan Huang earned $1,936,193 in profits through the announcement date across 88 companies for 239 earnings announcements. Nan Huang earned $4,046,661 in trading profits through the announcement date across 86 companies in 168 earnings announcements. These numbers represent the Defendants' ill-gotten gains from trading in tainted companies with statistical significance. These two figures sum to total ill-gotten gains of $5,982,854. These profits represent over 89.00% of the Defendants' trading profits through the announcement dates.

21.     I also calculate the duration of the trading positions for each Defendant for the tainted trades with profits through the announcement date in Panel A of **Exhibit D**. A duration of zero days indicates a day trade (the position opened on the announcement date and closed on the same date), a duration of one day indicates a trade held open over one night, etc. I measure duration as the difference between the trade opening date and the earnings announcement date, in calendar days. As Column (4) of Panel A indicates, approximately 75% of Bonan Huang's trades of this type had a duration of only one day, and approximately 93% had a duration of less than ten days. Similarly, Column (7) of Panel A shows that Nan Huang held about 79% of the trades open for one day and roughly 95% open for less than ten days.

22.     Panel B of Exhibit D reports similar statistics regarding the duration of trades for tainted companies with statistical significance. Among these trades, approximately 74% of

Bonan Huang's trades had a duration of only one day, and approximately 92% had a duration of less than ten days. Column (7) of Panel B shows that Nan Huang held about 77% of the trades open for one day and roughly 95% open for less than ten days.

Respectfully Submitted,

Matthew D. Cain

**EXHIBIT A: CV of Matthew D. Cain, Ph. D.**

**Matthew D. Cain, Ph. D.**
Financial Economist
Office of Litigation Economics
Division of Economic and Risk Analysis
U.S. Securities and Exchange Commission
100 F St. NE
Washington, DC 20549
 (202) 551-7658, cainma@sec.gov

## Education

Ph.D., Finance, August 2007, Purdue University, West Lafayette, IN
B.S., Finance, May 2001, Grove City College, Grove City, PA

## Professional and Academic Experience

*Economic Fellow / Financial Economist*
Office of Litigation Economics, Division of Economic and Risk Analysis
U.S. Securities and Exchange Commission
January 2014 to present

*Assistant Professor of Finance*
Mendoza College of Business, University of Notre Dame, Notre Dame, IN
July 2008 to January 2014

*Visiting Faculty*
Krannert School of Management, Purdue University, West Lafayette, IN
August 2007 to May 2008

*Analyst*
Debt Capital Markets, National City Bank, Cleveland, OH
2001 to 2003

## Publications

Provoking Corporate Governance Innovation: The Case of the Golden Leash (with Jill E. Fisch, Sean J. Griffith, and Steven Davidoff Solomon), *University of Pennsylvania Law Review*, forthcoming.

Broken Promises: Private Equity Bidding Behavior and the Value of Reputation (with Steven Davidoff Solomon and Antonio J. Macias), *Journal of Corporation Law*, forthcoming.

CEO Personal Risk-Taking and Corporate Policies (with Stephen B. McKeon), *Journal of Financial and Quantitative Analysis*, forthcoming.

A Great Game: The Dynamics of State Competition and Litigation (with Steven Davidoff Solomon), *Iowa Law Review* 100, 465-500 (2015).

0058

Information Production by Investment Banks: Evidence from Fairness Opinions (with David J. Denis), *Journal of Law and Economics* 56, 245-280 (2013).

Delaware's Competitive Reach (with Steven Davidoff Solomon), *Journal of Empirical Legal Studies* 9, 92-128 (2012).

Form Over Substance? Management Buy-outs and the Value of Corporate Process (with Steven Davidoff Solomon), *Delaware Journal of Corporate Law* 36, 1-54 (2011).

Earnouts: A Study of Financial Contracting in Acquisition Agreements (with David J. Denis and Diane K. Denis), *Journal of Accounting and Economics* 51, 151-170 (2011).


**Completed Working Papers**

Do Takeover Laws Matter? Evidence from Five Decades of Hostile Takeovers (with Steven Davidoff Solomon and Stephen B. McKeon)

Intermediation in Private Equity: The Role of Placement Agents (with Steven Davidoff Solomon and Stephen B. McKeon)


**Presentations**

U.C. Berkeley M&A Roundtable, New York, 2015
Cornell University, guest lecture, 2015
American Bar Association, Business Law, Private Equity M&A Subcommittee meeting, 2015
Virginia Commonwealth University, 2015
American Finance Association, annual meeting, 2015
Argentum Centre for Private Equity Symposium, Bergen, Norway, 2014
U.S. Securities and Exchange Commission, 2014
American Law and Economics Association, University of Chicago, 2014
The Brattle Group, 2013
U.S. Securities and Exchange Commission, 2013
Institute for Law and Economics, University of Pennsylvania, 2013
All Indiana Conference, 2013; 2010; 2009
American Law and Economics Association, Stanford Law School, 2012
George Washington University Law School, 2012
American Finance Association, annual meeting, 2012
Ohio State, 2011
Ohio University, 2011
Conference on Empirical Legal Studies, Yale Law School, 2010
Argentum Conference and Symposium on "Private Equity: The Road Ahead", Stockholm, Sweden, 2010
Purdue Alumni Conference, 2010
American Finance Association, annual meeting, 2008
Indiana University, 2008
Penn State, 2008
University of Arizona, 2008
University of Colorado, 2008
University of Florida, 2008
University of North Carolina at Chapel Hill, 2008
University of Notre Dame, 2008

0059

University of Oregon, 2008
University of Pittsburgh, 2008
Virginia Tech, 2008
Financial Management Association, annual meeting, 2007
University of Georgia, 2007
University of Kentucky, 2007
Western Finance Association, annual meeting, 2006


**Ad Hoc Journal Referee**:  *Review of Financial Studies*, *Journal of Financial and Quantitative Analysis*, *Journal of Empirical Legal Studies*, *Managerial and Decision Economics*, *Financial Management, Annals of Finance, Journal of Economics and Business*


**Teaching Experience**

University of Notre Dame, Mendoza College of Business
    FIN 70400:  Corporate Restructuring, Mergers & Acquisitions (MBA Elective), Fall: 2008-2013
    FIN 40410:  Mergers and Acquisitions, Fall: 2008-2013

Purdue University, Krannert School of Management
    MGMT 412: Financial Markets and Institutions, Spring: 2006 & 2008
    MGMT 610: Financial Management I (MBA Core), Fall: 2007

0060

**EXHIBIT B: Facts and Data Considered**

*Trade Records*

- Apex-Trade Activity-1-28-15.xlsx

- COR Clearing-Trade Blotter-1-26-15.xlsx

- ETrade-Sec Huang trade-1-27-15.xlsx

- InterActive  Brokers-Trade Blotter for U1330854 Nan Huang-1-27-15.xlsx

- OptionsHouse SEC Copy of Bonan Huang Blotters and Spreadsheets 1-16-2015.xlsx

- OptionsHouse-Huang – Trade Blotter-1-16-15.xlsx

- Scottrade.xlsx

- TradeStation.xlsx

- OptionsHouse Account Listing Email.pdf

*Publicly-Available Datasets*

- i/b/e/s quarterly earnings announcement dates, downloaded from the Wharton Research Data Services (WRDS) website (https://wrds-web.wharton.upenn.edu/wrds/), "Detail History Actuals, Unadjusted" section of i/b/e/s.

- Closing stock prices from the Center for Research in Security Prices (CRSP), downloaded from the Wharton Research Data Services (WRDS) website (https://wrds-web.wharton.upenn.edu/wrds/).

- Option closing bid-ask prices from OptionMetrics, downloaded from the Wharton Research Data Services (WRDS) website (https://wrds-web.wharton.upenn.edu/wrds/).

*Files Received from Stephen Graham*

Tainted Ticker List from Stephen Graham.pdf

**EXHIBIT C: Ill-gotten Gains of Nan Huang and Bonan Huang**

| Trading Profits Through Earnings Announcement Dates | | |
|---|---|---|
| **Trade Type** <br> **(1)** | **Name** <br> **(2)** | **Trading Profits** <br> **(3)** |
| 1) Tainted Trades | Bonan Huang | $2,294,696 |
| 2) Tainted Trades | Nan Huang | $4,403,545 |
| **3) Tainted Trades** | **Total** | **$6,698,242** |
| 4) Non-Tainted Trades | Bonan Huang | $16,502 |
| 5) Non-Tainted Trades | Nan Huang | $6,484 |
| **6) Non-Tainted Trades** | **Total** | **$22,986** |
| 7) All Trades | Bonan Huang | $2,311,198 |
| 8) All Trades | Nan Huang | $4,410,029 |
| **9) All Trades** | **Total** | **$6,721,228** |

13

## EXHIBIT D: Duration of Trading Positions

## Panel A: Tainted Companies

| Duration from Trade Open to Earnings Announcement Date for Profitable Tainted Trades | | | | | | |
|---|---|---|---|---|---|---|
| | Bonan Huang | | | Nan Huang | | |
| *Duration* | *Profit* | *% of Total* | *Cumulative %* | *Profit* | *% of Total* | *Cumulative %* |
| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
| Duration = 0 days | $2,000 | 0.1% | 0.1% | $17,262 | 0.4% | 0.4% |
| Duration = 1 days | $1,711,189 | 74.6% | 74.7% | $3,452,692 | 78.4% | 78.8% |
| Duration = 2 days | $162,933 | 7.1% | 81.8% | $328,190 | 7.5% | 86.3% |
| Duration = 3 days | $63,562 | 2.8% | 84.5% | $87,684 | 2.0% | 88.2% |
| Duration = 4 days | $45,339 | 2.0% | 86.5% | $141,678 | 3.2% | 91.5% |
| 5 <= Duration < 10 days | $142,040 | 6.2% | 92.7% | $167,460 | 3.8% | 95.3% |
| 10 <= Duration < 15 days | $26,752 | 1.2% | 93.9% | $9,690 | 0.2% | 95.5% |
| 15 <= Duration < 20 days | $40,313 | 1.8% | 95.6% | $74,588 | 1.7% | 97.2% |
| 20 <= Duration < 30 days | $59,924 | 2.6% | 98.2% | $61,690 | 1.4% | 98.6% |
| 30 <= Duration < 40 days | $19,444 | 0.8% | 99.1% | $19,523 | 0.4% | 99.0% |
| 40 <= Duration < 50 days | $12,200 | 0.5% | 99.6% | $30,517 | 0.7% | 99.7% |
| 50 <= Duration < 60 days | $5,307 | 0.2% | 99.8% | $12,573 | 0.3% | 100.0% |
| 60 <= Duration < 70 days | $1,914 | 0.1% | 99.9% | $0 | 0.0% | 100.0% |
| 70 <= Duration < 80 days | $0 | 0.0% | 99.9% | $0 | 0.0% | 100.0% |
| Duration >= 80 days | $1,780 | 0.1% | 100.0% | $0 | 0.0% | 100.0% |
| Total | $2,294,696 | 100.0% | | $4,403,545 | 100.0% | |

14

**EXHIBIT D,** *Continued*

**Panel B: Tainted Companies with Statistical Significance**

| Duration from Trade Open to Earnings Announcement Date for Profitable Tainted Trades with Statistical Significance | | | | | | |
|---|---|---|---|---|---|---|
| | Bonan Huang | | | Nan Huang | | |
| *Duration* | *Profit* | *% of Total* | *Cumulative %* | *Profit* | *% of Total* | *Cumulative %* |
| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
| Duration = 0 days | $1,524 | 0.1% | 0.1% | $17,262 | 0.4% | 0.4% |
| Duration = 1 days | $1,436,683 | 74.2% | 74.3% | $3,112,471 | 76.9% | 77.3% |
| Duration = 2 days | $137,078 | 7.1% | 81.4% | $322,467 | 8.0% | 85.3% |
| Duration = 3 days | $47,905 | 2.5% | 83.8% | $87,609 | 2.2% | 87.5% |
| Duration = 4 days | $41,550 | 2.1% | 86.0% | $141,678 | 3.5% | 91.0% |
| 5 <= Duration < 10 days | $124,497 | 6.4% | 92.4% | $167,460 | 4.1% | 95.1% |
| 10 <= Duration < 15 days | $24,192 | 1.2% | 93.7% | $0 | 0.0% | 95.1% |
| 15 <= Duration < 20 days | $39,718 | 2.1% | 95.7% | $74,588 | 1.8% | 97.0% |
| 20 <= Duration < 30 days | $48,544 | 2.5% | 98.2% | $61,690 | 1.5% | 98.5% |
| 30 <= Duration < 40 days | $18,568 | 1.0% | 99.2% | $18,347 | 0.5% | 98.9% |
| 40 <= Duration < 50 days | $8,833 | 0.5% | 99.6% | $30,517 | 0.8% | 99.7% |
| 50 <= Duration < 60 days | $5,307 | 0.3% | 99.9% | $12,573 | 0.3% | 100.0% |
| 60 <= Duration < 70 days | $1,794 | 0.1% | 100.0% | $0 | 0.0% | 100.0% |
| 70 <= Duration < 80 days | $0 | 0.0% | 100.0% | $0 | 0.0% | 100.0% |
| Duration >= 80 days | $0 | 0.0% | 100.0% | $0 | 0.0% | 100.0% |
| Total | $1,936,193 | 100.0% | | $4,046,661 | 100.0% | |

15

**EXHIBIT E: Tainted Ticker List**

## Tainted Ticker List

| | | | | | | |
|---|---|---|---|---|---|---|
| AAP | CASY | DTG | HSNI | NFLX | RT | TRLG |
| AAPL | CATO | EAT | HTSI | NGVC | RUE | TSCO |
| ACOM | CBK | EBAY | HTZ | NILE | RUTH | TTS |
| AEO | CBRL | ETH | HVT | NTRI | SBH | TUES |
| AMZN | CEC | EXPE | IRG | NUS | SBUX | TUMI |
| ANF | CHGG | EXPR | JACK | NWY | SCSS | TXRH |
| ANGI | CHS | FB | JCP | ODP | SCVL | UA |
| ANN | CHUY | FDO | JMBA | OMX | SEAS | ULTA |
| ARO | CMG | FINL | JOSB | ORLY | SFLY | URBN |
| ASNA | CMRG | FIVE | JWN | OSTK | SFM | USNA |
| AWAY | COH | FL | KATE | OUTR | SHOS | VITC |
| AZO | COLM | FLWS | KIRK | P | SHW | VPRT |
| BAGL | CONN | FNP | KKD | PBI | SIG | VRA |
| BBBY | CRCM | FOSL | KORS | PBPB | SIX | VSI |
| BBW | CRI | FRAN | KR | PBY | SKS | VZ |
| BBY | CRM | FRED | KSS | PCLN | SKX | WAG |
| BEBE | CROX | FRGI | LB | PETM | SMRT | WFM |
| BGFV | CST | FTD | LL | PETS | SPLS | WMAR |
| BIG | CSTR | FWM | LNKD | PIR | SPWH | WMK |
| BJRI | CTCT | GCO | LOCO | PLCE | SSI | WMT |
| BKE | CTRN | GES | LOW | PLKI | STMP | WSM |
| BKS | CWTR | GMAN | LULU | PNRA | SWY | WTSL |
| BOBE | DDS | GME | LZB | PSUN | SYX | WTW |
| BODY | DEST | GNC | M | PTRY | TCS | YELP |
| BONT | DFRG | GOGO | MCD | PZZA | TEA | Z |
| BSET | DG | GPS | MED | RAD | TFM | ZNGA |
| BURL | DIN | GRPN | MFB | RH | TGT | ZU |
| BWLD | DKS | GT | MFRM | RL | THI | ZUMZ |
| BWS | DLTR | HD | MIK | RLOC | TIF | |
| CAB | DNKN | HGG | MUSA | RNDY | TJX | |
| CACH | DPZ | HIBB | MW | ROST | TLYS | |
| CAKE | DRI | HLF | NATR | RRGB | TPX | |
| CAR | DSW | HRB | NDLS | RSH | TRLA | |

0065

**EXHIBIT F: Tainted Ticker List with Statistical Significance**

## Tainted Ticker List with Statistical Significance

| | | | | | | |
|---|---|---|---|---|---|---|
| AAP | CACH | DPZ | HD | NTRI | SCSS | TLYS |
| AAPL | CAR | DRI | HIBB | NUS | SCVL | TRLA |
| ACOM | CASY | DSW | HRB | NWY | SEAS | TSCO |
| AEO | CBRL | DTG | HSNI | ORLY | SFLY | TUMI |
| ANF | CEC | EXPE | JCP | PBI | SHW | TXRH |
| ANGI | CHS | EXPR | JOSB | PBPB | SIG | UA |
| ANN | CMG | FB | JWN | PCLN | SIX | ULTA |
| ARO | CMRG | FINL | KORS | PETM | SKS | URBN |
| ASNA | COH | FIVE | KSS | PETS | SKX | VPRT |
| AZO | COLM | FL | LL | PIR | SMRT | VRA |
| BBBY | CRI | FNP | LOW | PLCE | SSI | VSI |
| BBY | CRM | FOSL | LULU | PNRA | STMP | WAG |
| BGFV | CTCT | FRAN | LZB | PZZA | SWY | WMAR |
| BIG | DDS | GCO | M | RH | TEA | WMT |
| BKE | DFRG | GES | MED | ROST | TFM | WSM |
| BKS | DG | GMAN | MFRM | RRGB | TGT | YELP |
| BONT | DKS | GME | MW | RUE | THI | Z |
| BWLD | DLTR | GNC | NDLS | RUTH | TIF | ZUMZ |
| CAB | DNKN | GOGO | NILE | SBUX | TJX | |

17

**Exhibit 2: Defendants' Trades around Quarterly Announcements of Companies for Which They Searched and Downloaded Credit Card Transactions Information from Capital One**

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 8/8/2012 | 8/9/2012 | 8/9/2012 | AAP | 3,500 | 2,500 |
| Bonan Huang | 8/7/2013 | 8/8/2013 | 8/8/2013 | AAP | 6,400 | 6,400 |
| Bonan Huang | 2/3/2014 | 2/6/2014 | 2/6/2014 | AAP | 1,300 | 700 |
| Bonan Huang | 11/5/2014 | 11/6/2014 | 11/6/2014 | AAP | 500 | 500 |
| Bonan Huang | 7/24/2012 | 7/24/2012 | 7/25/2012 | AAPL | 100 | 100 |
| Bonan Huang | 10/25/2012 | 10/25/2012 | 10/26/2012 | AAPL | 400 | 400 |
| Bonan Huang | 7/23/2013 | 7/23/2013 | 7/24/2013 | AAPL | 900 | 900 |
| Bonan Huang | 10/28/2013 | 10/28/2013 | 10/29/2013 | AAPL | 200 | 200 |
| Bonan Huang | 4/8/2014 | 4/23/2014 | 4/24/2014 | AAPL | 600 | 200 |
| Bonan Huang | 7/22/2014 | 7/22/2014 | 7/23/2014 | AAPL | 500 | 500 |
| Bonan Huang | 10/1/2014 | 10/20/2014 | 10/21/2014 | AAPL | 3,300 | 1,500 |
| Bonan Huang | 3/6/2012 | 3/7/2012 | 3/7/2012 | AEO | 500 | 500 |
| Bonan Huang | 11/27/2012 | 11/28/2012 | 11/28/2012 | AEO | 500 | 500 |
| Bonan Huang | 2/21/2013 | 3/6/2013 | 3/6/2013 | AEO | 13,500 | 10,500 |
| Bonan Huang | 5/21/2013 | 5/22/2013 | 5/22/2013 | AEO | 1,000 | 1,000 |
| Bonan Huang | 3/10/2014 | 3/11/2014 | 3/11/2014 | AEO | 10,400 | 9,400 |
| Bonan Huang | 6/16/2014 | 8/20/2014 | 8/20/2014 | AEO | 18,000 | 9,000 |
| Bonan Huang | 12/4/2014 | 12/4/2014 | 12/5/2014 | AEO | 1,000 | 1,000 |
| Bonan Huang | 7/26/2012 | 7/26/2012 | 7/27/2012 | AMZN | 100 | 100 |
| Bonan Huang | 7/25/2013 | 7/25/2013 | 7/26/2013 | AMZN | 3,000 | 3,000 |
| Bonan Huang | 10/24/2013 | 10/24/2013 | 10/25/2013 | AMZN | 100 | 100 |
| Bonan Huang | 1/30/2014 | 1/30/2014 | 1/31/2014 | AMZN | 800 | 800 |
| Bonan Huang | 5/15/2012 | 5/16/2012 | 5/16/2012 | ANF | 1,000 | 1,000 |
| Bonan Huang | 2/15/2013 | 2/22/2013 | 2/22/2013 | ANF | 4,000 | 4,000 |
| Bonan Huang | 8/21/2013 | 8/22/2013 | 8/22/2013 | ANF | 500 | 500 |
| Bonan Huang | 10/25/2013 | 11/21/2013 | 11/21/2013 | ANF | 400 | 0 |
| Bonan Huang | 5/27/2014 | 5/29/2014 | 5/29/2014 | ANF | 5,500 | 5,500 |
| Bonan Huang | 8/27/2014 | 8/28/2014 | 8/28/2014 | ANF | 2,000 | 2,000 |
| Bonan Huang | 12/2/2014 | 12/3/2014 | 12/3/2014 | ANF | 2,500 | 2,500 |
| Bonan Huang | 4/5/2012 | 4/26/2012 | 4/27/2012 | ANGI | 2,000 | 2,000 |
| Bonan Huang | 4/23/2013 | 4/24/2013 | 4/25/2013 | ANGI | 1,000 | 1,000 |
| Bonan Huang | 11/27/2012 | 11/28/2012 | 11/28/2012 | ANN | 800 | 800 |
| Bonan Huang | 3/6/2014 | 3/14/2014 | 3/14/2014 | ANN | 500 | 500 |
| Bonan Huang | 11/20/2012 | 11/28/2012 | 11/29/2012 | ARO | 4,500 | 1,500 |
| Bonan Huang | 5/7/2013 | 5/23/2013 | 5/24/2013 | ARO | 2,700 | 0 |
| Bonan Huang | 10/1/2013 | 12/4/2013 | 12/5/2013 | ARO | 750 | 750 |
| Bonan Huang | 1/7/2014 | 3/13/2014 | 3/14/2014 | ARO | 34,800 | 800 |
| Bonan Huang | 12/4/2012 | 12/5/2012 | 12/6/2012 | ASNA | 3,500 | 3,500 |

22

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 9/6/2013 | 9/24/2013 | 9/25/2013 | ASNA | 68,900 | 66,500 |
| Bonan Huang | 10/28/2013 | 12/2/2013 | 12/3/2013 | ASNA | 1,800 | 500 |
| Bonan Huang | 3/3/2014 | 3/3/2014 | 3/4/2014 | ASNA | 2,500 | 2,000 |
| Bonan Huang | 9/17/2012 | 9/19/2012 | 9/19/2012 | AZO | 1,500 | 1,400 |
| Bonan Huang | 10/25/2013 | 12/10/2013 | 12/10/2013 | AZO | 6,100 | 6,100 |
| Bonan Huang | 3/3/2014 | 3/4/2014 | 3/4/2014 | AZO | 200 | 200 |
| Bonan Huang | 6/20/2012 | 6/20/2012 | 6/21/2012 | BBBY | 200 | 200 |
| Bonan Huang | 9/19/2012 | 9/19/2012 | 9/20/2012 | BBBY | 200 | 200 |
| Bonan Huang | 4/10/2013 | 4/10/2013 | 4/11/2013 | BBBY | 500 | 500 |
| Bonan Huang | 6/25/2014 | 6/25/2014 | 6/26/2014 | BBBY | 1,000 | 0 |
| Bonan Huang | 1/6/2015 | 1/8/2015 | 1/9/2015 | BBBY | 1,100 | 1,100 |
| Bonan Huang | 3/23/2012 | 3/29/2012 | 3/29/2012 | BBY | 500 | 500 |
| Bonan Huang | 8/20/2012 | 8/21/2012 | 8/21/2012 | BBY | 2,000 | 2,000 |
| Bonan Huang | 8/16/2013 | 8/20/2013 | 8/20/2013 | BBY | 6,600 | 5,000 |
| Bonan Huang | 11/14/2013 | 11/19/2013 | 11/19/2013 | BBY | 5,600 | 0 |
| Bonan Huang | 5/20/2014 | 5/22/2014 | 5/22/2014 | BBY | 1,800 | 1,800 |
| Bonan Huang | 8/25/2014 | 8/26/2014 | 8/26/2014 | BBY | 3,500 | 3,500 |
| Bonan Huang | 1/28/2013 | 1/31/2013 | 2/1/2013 | BEBE | 1,600 | 0 |
| Bonan Huang | 7/8/2013 | 8/29/2013 | 8/30/2013 | BEBE | 3,300 | 3,300 |
| Bonan Huang | 11/6/2013 | 11/7/2013 | 11/8/2013 | BEBE | 48,000 | 35,000 |
| Bonan Huang | 12/9/2013 | 2/6/2014 | 2/7/2014 | BEBE | 1,000 | 0 |
| Bonan Huang | 11/4/2014 | 11/6/2014 | 11/7/2014 | BEBE | 18,900 | 10,000 |
| Bonan Huang | 7/12/2013 | 7/30/2013 | 7/31/2013 | BGFV | 10,700 | 10,700 |
| Bonan Huang | 2/25/2014 | 2/25/2014 | 2/26/2014 | BGFV | 300 | 300 |
| Bonan Huang | 6/16/2014 | 7/29/2014 | 7/30/2014 | BGFV | 300 | 0 |
| Bonan Huang | 8/22/2012 | 8/23/2012 | 8/23/2012 | BIG | 2,000 | 2,000 |
| Bonan Huang | 12/5/2013 | 12/5/2013 | 12/6/2013 | BIG | 5,000 | 4,000 |
| Bonan Huang | 3/6/2014 | 3/7/2014 | 3/7/2014 | BIG | 500 | 500 |
| Bonan Huang | 5/21/2014 | 5/30/2014 | 5/30/2014 | BIG | 5,000 | 0 |
| Bonan Huang | 12/3/2014 | 12/5/2014 | 12/5/2014 | BIG | 5,500 | 4,500 |
| Bonan Huang | 4/25/2013 | 4/25/2013 | 4/26/2013 | BJRI | 500 | 500 |
| Bonan Huang | 6/26/2013 | 7/31/2013 | 8/1/2013 | BJRI | 200 | 200 |
| Bonan Huang | 10/25/2013 | 10/24/2013 | 10/25/2013 | BJRI | 500 | 0 |
| Bonan Huang | 4/29/2014 | 5/1/2014 | 5/2/2014 | BJRI | 2,000 | 0 |
| Bonan Huang | 7/21/2014 | 7/24/2014 | 7/25/2014 | BJRI | 200 | 200 |
| Bonan Huang | 10/23/2014 | 10/23/2014 | 10/24/2014 | BJRI | 1,500 | 1,500 |
| Bonan Huang | 6/23/2014 | 6/25/2014 | 6/25/2014 | BKS | 10,800 | 4,000 |
| Bonan Huang | 5/2/2013 | 5/2/2013 | 5/3/2013 | BODY | 9,000 | 5,000 |
| Bonan Huang | 6/17/2014 | 8/14/2014 | 8/14/2014 | BODY | 100 | 0 |
| Bonan Huang | 5/22/2013 | 5/23/2013 | 5/23/2013 | BONT | 6,000 | 5,000 |
| Bonan Huang | 11/1/2013 | 11/21/2013 | 11/21/2013 | BONT | 6,000 | 5,500 |
| Bonan Huang | 5/21/2014 | 5/22/2014 | 5/22/2014 | BONT | 4,500 | 2,500 |

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 11/19/2014 | 11/20/2014 | 11/20/2014 | BONT | 4,000 | 4,000 |
| Bonan Huang | 6/9/2014 | 6/10/2014 | 6/10/2014 | BURL | 1,300 | 500 |
| Bonan Huang | 12/8/2014 | 12/9/2014 | 12/9/2014 | BURL | 600 | 600 |
| Bonan Huang | 7/29/2013 | 7/30/2013 | 7/31/2013 | BWLD | 100 | 100 |
| Bonan Huang | 10/29/2013 | 10/29/2013 | 10/30/2013 | BWLD | 1,300 | 1,200 |
| Bonan Huang | 2/3/2014 | 2/4/2014 | 2/5/2014 | BWLD | 2,000 | 600 |
| Bonan Huang | 7/29/2014 | 7/29/2014 | 7/30/2014 | BWLD | 800 | 0 |
| Bonan Huang | 10/27/2014 | 10/27/2014 | 10/28/2014 | BWLD | 1,100 | 1,100 |
| Bonan Huang | 10/19/2012 | 10/25/2012 | 10/25/2012 | CAB | 100 | 100 |
| Bonan Huang | 12/26/2012 | 2/14/2013 | 2/14/2013 | CAB | 12,700 | 3,000 |
| Bonan Huang | 4/16/2013 | 4/25/2013 | 4/25/2013 | CAB | 650 | 600 |
| Bonan Huang | 2/12/2014 | 2/13/2014 | 2/13/2014 | CAB | 3,400 | 2,900 |
| Bonan Huang | 10/21/2014 | 10/23/2014 | 10/23/2014 | CAB | 2,000 | 2,000 |
| Bonan Huang | 7/25/2012 | 7/25/2012 | 7/26/2012 | CAKE | 1,000 | 1,000 |
| Bonan Huang | 2/20/2013 | 2/20/2013 | 2/21/2013 | CAKE | 500 | 500 |
| Bonan Huang | 4/24/2013 | 4/24/2013 | 4/25/2013 | CAKE | 1,000 | 1,000 |
| Bonan Huang | 10/21/2013 | 10/23/2013 | 10/24/2013 | CAKE | 500 | 0 |
| Bonan Huang | 9/10/2012 | 9/10/2012 | 9/11/2012 | CASY | 1,300 | 700 |
| Bonan Huang | 6/14/2013 | 6/13/2013 | 6/14/2013 | CASY | 50 | 0 |
| Bonan Huang | 9/16/2013 | 12/9/2013 | 12/10/2013 | CASY | 600 | 600 |
| Bonan Huang | 6/6/2013 | 6/7/2013 | 6/7/2013 | CBK | 2,600 | 2,000 |
| Bonan Huang | 7/31/2013 | 9/10/2013 | 9/10/2013 | CBK | 8,400 | 8,000 |
| Bonan Huang | 3/12/2014 | 3/13/2014 | 3/13/2014 | CBK | 4,000 | 4,000 |
| Bonan Huang | 9/18/2012 | 9/19/2012 | 9/19/2012 | CBRL | 1,600 | 1,400 |
| Bonan Huang | 2/15/2013 | 2/26/2013 | 2/26/2013 | CBRL | 2,000 | 2,000 |
| Bonan Huang | 5/16/2013 | 6/3/2013 | 6/3/2013 | CBRL | 500 | 500 |
| Bonan Huang | 9/17/2013 | 9/18/2013 | 9/18/2013 | CBRL | 1,000 | 1,000 |
| Bonan Huang | 2/21/2014 | 2/25/2014 | 2/25/2014 | CBRL | 6,300 | 2,500 |
| Bonan Huang | 4/29/2013 | 5/2/2013 | 5/3/2013 | CEC | 3,380 | 300 |
| Bonan Huang | 11/19/2012 | 11/20/2012 | 11/20/2012 | CHS | 1,000 | 1,000 |
| Bonan Huang | 2/27/2013 | 2/28/2013 | 2/28/2013 | CHS | 4,000 | 4,000 |
| Bonan Huang | 5/7/2013 | 5/29/2013 | 5/29/2013 | CHS | 2,000 | 2,000 |
| Bonan Huang | 8/27/2013 | 8/28/2013 | 8/28/2013 | CHS | 1,000 | 1,000 |
| Bonan Huang | 2/26/2014 | 2/27/2014 | 2/27/2014 | CHS | 5,100 | 5,100 |
| Bonan Huang | 7/19/2012 | 7/19/2012 | 7/20/2012 | CMG | 900 | 900 |
| Bonan Huang | 10/18/2012 | 10/18/2012 | 10/19/2012 | CMG | 200 | 200 |
| Bonan Huang | 4/18/2013 | 4/18/2013 | 4/19/2013 | CMG | 1,400 | 0 |
| Bonan Huang | 7/18/2013 | 7/18/2013 | 7/19/2013 | CMG | 700 | 400 |
| Bonan Huang | 10/15/2013 | 10/17/2013 | 10/18/2013 | CMG | 2,000 | 1,900 |
| Bonan Huang | 4/9/2014 | 4/17/2014 | 4/17/2014 | CMG | 4,500 | 4,100 |
| Bonan Huang | 7/17/2014 | 7/21/2014 | 7/22/2014 | CMG | 2,200 | 2,000 |
| Bonan Huang | 10/20/2014 | 10/20/2014 | 10/21/2014 | CMG | 400 | 400 |

24

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 3/14/2012 | 3/15/2012 | 3/15/2012 | CMRG | 1,230 | 1,230 |
| Bonan Huang | 4/23/2012 | 4/24/2012 | 4/24/2012 | COH | 400 | 400 |
| Bonan Huang | 7/30/2012 | 7/31/2012 | 7/31/2012 | COH | 800 | 600 |
| Bonan Huang | 10/22/2012 | 10/23/2012 | 10/23/2012 | COH | 700 | 700 |
| Bonan Huang | 1/14/2013 | 1/23/2013 | 1/23/2013 | COH | 4,040 | 4,040 |
| Bonan Huang | 4/22/2013 | 4/23/2013 | 4/23/2013 | COH | 4,600 | 4,600 |
| Bonan Huang | 7/24/2013 | 7/30/2013 | 7/30/2013 | COH | 4,300 | 3,800 |
| Bonan Huang | 10/17/2013 | 10/22/2013 | 10/22/2013 | COH | 38,600 | 38,100 |
| Bonan Huang | 1/21/2014 | 1/22/2014 | 1/22/2014 | COH | 3,000 | 3,000 |
| Bonan Huang | 4/25/2014 | 4/29/2014 | 4/29/2014 | COH | 41,800 | 38,800 |
| Bonan Huang | 10/27/2014 | 10/28/2014 | 10/28/2014 | COH | 38,000 | 38,000 |
| Bonan Huang | 2/4/2013 | 2/7/2013 | 2/8/2013 | COLM | 500 | 500 |
| Bonan Huang | 3/20/2014 | 3/27/2014 | 3/27/2014 | CONN | 800 | 0 |
| Bonan Huang | 5/7/2014 | 6/2/2014 | 6/2/2014 | CONN | 11,000 | 10,100 |
| Bonan Huang | 8/29/2014 | 9/2/2014 | 9/2/2014 | CONN | 1,400 | 0 |
| Bonan Huang | 2/26/2013 | 2/27/2013 | 2/27/2013 | CRI | 400 | 400 |
| Bonan Huang | 7/23/2013 | 7/25/2013 | 7/25/2013 | CRI | 3,800 | 2,000 |
| Bonan Huang | 10/23/2013 | 10/24/2013 | 10/24/2013 | CRI | 3,400 | 3,400 |
| Bonan Huang | 2/24/2014 | 2/26/2014 | 2/26/2014 | CRI | 2,200 | 1,700 |
| Bonan Huang | 6/18/2014 | 7/24/2014 | 7/24/2014 | CRI | 2,500 | 2,300 |
| Bonan Huang | 10/21/2014 | 10/23/2014 | 10/23/2014 | CRI | 5,100 | 4,500 |
| Bonan Huang | 8/23/2012 | 8/23/2012 | 8/24/2012 | CRM | 100 | 100 |
| Bonan Huang | 2/25/2013 | 2/28/2013 | 3/1/2013 | CRM | 500 | 500 |
| Bonan Huang | 8/29/2013 | 8/29/2013 | 8/30/2013 | CRM | 1,000 | 1,000 |
| Bonan Huang | 8/21/2014 | 8/21/2014 | 8/22/2014 | CRM | 1,000 | 1,000 |
| Bonan Huang | 10/25/2012 | 10/25/2012 | 10/26/2012 | CSTR | 200 | 200 |
| Bonan Huang | 2/5/2013 | 2/7/2013 | 2/8/2013 | CSTR | 600 | 500 |
| Bonan Huang | 4/25/2013 | 4/25/2013 | 4/26/2013 | CSTR | 5,000 | 2,500 |
| Bonan Huang | 8/20/2013 | 8/21/2013 | 8/21/2013 | CTRN | 300 | 300 |
| Bonan Huang | 11/18/2013 | 12/11/2013 | 12/12/2013 | CWTR | 2,106 | 0 |
| Bonan Huang | 7/19/2013 | 8/14/2013 | 8/15/2013 | DDS | 5,500 | 0 |
| Bonan Huang | 11/12/2014 | 11/13/2014 | 11/13/2014 | DDS | 1,000 | 1,000 |
| Bonan Huang | 2/17/2012 | 3/22/2012 | 3/22/2012 | DG | 6,535 | 4,400 |
| Bonan Huang | 3/27/2012 | 6/4/2012 | 6/5/2012 | DG | 6,500 | 2,000 |
| Bonan Huang | 9/4/2012 | 9/5/2012 | 9/5/2012 | DG | 1,400 | 400 |
| Bonan Huang | 3/21/2013 | 3/25/2013 | 3/25/2013 | DG | 3,000 | 3,000 |
| Bonan Huang | 9/3/2013 | 9/4/2013 | 9/4/2013 | DG | 500 | 500 |
| Bonan Huang | 12/4/2013 | 12/5/2013 | 12/5/2013 | DG | 2,000 | 1,000 |
| Bonan Huang | 6/2/2014 | 6/3/2014 | 6/3/2014 | DG | 7,000 | 7,000 |
| Bonan Huang | 11/9/2012 | 11/13/2012 | 11/13/2012 | DKS | 700 | 700 |
| Bonan Huang | 3/8/2013 | 3/11/2013 | 3/11/2013 | DKS | 2,500 | 2,500 |
| Bonan Huang | 5/20/2013 | 5/21/2013 | 5/21/2013 | DKS | 500 | 500 |

25

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 10/21/2013 | 11/19/2013 | 11/19/2013 | DKS | 8,600 | 6,500 |
| Bonan Huang | 2/25/2013 | 2/27/2013 | 2/27/2013 | DLTR | 200 | 200 |
| Bonan Huang | 8/21/2013 | 8/22/2013 | 8/22/2013 | DLTR | 6,800 | 6,800 |
| Bonan Huang | 7/19/2012 | 7/26/2012 | 7/26/2012 | DNKN | 1,200 | 1,200 |
| Bonan Huang | 10/16/2012 | 10/16/2012 | 10/16/2012 | DPZ | 300 | 300 |
| Bonan Huang | 3/20/2013 | 3/22/2013 | 3/22/2013 | DRI | 3,000 | 0 |
| Bonan Huang | 6/19/2013 | 6/21/2013 | 6/21/2013 | DRI | 7,000 | 7,000 |
| Bonan Huang | 12/18/2013 | 12/19/2013 | 12/19/2013 | DRI | 1,000 | 1,000 |
| Bonan Huang | 6/16/2014 | 6/20/2014 | 6/20/2014 | DRI | 6,300 | 4,500 |
| Bonan Huang | 3/18/2013 | 3/19/2013 | 3/19/2013 | DSW | 1,700 | 1,700 |
| Bonan Huang | 8/27/2013 | 8/27/2013 | 8/27/2013 | DSW | 1,000 | 0 |
| Bonan Huang | 11/21/2013 | 11/26/2013 | 11/26/2013 | DSW | 18,300 | 18,300 |
| Bonan Huang | 3/17/2014 | 3/18/2014 | 3/18/2014 | DSW | 2,800 | 2,800 |
| Bonan Huang | 8/25/2014 | 8/26/2014 | 8/26/2014 | DSW | 2,000 | 2,000 |
| Bonan Huang | 11/24/2014 | 11/25/2014 | 11/25/2014 | DSW | 3,500 | 2,000 |
| Bonan Huang | 8/6/2014 | 8/7/2014 | 8/7/2014 | EAT | 8,000 | 8,000 |
| Bonan Huang | 7/25/2013 | 7/25/2013 | 7/26/2013 | EXPE | 1,700 | 500 |
| Bonan Huang | 3/7/2012 | 3/7/2012 | 3/7/2012 | EXPR | 1,500 | 1,500 |
| Bonan Huang | 3/12/2013 | 3/13/2013 | 3/13/2013 | EXPR | 500 | 0 |
| Bonan Huang | 4/17/2013 | 5/30/2013 | 5/30/2013 | EXPR | 22,510 | 3,400 |
| Bonan Huang | 12/2/2013 | 12/4/2013 | 12/4/2013 | EXPR | 1,500 | 1,500 |
| Bonan Huang | 3/10/2014 | 3/12/2014 | 3/12/2014 | EXPR | 30,000 | 24,000 |
| Bonan Huang | 7/8/2014 | 8/27/2014 | 8/27/2014 | EXPR | 26,000 | 21,500 |
| Bonan Huang | 7/25/2012 | 7/26/2012 | 7/27/2012 | FB | 500 | 500 |
| Bonan Huang | 10/23/2012 | 10/23/2012 | 10/24/2012 | FB | 200 | 0 |
| Bonan Huang | 10/22/2013 | 10/30/2013 | 10/31/2013 | FB | 4,200 | 1,400 |
| Bonan Huang | 1/27/2014 | 1/29/2014 | 1/30/2014 | FB | 5,500 | 4,500 |
| Bonan Huang | 4/22/2014 | 4/23/2014 | 4/24/2014 | FB | 500 | 0 |
| Bonan Huang | 10/28/2014 | 10/28/2014 | 10/29/2014 | FB | 2,300 | 2,300 |
| Bonan Huang | 9/20/2013 | 10/9/2013 | 10/9/2013 | FDO | 4,300 | 3,800 |
| Bonan Huang | 1/3/2014 | 1/9/2014 | 1/9/2014 | FDO | 15,000 | 10,500 |
| Bonan Huang | 3/26/2014 | 4/10/2014 | 4/10/2014 | FDO | 1,000 | 1,000 |
| Bonan Huang | 7/3/2014 | 7/10/2014 | 7/10/2014 | FDO | 9,500 | 6,900 |
| Bonan Huang | 9/27/2012 | 9/28/2012 | 9/28/2012 | FINL | 1,500 | 1,500 |
| Bonan Huang | 9/23/2013 | 9/27/2013 | 9/27/2013 | FINL | 500 | 500 |
| Bonan Huang | 10/16/2013 | 12/20/2013 | 12/20/2013 | FINL | 2,500 | 0 |
| Bonan Huang | 6/26/2014 | 6/27/2014 | 6/27/2014 | FINL | 4,300 | 3,000 |
| Bonan Huang | 9/24/2014 | 9/26/2014 | 9/26/2014 | FINL | 10,000 | 0 |
| Bonan Huang | 3/26/2013 | 3/27/2013 | 3/28/2013 | FIVE | 1,000 | 500 |
| Bonan Huang | 3/25/2014 | 3/25/2014 | 3/26/2014 | FIVE | 6,000 | 1,000 |
| Bonan Huang | 4/24/2014 | 6/4/2014 | 6/5/2014 | FIVE | 800 | 0 |
| Bonan Huang | 11/15/2012 | 11/16/2012 | 11/16/2012 | FL | 300 | 300 |

26

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 8/21/2014 | 8/22/2014 | 8/22/2014 | FL | 13,500 | 12,000 |
| Bonan Huang | 8/6/2012 | 8/7/2012 | 8/7/2012 | FOSL | 300 | 300 |
| Bonan Huang | 5/6/2013 | 5/7/2013 | 5/7/2013 | FOSL | 900 | 500 |
| Bonan Huang | 11/4/2013 | 11/5/2013 | 11/6/2013 | FOSL | 2,600 | 1,800 |
| Bonan Huang | 5/12/2014 | 5/13/2014 | 5/14/2014 | FOSL | 6,600 | 1,000 |
| Bonan Huang | 9/4/2012 | 9/4/2012 | 9/5/2012 | FRAN | 800 | 800 |
| Bonan Huang | 12/4/2012 | 12/5/2012 | 12/5/2012 | FRAN | 800 | 800 |
| Bonan Huang | 5/17/2013 | 6/5/2013 | 6/6/2013 | FRAN | 3,700 | 3,200 |
| Bonan Huang | 9/3/2013 | 9/4/2013 | 9/4/2013 | FRAN | 3,500 | 3,500 |
| Bonan Huang | 3/20/2014 | 3/26/2014 | 3/26/2014 | FRAN | 11,400 | 6,500 |
| Bonan Huang | 9/8/2014 | 9/9/2014 | 9/9/2014 | FRAN | 4,500 | 3,500 |
| Bonan Huang | 12/3/2014 | 12/10/2014 | 12/10/2014 | FRAN | 6,000 | 6,000 |
| Bonan Huang | 3/4/2013 | 3/8/2013 | 3/8/2013 | GCO | 2,750 | 100 |
| Bonan Huang | 5/29/2013 | 5/31/2013 | 5/31/2013 | GCO | 2,305 | 2,000 |
| Bonan Huang | 3/11/2014 | 3/13/2014 | 3/13/2014 | GCO | 1,000 | 1,000 |
| Bonan Huang | 8/22/2012 | 8/22/2012 | 8/23/2012 | GES | 400 | 400 |
| Bonan Huang | 11/27/2012 | 11/28/2012 | 11/29/2012 | GES | 1,000 | 1,000 |
| Bonan Huang | 3/18/2013 | 3/20/2013 | 3/21/2013 | GES | 3,800 | 3,800 |
| Bonan Huang | 5/9/2013 | 5/30/2013 | 5/31/2013 | GES | 5,010 | 5,000 |
| Bonan Huang | 8/13/2013 | 8/28/2013 | 8/29/2013 | GES | 7,000 | 3,300 |
| Bonan Huang | 12/3/2013 | 12/4/2013 | 12/5/2013 | GES | 11,000 | 8,500 |
| Bonan Huang | 3/17/2014 | 3/19/2014 | 3/20/2014 | GES | 3,200 | 3,200 |
| Bonan Huang | 5/29/2014 | 5/29/2014 | 5/30/2014 | GES | 4,500 | 500 |
| Bonan Huang | 8/27/2014 | 8/27/2014 | 8/28/2014 | GES | 1,500 | 1,500 |
| Bonan Huang | 11/26/2014 | 12/3/2014 | 12/4/2014 | GES | 1,000 | 0 |
| Bonan Huang | 3/25/2013 | 3/25/2013 | 3/26/2013 | GMAN | 1,000 | 1,000 |
| Bonan Huang | 5/13/2013 | 5/23/2013 | 5/23/2013 | GMAN | 5,000 | 2,000 |
| Bonan Huang | 10/28/2013 | 12/2/2013 | 12/3/2013 | GMAN | 11,100 | 1,000 |
| Bonan Huang | 5/27/2014 | 5/28/2014 | 5/29/2014 | GMAN | 3,000 | 2,000 |
| Bonan Huang | 3/26/2013 | 3/28/2013 | 3/28/2013 | GME | 3,000 | 3,000 |
| Bonan Huang | 5/21/2013 | 5/23/2013 | 5/23/2013 | GME | 19,008 | 14,800 |
| Bonan Huang | 8/14/2013 | 8/22/2013 | 8/22/2013 | GME | 300 | 300 |
| Bonan Huang | 11/18/2013 | 11/21/2013 | 11/21/2013 | GME | 1,800 | 0 |
| Bonan Huang | 11/20/2014 | 11/20/2014 | 11/21/2014 | GME | 1,000 | 1,000 |
| Bonan Huang | 6/5/2014 | 7/29/2014 | 7/29/2014 | GNC | 1,500 | 1,000 |
| Bonan Huang | 10/29/2014 | 10/30/2014 | 10/30/2014 | GNC | 1,000 | 1,000 |
| Bonan Huang | 8/16/2013 | 8/22/2013 | 8/23/2013 | GPS | 7,700 | 4,500 |
| Bonan Huang | 2/27/2014 | 2/27/2014 | 2/28/2014 | GPS | 2,800 | 1,000 |
| Bonan Huang | 11/1/2013 | 11/7/2013 | 11/8/2013 | GRPN | 28,000 | 24,000 |
| Bonan Huang | 2/20/2014 | 2/20/2014 | 2/21/2014 | GRPN | 2,000 | 2,000 |
| Bonan Huang | 8/13/2012 | 8/14/2012 | 8/14/2012 | HD | 1,500 | 1,500 |
| Bonan Huang | 11/9/2012 | 11/13/2012 | 11/13/2012 | HD | 300 | 300 |

27

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 2/21/2013 | 2/26/2013 | 2/26/2013 | HD | 2,900 | 2,900 |
| Bonan Huang | 5/20/2013 | 5/21/2013 | 5/21/2013 | HD | 3,600 | 2,100 |
| Bonan Huang | 7/25/2013 | 8/20/2013 | 8/20/2013 | HD | 35,500 | 4,000 |
| Bonan Huang | 11/18/2013 | 11/19/2013 | 11/19/2013 | HD | 1,000 | 1,000 |
| Bonan Huang | 2/24/2014 | 2/25/2014 | 2/25/2014 | HD | 2,000 | 1,000 |
| Bonan Huang | 10/29/2013 | 10/31/2013 | 10/31/2013 | HGG | 32,000 | 20,000 |
| Bonan Huang | 11/15/2012 | 11/16/2012 | 11/16/2012 | HIBB | 200 | 200 |
| Bonan Huang | 10/3/2013 | 11/22/2013 | 11/22/2013 | HIBB | 2,000 | 0 |
| Bonan Huang | 2/20/2013 | 2/21/2013 | 2/21/2013 | HSNI | 500 | 0 |
| Bonan Huang | 4/22/2013 | 5/2/2013 | 5/2/2013 | HSNI | 4,440 | 2,400 |
| Bonan Huang | 7/31/2013 | 8/1/2013 | 8/1/2013 | HSNI | 200 | 0 |
| Bonan Huang | 11/5/2013 | 11/6/2013 | 11/6/2013 | HSNI | 500 | 500 |
| Bonan Huang | 5/13/2014 | 5/14/2014 | 5/15/2014 | JACK | 13,800 | 7,500 |
| Bonan Huang | 8/6/2014 | 8/6/2014 | 8/7/2014 | JACK | 1,400 | 1,400 |
| Bonan Huang | 2/23/2012 | 2/24/2012 | 2/24/2012 | JCP | 2,000 | 0 |
| Bonan Huang | 3/27/2012 | 5/15/2012 | 5/16/2012 | JCP | 14,600 | 8,400 |
| Bonan Huang | 7/24/2012 | 8/10/2012 | 8/10/2012 | JCP | 29,100 | 23,600 |
| Bonan Huang | 10/5/2012 | 11/9/2012 | 11/9/2012 | JCP | 41,000 | 38,000 |
| Bonan Huang | 1/2/2013 | 2/27/2013 | 2/28/2013 | JCP | 2,610 | 2,500 |
| Bonan Huang | 9/30/2013 | 11/20/2013 | 11/20/2013 | JCP | 8,300 | 1,000 |
| Bonan Huang | 5/15/2014 | 5/15/2014 | 5/16/2014 | JCP | 2,000 | 2,000 |
| Bonan Huang | 8/5/2013 | 8/5/2013 | 8/6/2013 | JMBA | 3,000 | 3,000 |
| Bonan Huang | 3/5/2014 | 3/6/2014 | 3/7/2014 | JMBA | 1,000 | 1,000 |
| Bonan Huang | 4/24/2014 | 5/8/2014 | 5/9/2014 | JMBA | 18,300 | 6,000 |
| Bonan Huang | 5/16/2014 | 8/4/2014 | 8/5/2014 | JMBA | 500 | 0 |
| Bonan Huang | 11/27/2012 | 11/28/2012 | 11/28/2012 | JOSB | 200 | 200 |
| Bonan Huang | 8/28/2013 | 9/5/2013 | 9/5/2013 | JOSB | 1,500 | 1,000 |
| Bonan Huang | 8/12/2013 | 8/15/2013 | 8/16/2013 | JWN | 2,000 | 2,000 |
| Bonan Huang | 11/12/2013 | 11/14/2013 | 11/15/2013 | JWN | 17,000 | 15,000 |
| Bonan Huang | 5/15/2014 | 5/15/2014 | 5/16/2014 | JWN | 1,000 | 1,000 |
| Bonan Huang | 8/14/2014 | 8/14/2014 | 8/15/2014 | JWN | 4,000 | 4,000 |
| Bonan Huang | 11/13/2014 | 11/13/2014 | 11/14/2014 | JWN | 3,200 | 1,000 |
| Bonan Huang | 10/9/2014 | 11/21/2014 | 11/21/2014 | KIRK | 3,000 | 3,000 |
| Bonan Huang | 5/19/2014 | 5/22/2014 | 5/22/2014 | KIRK | 6,500 | 4,000 |
| Bonan Huang | 11/26/2013 | 12/2/2013 | 12/3/2013 | KKD | 2,500 | 2,500 |
| Bonan Huang | 12/9/2014 | 12/9/2014 | 12/10/2014 | KKD | 4,500 | 4,500 |
| Bonan Huang | 8/13/2012 | 8/14/2012 | 8/14/2012 | KORS | 1,000 | 1,000 |
| Bonan Huang | 5/28/2013 | 5/29/2013 | 5/29/2013 | KORS | 2,300 | 2,000 |
| Bonan Huang | 8/5/2013 | 8/6/2013 | 8/6/2013 | KORS | 600 | 600 |
| Bonan Huang | 11/1/2013 | 11/5/2013 | 11/5/2013 | KORS | 3,800 | 3,300 |
| Bonan Huang | 2/3/2014 | 2/4/2014 | 2/4/2014 | KORS | 1,800 | 300 |
| Bonan Huang | 5/27/2014 | 5/28/2014 | 5/28/2014 | KORS | 1,000 | 700 |

28

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 8/1/2014 | 8/4/2014 | 8/4/2014 | KORS | 500 | 0 |
| Bonan Huang | 6/13/2012 | 6/14/2012 | 6/14/2012 | KR | 500 | 500 |
| Bonan Huang | 9/11/2013 | 9/12/2013 | 9/12/2013 | KR | 500 | 500 |
| Bonan Huang | 2/22/2012 | 2/23/2012 | 2/23/2012 | KSS | 1,500 | 1,500 |
| Bonan Huang | 2/26/2013 | 2/28/2013 | 2/28/2013 | KSS | 2,000 | 2,000 |
| Bonan Huang | 8/9/2013 | 8/15/2013 | 8/15/2013 | KSS | 1,500 | 0 |
| Bonan Huang | 11/13/2013 | 11/14/2013 | 11/14/2013 | KSS | 2,500 | 2,500 |
| Bonan Huang | 8/13/2014 | 8/14/2014 | 8/14/2014 | KSS | 6,000 | 4,500 |
| Bonan Huang | 10/23/2012 | 10/24/2012 | 10/24/2012 | LL | 700 | 700 |
| Bonan Huang | 4/17/2013 | 4/24/2013 | 4/24/2013 | LL | 1,140 | 1,100 |
| Bonan Huang | 7/23/2013 | 7/24/2013 | 7/24/2013 | LL | 500 | 500 |
| Bonan Huang | 9/27/2013 | 10/23/2013 | 10/23/2013 | LL | 102 | 0 |
| Bonan Huang | 1/24/2014 | 2/19/2014 | 2/19/2014 | LL | 13,200 | 1,000 |
| Bonan Huang | 10/21/2014 | 10/22/2014 | 10/22/2014 | LL | 4,000 | 3,000 |
| Bonan Huang | 8/1/2012 | 8/2/2012 | 8/3/2012 | LNKD | 800 | 800 |
| Bonan Huang | 2/5/2013 | 2/7/2013 | 2/8/2013 | LNKD | 2,200 | 2,200 |
| Bonan Huang | 5/3/2013 | 5/2/2013 | 5/3/2013 | LNKD | 1,300 | 1,300 |
| Bonan Huang | 8/1/2013 | 8/1/2013 | 8/2/2013 | LNKD | 2,600 | 2,400 |
| Bonan Huang | 2/6/2014 | 2/6/2014 | 2/7/2014 | LNKD | 600 | 600 |
| Bonan Huang | 4/28/2014 | 5/1/2014 | 5/2/2014 | LNKD | 800 | 600 |
| Bonan Huang | 10/30/2014 | 10/30/2014 | 10/31/2014 | LNKD | 2,500 | 2,400 |
| Bonan Huang | 11/16/2012 | 11/19/2012 | 11/19/2012 | LOW | 300 | 300 |
| Bonan Huang | 2/21/2013 | 2/25/2013 | 2/25/2013 | LOW | 6,500 | 6,500 |
| Bonan Huang | 8/12/2013 | 8/21/2013 | 8/21/2013 | LOW | 12,700 | 10,700 |
| Bonan Huang | 10/18/2013 | 11/20/2013 | 11/20/2013 | LOW | 12,900 | 3,700 |
| Bonan Huang | 2/24/2014 | 2/26/2014 | 2/26/2014 | LOW | 1,200 | 1,200 |
| Bonan Huang | 11/18/2012 | 11/19/2012 | 11/19/2012 | LOW | 1,600 | 1,600 |
| Bonan Huang | 9/6/2012 | 9/7/2012 | 9/7/2012 | LULU | 10,500 | 10,500 |
| Bonan Huang | 9/11/2013 | 9/12/2013 | 9/12/2013 | LULU | 100 | 100 |
| Bonan Huang | 11/14/2013 | 12/12/2013 | 12/12/2013 | LULU | 500 | 500 |
| Bonan Huang | 3/24/2014 | 3/27/2014 | 3/27/2014 | LULU | 8,000 | 500 |
| Bonan Huang | 9/10/2014 | 9/11/2014 | 9/11/2014 | LULU | 500 | 500 |
| Bonan Huang | 8/21/2012 | 8/21/2012 | 8/22/2012 | LZB | 1,300 | 1,300 |
| Bonan Huang | 2/19/2013 | 2/19/2013 | 2/20/2013 | LZB | 1,380 | 1,380 |
| Bonan Huang | 6/17/2013 | 6/18/2013 | 6/19/2013 | LZB | 300 | 0 |
| Bonan Huang | 2/14/2014 | 2/18/2014 | 2/19/2014 | LZB | 5,500 | 2,000 |
| Bonan Huang | 11/17/2014 | 11/18/2014 | 11/19/2014 | LZB | 10,500 | 10,000 |
| Bonan Huang | 5/14/2013 | 5/15/2013 | 5/15/2013 | M | 8,200 | 8,200 |
| Bonan Huang | 8/13/2013 | 8/14/2013 | 8/14/2013 | M | 1,000 | 500 |
| Bonan Huang | 11/8/2013 | 11/13/2013 | 11/13/2013 | M | 24,500 | 22,500 |
| Bonan Huang | 5/13/2014 | 5/14/2014 | 5/14/2014 | M | 9,800 | 7,500 |
| Bonan Huang | 11/10/2014 | 11/12/2014 | 11/12/2014 | M | 28,200 | 11,500 |

29

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 7/20/2012 | 7/23/2012 | 7/23/2012 | MCD | 500 | 0 |
| Bonan Huang | 10/17/2012 | 10/19/2012 | 10/19/2012 | MCD | 2,000 | 1,500 |
| Bonan Huang | 1/22/2013 | 1/23/2013 | 1/23/2013 | MCD | 1,000 | 1,000 |
| Bonan Huang | 7/19/2013 | 8/6/2013 | 8/7/2013 | MED | 5,900 | 5,900 |
| Bonan Huang | 5/5/2014 | 5/5/2014 | 5/6/2014 | MED | 4,000 | 4,000 |
| Bonan Huang | 8/7/2014 | 8/7/2014 | 8/8/2014 | MED | 4,000 | 3,500 |
| Bonan Huang | 10/17/2013 | 12/4/2013 | 12/5/2013 | MFRM | 14,200 | 12,500 |
| Bonan Huang | 9/4/2012 | 9/5/2012 | 9/6/2012 | MW | 1,500 | 1,500 |
| Bonan Huang | 11/30/2012 | 12/5/2012 | 12/6/2012 | MW | 2,400 | 500 |
| Bonan Huang | 9/6/2013 | 9/11/2013 | 9/12/2013 | MW | 1,100 | 1,100 |
| Bonan Huang | 9/10/2014 | 9/10/2014 | 9/11/2014 | MW | 300 | 0 |
| Bonan Huang | 12/10/2014 | 12/10/2014 | 12/11/2014 | MW | 1,000 | 1,000 |
| Bonan Huang | 2/26/2014 | 2/26/2014 | 2/27/2014 | NDLS | 1,300 | 1,000 |
| Bonan Huang | 11/5/2014 | 11/5/2014 | 11/6/2014 | NDLS | 3,000 | 1,000 |
| Bonan Huang | 4/19/2012 | 4/23/2012 | 4/24/2012 | NFLX | 200 | 200 |
| Bonan Huang | 7/24/2012 | 7/24/2012 | 7/25/2012 | NFLX | 800 | 800 |
| Bonan Huang | 10/22/2012 | 10/23/2012 | 10/24/2012 | NFLX | 300 | 300 |
| Bonan Huang | 1/23/2013 | 1/23/2013 | 1/24/2013 | NFLX | 700 | 0 |
| Bonan Huang | 7/23/2013 | 7/22/2013 | 7/23/2013 | NFLX | 300 | 200 |
| Bonan Huang | 1/22/2014 | 1/22/2014 | 1/23/2014 | NFLX | 600 | 0 |
| Bonan Huang | 4/21/2014 | 4/21/2014 | 4/22/2014 | NFLX | 400 | 400 |
| Bonan Huang | 10/15/2014 | 10/15/2014 | 10/16/2014 | NFLX | 300 | 200 |
| Bonan Huang | 8/5/2013 | 8/7/2013 | 8/8/2013 | NGVC | 1,500 | 1,500 |
| Bonan Huang | 11/19/2014 | 11/20/2014 | 11/21/2014 | NGVC | 3,500 | 1,500 |
| Bonan Huang | 1/6/2015 | 1/29/2015 | 1/30/2015 | NGVC | 500 | 0 |
| Bonan Huang | 1/7/2013 | 2/12/2013 | 2/13/2013 | NILE | 7,600 | 6,600 |
| Bonan Huang | 4/30/2013 | 5/2/2013 | 5/3/2013 | NILE | 570 | 500 |
| Bonan Huang | 6/11/2013 | 8/1/2013 | 8/1/2013 | NILE | 14,900 | 7,400 |
| Bonan Huang | 10/28/2013 | 10/31/2013 | 10/31/2013 | NILE | 9,000 | 5,000 |
| Bonan Huang | 2/4/2014 | 2/6/2014 | 2/6/2014 | NILE | 600 | 500 |
| Bonan Huang | 11/3/2014 | 11/3/2014 | 11/3/2014 | NTRI | 4,000 | 0 |
| Bonan Huang | 5/15/2013 | 5/23/2013 | 5/24/2013 | NWY | 4,999 | 2,999 |
| Bonan Huang | 10/24/2013 | 10/23/2013 | 10/24/2013 | ORLY | 100 | 0 |
| Bonan Huang | 2/5/2014 | 2/5/2014 | 2/6/2014 | ORLY | 100 | 0 |
| Bonan Huang | 7/22/2014 | 7/23/2014 | 7/24/2014 | ORLY | 2,100 | 1,500 |
| Bonan Huang | 4/23/2014 | 4/24/2014 | 4/24/2014 | OSTK | 4,400 | 2,500 |
| Bonan Huang | 7/8/2014 | 7/24/2014 | 7/24/2014 | OSTK | 500 | 0 |
| Bonan Huang | 5/1/2014 | 5/1/2014 | 5/2/2014 | OUTR | 6,000 | 6,000 |
| Bonan Huang | 7/28/2014 | 7/31/2014 | 8/1/2014 | OUTR | 11,000 | 10,500 |
| Bonan Huang | 10/30/2014 | 10/30/2014 | 10/31/2014 | OUTR | 2,000 | 2,000 |
| Bonan Huang | 8/6/2012 | 8/7/2012 | 8/8/2012 | PCLN | 1,100 | 600 |
| Bonan Huang | 11/1/2012 | 11/1/2012 | 11/2/2012 | PCLN | 2,200 | 1,700 |

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 2/21/2013 | 2/26/2013 | 2/27/2013 | PCLN | 500 | 400 |
| Bonan Huang | 4/16/2013 | 5/9/2013 | 5/10/2013 | PCLN | 1,804 | 1,600 |
| Bonan Huang | 8/6/2013 | 8/8/2013 | 8/9/2013 | PCLN | 100 | 100 |
| Bonan Huang | 11/7/2013 | 11/7/2013 | 11/8/2013 | PCLN | 100 | 100 |
| Bonan Huang | 5/7/2014 | 5/8/2014 | 5/8/2014 | PCLN | 200 | 200 |
| Bonan Huang | 11/3/2014 | 11/4/2014 | 11/4/2014 | PCLN | 300 | 0 |
| Bonan Huang | 8/20/2013 | 8/21/2013 | 8/21/2013 | PETM | 800 | 800 |
| Bonan Huang | 10/16/2013 | 10/21/2013 | 10/21/2013 | PETS | 2,200 | 2,200 |
| Bonan Huang | 1/17/2014 | 1/21/2014 | 1/21/2014 | PETS | 3,000 | 3,000 |
| Bonan Huang | 1/12/2015 | 1/20/2015 | 1/20/2015 | PETS | 1,000 | 0 |
| Bonan Huang | 6/13/2012 | 6/14/2012 | 6/14/2012 | PIR | 4,000 | 0 |
| Bonan Huang | 9/13/2012 | 9/13/2012 | 9/13/2012 | PIR | 4,000 | 0 |
| Bonan Huang | 9/13/2013 | 9/19/2013 | 9/19/2013 | PIR | 87,500 | 86,000 |
| Bonan Huang | 12/18/2013 | 12/19/2013 | 12/19/2013 | PIR | 3,000 | 2,800 |
| Bonan Huang | 6/18/2014 | 6/19/2014 | 6/19/2014 | PIR | 3,500 | 0 |
| Bonan Huang | 9/17/2014 | 9/17/2014 | 9/18/2014 | PIR | 1,000 | 0 |
| Bonan Huang | 8/15/2012 | 8/16/2012 | 8/16/2012 | PLCE | 200 | 200 |
| Bonan Huang | 11/13/2012 | 11/15/2012 | 11/15/2012 | PLCE | 1,500 | 1,500 |
| Bonan Huang | 3/25/2013 | 3/26/2013 | 3/26/2013 | PLCE | 3,000 | 3,000 |
| Bonan Huang | 5/13/2013 | 5/23/2013 | 5/23/2013 | PLCE | 3,700 | 2,500 |
| Bonan Huang | 11/22/2013 | 11/26/2013 | 11/26/2013 | PLCE | 3,800 | 1,800 |
| Bonan Huang | 3/5/2014 | 3/6/2014 | 3/6/2014 | PLCE | 4,200 | 3,700 |
| Bonan Huang | 8/20/2014 | 8/21/2014 | 8/21/2014 | PLCE | 18,500 | 17,000 |
| Bonan Huang | 10/22/2012 | 10/23/2012 | 10/24/2012 | PNRA | 600 | 300 |
| Bonan Huang | 10/21/2013 | 10/22/2013 | 10/23/2013 | PNRA | 500 | 500 |
| Bonan Huang | 4/28/2014 | 4/29/2014 | 4/30/2014 | PNRA | 2,700 | 100 |
| Bonan Huang | 7/29/2014 | 7/29/2014 | 7/30/2014 | PNRA | 2,200 | 200 |
| Bonan Huang | 8/29/2013 | 8/29/2013 | 8/30/2013 | PSUN | 6,666 | 6,666 |
| Bonan Huang | 3/17/2014 | 3/18/2014 | 3/19/2014 | PSUN | 7,000 | 4,500 |
| Bonan Huang | 10/18/2013 | 12/19/2013 | 12/19/2013 | RAD | 500 | 0 |
| Bonan Huang | 9/10/2013 | 9/10/2013 | 9/11/2013 | RH | 100 | 100 |
| Bonan Huang | 5/21/2012 | 5/22/2012 | 5/22/2012 | RL | 200 | 200 |
| Bonan Huang | 2/4/2013 | 2/6/2013 | 2/6/2013 | RL | 3,000 | 3,000 |
| Bonan Huang | 5/22/2013 | 5/23/2013 | 5/23/2013 | RL | 1,000 | 1,000 |
| Bonan Huang | 7/29/2013 | 8/7/2013 | 8/7/2013 | RL | 6,700 | 5,700 |
| Bonan Huang | 10/28/2014 | 10/29/2014 | 10/29/2014 | RL | 400 | 400 |
| Bonan Huang | 8/16/2013 | 8/22/2013 | 8/23/2013 | ROST | 2,000 | 2,000 |
| Bonan Huang | 8/15/2014 | 8/21/2014 | 8/22/2014 | ROST | 16,600 | 15,600 |
| Bonan Huang | 8/9/2013 | 8/15/2013 | 8/15/2013 | RRGB | 2,700 | 2,700 |
| Bonan Huang | 11/1/2013 | 11/5/2013 | 11/5/2013 | RRGB | 1,300 | 1,300 |
| Bonan Huang | 11/3/2014 | 11/4/2014 | 11/4/2014 | RRGB | 500 | 0 |
| Bonan Huang | 12/31/2013 | 1/8/2014 | 1/9/2014 | RT | 28,499 | 0 |

31

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 4/7/2014 | 4/9/2014 | 4/10/2014 | RT | 6,300 | 1,000 |
| Bonan Huang | 7/9/2014 | 7/29/2014 | 7/30/2014 | RT | 2,000 | 500 |
| Bonan Huang | 7/24/2012 | 7/26/2012 | 7/27/2012 | SBUX | 2,200 | 2,200 |
| Bonan Huang | 7/25/2013 | 7/25/2013 | 7/26/2013 | SBUX | 1,000 | 1,000 |
| Bonan Huang | 1/23/2014 | 1/23/2014 | 1/24/2014 | SBUX | 13,600 | 11,100 |
| Bonan Huang | 4/24/2014 | 4/24/2014 | 4/25/2014 | SBUX | 2,400 | 500 |
| Bonan Huang | 7/21/2014 | 7/24/2014 | 7/25/2014 | SBUX | 8,400 | 5,400 |
| Bonan Huang | 10/30/2014 | 10/30/2014 | 10/31/2014 | SBUX | 1,800 | 1,000 |
| Bonan Huang | 1/22/2013 | 1/24/2013 | 1/25/2013 | SCSS | 5,000 | 5,000 |
| Bonan Huang | 10/11/2013 | 10/16/2013 | 10/17/2013 | SCSS | 15,500 | 10,000 |
| Bonan Huang | 4/7/2014 | 4/17/2014 | 4/21/2014 | SCSS | 15,000 | 14,000 |
| Bonan Huang | 6/13/2014 | 7/16/2014 | 7/17/2014 | SCSS | 21,000 | 15,000 |
| Bonan Huang | 10/22/2014 | 10/22/2014 | 10/23/2014 | SCSS | 11,500 | 7,700 |
| Bonan Huang | 12/2/2013 | 12/2/2013 | 12/3/2013 | SCVL | 4,000 | 0 |
| Bonan Huang | 3/20/2014 | 3/20/2014 | 3/21/2014 | SCVL | 6,500 | 2,500 |
| Bonan Huang | 12/1/2014 | 12/1/2014 | 12/2/2014 | SCVL | 4,000 | 3,000 |
| Bonan Huang | 8/13/2013 | 8/13/2013 | 8/14/2013 | SEAS | 500 | 500 |
| Bonan Huang | 8/11/2014 | 8/13/2014 | 8/13/2014 | SEAS | 3,000 | 1,500 |
| Bonan Huang | 11/10/2014 | 11/12/2014 | 11/12/2014 | SEAS | 21,000 | 9,500 |
| Bonan Huang | 12/17/2012 | 2/5/2013 | 2/6/2013 | SFLY | 8,280 | 6,700 |
| Bonan Huang | 4/26/2013 | 5/1/2013 | 5/2/2013 | SFLY | 2,700 | 2,700 |
| Bonan Huang | 4/18/2012 | 4/19/2012 | 4/19/2012 | SHW | 500 | 500 |
| Bonan Huang | 7/12/2012 | 7/19/2012 | 7/19/2012 | SHW | 100 | 100 |
| Bonan Huang | 7/2/2013 | 7/18/2013 | 7/18/2013 | SHW | 1,800 | 1,800 |
| Bonan Huang | 10/21/2013 | 10/25/2013 | 10/25/2013 | SHW | 5,800 | 5,300 |
| Bonan Huang | 11/19/2012 | 11/20/2012 | 11/20/2012 | SIG | 500 | 500 |
| Bonan Huang | 8/28/2013 | 8/29/2013 | 8/29/2013 | SIG | 1,000 | 1,000 |
| Bonan Huang | 11/22/2013 | 11/26/2013 | 11/26/2013 | SIG | 1,100 | 1,100 |
| Bonan Huang | 3/26/2014 | 3/27/2014 | 3/27/2014 | SIG | 1,500 | 0 |
| Bonan Huang | 1/14/2013 | 2/20/2013 | 2/20/2013 | SIX | 3,738 | 2,000 |
| Bonan Huang | 4/18/2013 | 4/22/2013 | 4/22/2013 | SIX | 3,200 | 2,500 |
| Bonan Huang | 7/11/2013 | 7/22/2013 | 7/22/2013 | SIX | 14,800 | 8,000 |
| Bonan Huang | 7/23/2014 | 7/23/2014 | 7/23/2014 | SKX | 500 | 0 |
| Bonan Huang | 8/15/2012 | 8/16/2012 | 8/16/2012 | SMRT | 1,000 | 1,000 |
| Bonan Huang | 8/20/2013 | 8/21/2013 | 8/21/2013 | SPLS | 2,000 | 0 |
| Bonan Huang | 5/19/2014 | 5/20/2014 | 5/20/2014 | SPLS | 1,000 | 1,000 |
| Bonan Huang | 8/19/2014 | 8/20/2014 | 8/20/2014 | SPLS | 1,000 | 1,000 |
| Bonan Huang | 11/18/2014 | 11/19/2014 | 11/19/2014 | SPLS | 3,000 | 3,000 |
| Bonan Huang | 3/6/2013 | 3/12/2013 | 3/12/2013 | SSI | 1,000 | 0 |
| Bonan Huang | 11/19/2013 | 11/21/2013 | 11/21/2013 | SSI | 2,000 | 2,000 |
| Bonan Huang | 11/17/2014 | 11/19/2014 | 11/19/2014 | SSI | 9,700 | 5,200 |
| Bonan Huang | 7/24/2012 | 7/25/2012 | 7/26/2012 | STMP | 1,000 | 1,000 |

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 7/17/2013 | 7/18/2013 | 7/18/2013 | SWY | 1,000 | 1,000 |
| Bonan Huang | 7/8/2014 | 7/8/2014 | 7/9/2014 | TCS | 2,200 | 500 |
| Bonan Huang | 8/28/2012 | 8/29/2012 | 8/29/2012 | TFM | 100 | 100 |
| Bonan Huang | 5/28/2013 | 5/29/2013 | 5/29/2013 | TFM | 1,400 | 1,400 |
| Bonan Huang | 5/7/2014 | 5/22/2014 | 5/23/2014 | TFM | 29,500 | 1,000 |
| Bonan Huang | 8/21/2014 | 8/21/2014 | 8/22/2014 | TFM | 1,000 | 0 |
| Bonan Huang | 8/15/2013 | 8/21/2013 | 8/21/2013 | TGT | 5,100 | 5,100 |
| Bonan Huang | 5/20/2014 | 5/21/2014 | 5/21/2014 | TGT | 2,500 | 2,000 |
| Bonan Huang | 3/21/2013 | 3/22/2013 | 3/22/2013 | TIF | 500 | 500 |
| Bonan Huang | 5/24/2013 | 5/28/2013 | 5/28/2013 | TIF | 3,500 | 3,000 |
| Bonan Huang | 5/20/2013 | 5/21/2013 | 5/21/2013 | TJX | 2,500 | 0 |
| Bonan Huang | 8/13/2013 | 8/20/2013 | 8/20/2013 | TJX | 8,500 | 8,500 |
| Bonan Huang | 2/19/2014 | 2/26/2014 | 2/26/2014 | TJX | 1,500 | 500 |
| Bonan Huang | 11/26/2013 | 11/26/2013 | 11/27/2013 | TLYS | 1,000 | 1,000 |
| Bonan Huang | 12/3/2014 | 12/3/2014 | 12/4/2014 | TLYS | 14,500 | 7,500 |
| Bonan Huang | 7/18/2012 | 7/24/2012 | 7/25/2012 | TPX | 1,500 | 0 |
| Bonan Huang | 10/23/2012 | 10/24/2012 | 10/25/2012 | TSCO | 200 | 200 |
| Bonan Huang | 1/14/2013 | 1/30/2013 | 1/31/2013 | TSCO | 2,425 | 1,300 |
| Bonan Huang | 4/24/2013 | 4/24/2013 | 4/25/2013 | TSCO | 500 | 500 |
| Bonan Huang | 7/24/2013 | 7/24/2013 | 7/25/2013 | TSCO | 3,900 | 2,000 |
| Bonan Huang | 4/21/2014 | 4/23/2014 | 4/24/2014 | TSCO | 4,400 | 4,400 |
| Bonan Huang | 8/21/2014 | 8/21/2014 | 8/22/2014 | TUES | 2,500 | 1,500 |
| Bonan Huang | 7/29/2013 | 7/29/2013 | 7/30/2013 | TXRH | 3,000 | 2,500 |
| Bonan Huang | 10/23/2013 | 10/24/2013 | 10/24/2013 | UA | 2,300 | 1,500 |
| Bonan Huang | 7/23/2014 | 7/24/2014 | 7/24/2014 | UA | 2,900 | 2,300 |
| Bonan Huang | 9/6/2012 | 9/6/2012 | 9/7/2012 | ULTA | 1,000 | 1,000 |
| Bonan Huang | 11/29/2012 | 11/29/2012 | 11/30/2012 | ULTA | 39 | 0 |
| Bonan Huang | 3/14/2013 | 3/14/2013 | 3/15/2013 | ULTA | 300 | 100 |
| Bonan Huang | 6/11/2013 | 6/11/2013 | 6/12/2013 | ULTA | 1,530 | 1,500 |
| Bonan Huang | 9/12/2013 | 9/12/2013 | 9/13/2013 | ULTA | 1,000 | 1,000 |
| Bonan Huang | 12/5/2013 | 12/5/2013 | 12/6/2013 | ULTA | 800 | 800 |
| Bonan Huang | 6/10/2014 | 6/10/2014 | 6/11/2014 | ULTA | 400 | 400 |
| Bonan Huang | 9/9/2014 | 9/11/2014 | 9/12/2014 | ULTA | 3,400 | 3,100 |
| Bonan Huang | 12/4/2014 | 12/4/2014 | 12/5/2014 | ULTA | 400 | 400 |
| Bonan Huang | 11/18/2013 | 11/18/2013 | 11/19/2013 | URBN | 1,000 | 1,000 |
| Bonan Huang | 8/18/2014 | 8/18/2014 | 8/19/2014 | URBN | 5,000 | 3,500 |
| Bonan Huang | 2/27/2013 | 2/28/2013 | 2/28/2013 | VITC | 2,000 | 2,000 |
| Bonan Huang | 11/5/2013 | 11/6/2013 | 11/6/2013 | VITC | 4,000 | 4,000 |
| Bonan Huang | 4/25/2013 | 4/25/2013 | 4/26/2013 | VPRT | 1,000 | 1,000 |
| Bonan Huang | 1/29/2014 | 1/29/2014 | 1/30/2014 | VPRT | 1,000 | 1,000 |
| Bonan Huang | 4/29/2014 | 4/29/2014 | 4/30/2014 | VPRT | 7,000 | 7,000 |
| Bonan Huang | 6/20/2014 | 7/30/2014 | 7/31/2014 | VPRT | 30 | 0 |

33

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 5/31/2012 | 5/31/2012 | 6/1/2012 | VRA | 300 | 100 |
| Bonan Huang | 8/29/2012 | 8/29/2012 | 8/30/2012 | VRA | 400 | 400 |
| Bonan Huang | 12/3/2012 | 12/5/2012 | 12/6/2012 | VRA | 1,500 | 300 |
| Bonan Huang | 1/2/2013 | 3/13/2013 | 3/14/2013 | VRA | 2,150 | 2,000 |
| Bonan Huang | 9/9/2014 | 9/10/2014 | 9/10/2014 | VRA | 3,000 | 0 |
| Bonan Huang | 11/4/2013 | 11/5/2013 | 11/5/2013 | VSI | 300 | 0 |
| Bonan Huang | 6/11/2014 | 8/5/2014 | 8/5/2014 | VSI | 100 | 0 |
| Bonan Huang | 11/3/2014 | 11/4/2014 | 11/4/2014 | VSI | 800 | 800 |
| Bonan Huang | 7/16/2012 | 7/19/2012 | 7/19/2012 | VZ | 1,000 | 1,000 |
| Bonan Huang | 9/27/2012 | 9/28/2012 | 9/28/2012 | WAG | 1,000 | 1,000 |
| Bonan Huang | 11/2/2012 | 11/7/2012 | 11/8/2012 | WFM | 1,600 | 1,600 |
| Bonan Huang | 1/31/2013 | 2/13/2013 | 2/14/2013 | WFM | 1,000 | 1,000 |
| Bonan Huang | 5/7/2013 | 5/7/2013 | 5/8/2013 | WFM | 2,400 | 2,000 |
| Bonan Huang | 7/26/2013 | 7/31/2013 | 8/1/2013 | WFM | 2,600 | 1,100 |
| Bonan Huang | 11/4/2013 | 11/6/2013 | 11/7/2013 | WFM | 12,400 | 10,900 |
| Bonan Huang | 2/13/2014 | 2/12/2014 | 2/13/2014 | WFM | 500 | 0 |
| Bonan Huang | 2/16/2012 | 2/21/2012 | 2/21/2012 | WMT | 3,200 | 1,000 |
| Bonan Huang | 5/16/2012 | 5/17/2012 | 5/17/2012 | WMT | 500 | 500 |
| Bonan Huang | 11/13/2012 | 11/15/2012 | 11/15/2012 | WMT | 3,200 | 2,200 |
| Bonan Huang | 5/14/2013 | 5/16/2013 | 5/16/2013 | WMT | 10,500 | 6,500 |
| Bonan Huang | 8/13/2013 | 8/15/2013 | 8/15/2013 | WMT | 4,000 | 1,000 |
| Bonan Huang | 3/7/2012 | 3/8/2012 | 3/8/2012 | WSM | 1,000 | 1,000 |
| Bonan Huang | 8/21/2012 | 8/21/2012 | 8/22/2012 | WSM | 1,600 | 1,600 |
| Bonan Huang | 3/15/2013 | 3/19/2013 | 3/20/2013 | WSM | 1,700 | 1,700 |
| Bonan Huang | 5/23/2013 | 5/23/2013 | 5/24/2013 | WSM | 2,000 | 2,000 |
| Bonan Huang | 11/18/2013 | 11/20/2013 | 11/21/2013 | WSM | 6,000 | 5,500 |
| Bonan Huang | 8/27/2014 | 8/27/2014 | 8/28/2014 | WSM | 1,500 | 1,000 |
| Bonan Huang | 6/10/2014 | 9/3/2014 | 9/3/2014 | WTSL | 1,000 | 0 |
| Bonan Huang | 7/31/2012 | 8/1/2012 | 8/2/2012 | WTW | 1,000 | 0 |
| Bonan Huang | 11/5/2012 | 11/5/2012 | 11/6/2012 | WTW | 5,500 | 0 |
| Bonan Huang | 8/1/2013 | 8/1/2013 | 8/2/2013 | WTW | 2,500 | 2,500 |
| Bonan Huang | 2/13/2014 | 2/13/2014 | 2/14/2014 | WTW | 1,500 | 0 |
| Bonan Huang | 7/30/2014 | 7/30/2014 | 7/31/2014 | WTW | 2,500 | 2,500 |
| Bonan Huang | 10/29/2014 | 10/29/2014 | 10/30/2014 | WTW | 1,000 | 1,000 |
| Bonan Huang | 10/7/2013 | 10/29/2013 | 10/30/2013 | YELP | 2,900 | 2,700 |
| Bonan Huang | 1/29/2014 | 2/5/2014 | 2/6/2014 | YELP | 2,500 | 1,600 |
| Bonan Huang | 10/22/2014 | 10/22/2014 | 10/23/2014 | YELP | 1,600 | 1,600 |
| Bonan Huang | 11/5/2012 | 11/5/2012 | 11/6/2012 | Z | 1,000 | 1,000 |
| Bonan Huang | 1/29/2013 | 2/13/2013 | 2/14/2013 | Z | 70 | 70 |
| Bonan Huang | 8/5/2013 | 8/6/2013 | 8/7/2013 | Z | 100 | 100 |
| Bonan Huang | 11/5/2013 | 11/5/2013 | 11/6/2013 | Z | 2,900 | 2,900 |
| Bonan Huang | 2/24/2014 | 2/24/2014 | 2/25/2014 | ZU | 1,000 | 1,000 |

34

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Bonan Huang | 8/30/2012 | 8/30/2012 | 8/31/2012 | ZUMZ | 5,500 | 5,000 |
| Bonan Huang | 11/28/2012 | 11/29/2012 | 11/30/2012 | ZUMZ | 200 | 200 |
| Bonan Huang | 5/23/2013 | 5/23/2013 | 5/24/2013 | ZUMZ | 1,500 | 0 |
| Bonan Huang | 8/15/2013 | 9/5/2013 | 9/6/2013 | ZUMZ | 200 | 200 |
| Nan Huang | 8/7/2013 | 8/8/2013 | 8/8/2013 | AAP | 6,000 | 6,000 |
| Nan Huang | 2/5/2014 | 2/6/2014 | 2/6/2014 | AAP | 9,000 | 9,000 |
| Nan Huang | 7/23/2013 | 7/23/2013 | 7/24/2013 | AAPL | 1,500 | 0 |
| Nan Huang | 10/20/2014 | 10/20/2014 | 10/21/2014 | AAPL | 5,000 | 5,000 |
| Nan Huang | 11/27/2012 | 11/28/2012 | 11/28/2012 | AEO | 3,000 | 3,000 |
| Nan Huang | 3/4/2013 | 3/6/2013 | 3/6/2013 | AEO | 54,000 | 54,000 |
| Nan Huang | 3/10/2014 | 3/11/2014 | 3/11/2014 | AEO | 35,000 | 35,000 |
| Nan Huang | 5/20/2014 | 5/21/2014 | 5/21/2014 | AEO | 1,000 | 1,000 |
| Nan Huang | 8/19/2014 | 8/20/2014 | 8/20/2014 | AEO | 10,000 | 10,000 |
| Nan Huang | 12/4/2014 | 12/4/2014 | 12/5/2014 | AEO | 1,000 | 1,000 |
| Nan Huang | 1/30/2014 | 1/30/2014 | 1/31/2014 | AMZN | 100 | 100 |
| Nan Huang | 4/24/2014 | 4/24/2014 | 4/25/2014 | AMZN | 100 | 100 |
| Nan Huang | 2/15/2013 | 2/22/2013 | 2/22/2013 | ANF | 19,300 | 19,300 |
| Nan Huang | 5/23/2013 | 5/24/2013 | 5/24/2013 | ANF | 600 | 600 |
| Nan Huang | 8/21/2013 | 8/22/2013 | 8/22/2013 | ANF | 4,000 | 0 |
| Nan Huang | 4/23/2013 | 4/24/2013 | 4/25/2013 | ANGI | 28,000 | 28,000 |
| Nan Huang | 7/24/2013 | 7/24/2013 | 7/25/2013 | ANGI | 3,500 | 0 |
| Nan Huang | 2/12/2014 | 2/12/2014 | 2/13/2014 | ANGI | 6,000 | 6,000 |
| Nan Huang | 4/23/2014 | 4/23/2014 | 4/24/2014 | ANGI | 1,000 | 1,000 |
| Nan Huang | 3/8/2012 | 3/9/2012 | 3/9/2012 | ANN | 1,200 | 200 |
| Nan Huang | 3/13/2014 | 3/14/2014 | 3/14/2014 | ANN | 20,000 | 20,000 |
| Nan Huang | 5/29/2014 | 5/30/2014 | 5/30/2014 | ANN | 3,700 | 0 |
| Nan Huang | 8/21/2014 | 8/22/2014 | 8/22/2014 | ANN | 4,000 | 4,000 |
| Nan Huang | 11/23/2012 | 11/28/2012 | 11/29/2012 | ARO | 27,600 | 10,000 |
| Nan Huang | 3/12/2013 | 3/14/2013 | 3/15/2013 | ARO | 31,100 | 31,100 |
| Nan Huang | 3/13/2014 | 3/13/2014 | 3/14/2014 | ARO | 45,500 | 45,500 |
| Nan Huang | 9/18/2012 | 9/19/2012 | 9/19/2012 | ASNA | 4,000 | 4,000 |
| Nan Huang | 12/4/2012 | 12/5/2012 | 12/6/2012 | ASNA | 9,000 | 9,000 |
| Nan Huang | 3/3/2014 | 3/3/2014 | 3/4/2014 | ASNA | 1,000 | 0 |
| Nan Huang | 6/3/2014 | 6/3/2014 | 6/4/2014 | ASNA | 2,900 | 2,900 |
| Nan Huang | 9/14/2012 | 9/19/2012 | 9/19/2012 | AZO | 2,600 | 0 |
| Nan Huang | 9/19/2012 | 9/19/2012 | 9/20/2012 | BBBY | 2,700 | 2,700 |
| Nan Huang | 9/23/2014 | 9/23/2014 | 9/24/2014 | BBBY | 22,000 | 22,000 |
| Nan Huang | 11/18/2013 | 11/19/2013 | 11/19/2013 | BBY | 38,000 | 0 |
| Nan Huang | 8/25/2014 | 8/26/2014 | 8/26/2014 | BBY | 2,000 | 2,000 |
| Nan Huang | 7/25/2013 | 7/30/2013 | 7/31/2013 | BGFV | 4,000 | 4,000 |
| Nan Huang | 3/4/2013 | 3/6/2013 | 3/6/2013 | BIG | 4,000 | 4,000 |
| Nan Huang | 3/6/2014 | 3/7/2014 | 3/7/2014 | BIG | 2,000 | 2,000 |

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Nan Huang | 5/29/2014 | 5/30/2014 | 5/30/2014 | BIG | 4,000 | 4,000 |
| Nan Huang | 8/28/2014 | 8/29/2014 | 8/29/2014 | BIG | 18,300 | 0 |
| Nan Huang | 10/23/2014 | 10/23/2014 | 10/24/2014 | BJRI | 2,000 | 2,000 |
| Nan Huang | 3/4/2014 | 3/14/2014 | 3/14/2014 | BKE | 3,400 | 0 |
| Nan Huang | 5/21/2014 | 5/22/2014 | 5/22/2014 | BKE | 1,000 | 0 |
| Nan Huang | 6/24/2014 | 6/25/2014 | 6/25/2014 | BKS | 30,000 | 30,000 |
| Nan Huang | 4/30/2013 | 5/2/2013 | 5/3/2013 | BODY | 3,500 | 0 |
| Nan Huang | 5/21/2014 | 5/22/2014 | 5/22/2014 | BONT | 4,000 | 0 |
| Nan Huang | 7/30/2013 | 7/30/2013 | 7/31/2013 | BWLD | 2,500 | 2,500 |
| Nan Huang | 10/29/2013 | 10/29/2013 | 10/30/2013 | BWLD | 6,000 | 6,000 |
| Nan Huang | 1/31/2014 | 2/4/2014 | 2/5/2014 | BWLD | 7,500 | 0 |
| Nan Huang | 10/27/2014 | 10/27/2014 | 10/28/2014 | BWLD | 5,500 | 5,500 |
| Nan Huang | 10/24/2012 | 10/25/2012 | 10/25/2012 | CAB | 1,000 | 1,000 |
| Nan Huang | 2/8/2013 | 2/14/2013 | 2/14/2013 | CAB | 20,100 | 0 |
| Nan Huang | 2/12/2014 | 2/13/2014 | 2/13/2014 | CAB | 17,000 | 7,000 |
| Nan Huang | 4/23/2014 | 4/24/2014 | 4/24/2014 | CAB | 1,500 | 1,500 |
| Nan Huang | 10/22/2014 | 10/23/2014 | 10/23/2014 | CAB | 1,000 | 1,000 |
| Nan Huang | 2/19/2014 | 2/19/2014 | 2/20/2014 | CAR | 4,000 | 4,000 |
| Nan Huang | 5/19/2014 | 5/20/2014 | 5/20/2014 | CATO | 100 | 100 |
| Nan Huang | 8/20/2014 | 8/21/2014 | 8/21/2014 | CATO | 300 | 0 |
| Nan Huang | 2/24/2014 | 2/25/2014 | 2/25/2014 | CBRL | 8,000 | 0 |
| Nan Huang | 4/30/2013 | 5/2/2013 | 5/3/2013 | CEC | 2,019 | 2,019 |
| Nan Huang | 8/1/2013 | 8/1/2013 | 8/2/2013 | CEC | 11,000 | 11,000 |
| Nan Huang | 11/19/2012 | 11/20/2012 | 11/20/2012 | CHS | 12,000 | 0 |
| Nan Huang | 7/18/2012 | 7/19/2012 | 7/20/2012 | CMG | 600 | 300 |
| Nan Huang | 10/18/2012 | 10/18/2012 | 10/19/2012 | CMG | 600 | 600 |
| Nan Huang | 4/18/2013 | 4/18/2013 | 4/19/2013 | CMG | 600 | 600 |
| Nan Huang | 7/18/2013 | 7/18/2013 | 7/19/2013 | CMG | 1,000 | 1,000 |
| Nan Huang | 10/17/2013 | 10/17/2013 | 10/18/2013 | CMG | 11,200 | 11,200 |
| Nan Huang | 3/24/2014 | 4/17/2014 | 4/17/2014 | CMG | 7,400 | 0 |
| Nan Huang | 7/21/2014 | 7/21/2014 | 7/22/2014 | CMG | 5,200 | 0 |
| Nan Huang | 10/20/2014 | 10/20/2014 | 10/21/2014 | CMG | 1,900 | 1,400 |
| Nan Huang | 7/30/2012 | 7/31/2012 | 7/31/2012 | COH | 4,200 | 3,000 |
| Nan Huang | 10/22/2012 | 10/23/2012 | 10/23/2012 | COH | 14,400 | 14,400 |
| Nan Huang | 1/15/2013 | 1/23/2013 | 1/23/2013 | COH | 7,900 | 7,900 |
| Nan Huang | 4/22/2013 | 4/23/2013 | 4/23/2013 | COH | 1,000 | 1,000 |
| Nan Huang | 7/29/2013 | 7/30/2013 | 7/30/2013 | COH | 11,000 | 11,000 |
| Nan Huang | 10/18/2013 | 10/22/2013 | 10/22/2013 | COH | 150,000 | 100,000 |
| Nan Huang | 1/21/2014 | 1/22/2014 | 1/22/2014 | COH | 14,000 | 0 |
| Nan Huang | 4/28/2014 | 4/29/2014 | 4/29/2014 | COH | 28,500 | 28,500 |
| Nan Huang | 8/4/2014 | 8/5/2014 | 8/5/2014 | COH | 8,000 | 8,000 |
| Nan Huang | 10/27/2014 | 10/28/2014 | 10/28/2014 | COH | 19,000 | 19,000 |

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Nan Huang | 2/7/2013 | 2/7/2013 | 2/8/2013 | COLM | 2,000 | 2,000 |
| Nan Huang | 2/20/2014 | 3/27/2014 | 3/27/2014 | CONN | 1,000 | 0 |
| Nan Huang | 2/26/2013 | 2/27/2013 | 2/27/2013 | CRI | 2,000 | 2,000 |
| Nan Huang | 7/24/2013 | 7/25/2013 | 7/25/2013 | CRI | 2,400 | 0 |
| Nan Huang | 2/25/2014 | 2/26/2014 | 2/26/2014 | CRI | 4,100 | 2,100 |
| Nan Huang | 7/23/2014 | 7/24/2014 | 7/24/2014 | CRI | 4,000 | 4,000 |
| Nan Huang | 10/22/2014 | 10/23/2014 | 10/23/2014 | CRI | 7,600 | 0 |
| Nan Huang | 8/23/2012 | 8/23/2012 | 8/24/2012 | CRM | 200 | 200 |
| Nan Huang | 2/26/2013 | 2/28/2013 | 3/1/2013 | CRM | 3,600 | 3,600 |
| Nan Huang | 10/25/2012 | 10/25/2012 | 10/26/2012 | CSTR | 3,000 | 0 |
| Nan Huang | 4/25/2013 | 4/25/2013 | 4/26/2013 | CSTR | 8,000 | 8,000 |
| Nan Huang | 8/19/2014 | 8/20/2014 | 8/20/2014 | CTRN | 500 | 500 |
| Nan Huang | 8/12/2013 | 8/14/2013 | 8/15/2013 | DDS | 6,700 | 200 |
| Nan Huang | 1/27/2014 | 1/30/2014 | 1/30/2014 | DEST | 1,500 | 0 |
| Nan Huang | 10/13/2014 | 10/14/2014 | 10/14/2014 | DFRG | 3,000 | 2,000 |
| Nan Huang | 3/22/2013 | 3/25/2013 | 3/25/2013 | DG | 13,000 | 0 |
| Nan Huang | 12/4/2013 | 12/5/2013 | 12/5/2013 | DG | 1,100 | 1,100 |
| Nan Huang | 12/3/2014 | 12/4/2014 | 12/4/2014 | DG | 4,000 | 4,000 |
| Nan Huang | 3/8/2013 | 3/11/2013 | 3/11/2013 | DKS | 4,000 | 4,000 |
| Nan Huang | 5/20/2013 | 5/21/2013 | 5/21/2013 | DKS | 29,000 | 29,000 |
| Nan Huang | 11/18/2013 | 11/19/2013 | 11/19/2013 | DKS | 10,000 | 10,000 |
| Nan Huang | 8/18/2014 | 8/19/2014 | 8/19/2014 | DKS | 8,000 | 8,000 |
| Nan Huang | 2/25/2013 | 2/27/2013 | 2/27/2013 | DLTR | 39,000 | 39,000 |
| Nan Huang | 10/10/2013 | 10/15/2013 | 10/15/2013 | DPZ | 4,200 | 2,200 |
| Nan Huang | 3/21/2013 | 3/22/2013 | 3/22/2013 | DRI | 37,000 | 20,500 |
| Nan Huang | 6/20/2013 | 6/21/2013 | 6/21/2013 | DRI | 8,000 | 8,000 |
| Nan Huang | 9/10/2013 | 9/20/2013 | 9/20/2013 | DRI | 70,500 | 0 |
| Nan Huang | 3/18/2013 | 3/19/2013 | 3/19/2013 | DSW | 20,100 | 0 |
| Nan Huang | 5/27/2014 | 5/28/2014 | 5/28/2014 | DSW | 1,000 | 1,000 |
| Nan Huang | 8/25/2014 | 8/26/2014 | 8/26/2014 | DSW | 2,000 | 2,000 |
| Nan Huang | 7/31/2012 | 8/1/2012 | 8/1/2012 | DTG | 400 | 400 |
| Nan Huang | 1/22/2014 | 1/22/2014 | 1/23/2014 | ETH | 1,500 | 1,500 |
| Nan Huang | 4/22/2014 | 4/22/2014 | 4/23/2014 | ETH | 2,500 | 2,500 |
| Nan Huang | 7/25/2013 | 7/25/2013 | 7/26/2013 | EXPE | 1,000 | 1,000 |
| Nan Huang | 10/30/2014 | 10/30/2014 | 10/31/2014 | EXPE | 11,000 | 11,000 |
| Nan Huang | 5/29/2013 | 5/30/2013 | 5/30/2013 | EXPR | 15,500 | 7,500 |
| Nan Huang | 3/11/2014 | 3/12/2014 | 3/12/2014 | EXPR | 21,000 | 6,500 |
| Nan Huang | 8/26/2014 | 8/27/2014 | 8/27/2014 | EXPR | 34,000 | 1,000 |
| Nan Huang | 12/3/2014 | 12/4/2014 | 12/4/2014 | EXPR | 8,000 | 8,000 |
| Nan Huang | 7/26/2012 | 7/26/2012 | 7/27/2012 | FB | 1,200 | 0 |
| Nan Huang | 8/15/2012 | 10/23/2012 | 10/24/2012 | FB | 21,000 | 0 |
| Nan Huang | 1/29/2014 | 1/29/2014 | 1/30/2014 | FB | 1,500 | 0 |

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Nan Huang | 7/23/2014 | 7/23/2014 | 7/24/2014 | FB | 3,000 | 3,000 |
| Nan Huang | 10/28/2014 | 10/28/2014 | 10/29/2014 | FB | 14,000 | 14,000 |
| Nan Huang | 1/6/2014 | 1/9/2014 | 1/9/2014 | FDO | 14,000 | 0 |
| Nan Huang | 7/9/2014 | 7/10/2014 | 7/10/2014 | FDO | 6,000 | 0 |
| Nan Huang | 12/19/2013 | 12/20/2013 | 12/20/2013 | FINL | 20,000 | 0 |
| Nan Huang | 3/27/2014 | 3/28/2014 | 3/28/2014 | FINL | 7,500 | 1,500 |
| Nan Huang | 6/25/2014 | 6/27/2014 | 6/27/2014 | FINL | 25,000 | 0 |
| Nan Huang | 9/25/2014 | 9/26/2014 | 9/26/2014 | FINL | 29,000 | 0 |
| Nan Huang | 3/27/2013 | 3/27/2013 | 3/28/2013 | FIVE | 6,000 | 4,000 |
| Nan Huang | 8/21/2014 | 8/22/2014 | 8/22/2014 | FL | 14,000 | 0 |
| Nan Huang | 5/1/2013 | 5/2/2013 | 5/2/2013 | FNP | 19,000 | 19,000 |
| Nan Huang | 8/7/2013 | 8/8/2013 | 8/8/2013 | FNP | 9,000 | 0 |
| Nan Huang | 8/6/2012 | 8/7/2012 | 8/7/2012 | FOSL | 200 | 0 |
| Nan Huang | 11/5/2013 | 11/5/2013 | 11/6/2013 | FOSL | 16,000 | 0 |
| Nan Huang | 2/11/2014 | 2/11/2014 | 2/12/2014 | FOSL | 500 | 500 |
| Nan Huang | 5/13/2014 | 5/13/2014 | 5/14/2014 | FOSL | 10,000 | 0 |
| Nan Huang | 12/4/2012 | 12/5/2012 | 12/5/2012 | FRAN | 11,000 | 11,000 |
| Nan Huang | 3/24/2014 | 3/26/2014 | 3/26/2014 | FRAN | 26,000 | 26,000 |
| Nan Huang | 6/9/2014 | 6/10/2014 | 6/10/2014 | FRAN | 26,000 | 2,000 |
| Nan Huang | 9/8/2014 | 9/9/2014 | 9/9/2014 | FRAN | 30,000 | 0 |
| Nan Huang | 3/4/2013 | 3/8/2013 | 3/8/2013 | GCO | 9,800 | 0 |
| Nan Huang | 5/30/2013 | 5/31/2013 | 5/31/2013 | GCO | 500 | 0 |
| Nan Huang | 8/28/2013 | 8/29/2013 | 8/29/2013 | GCO | 5,000 | 0 |
| Nan Huang | 11/28/2012 | 11/28/2012 | 11/29/2012 | GES | 15,000 | 0 |
| Nan Huang | 3/20/2013 | 3/20/2013 | 3/21/2013 | GES | 24,000 | 24,000 |
| Nan Huang | 8/28/2013 | 8/28/2013 | 8/29/2013 | GES | 2,000 | 2,000 |
| Nan Huang | 3/19/2014 | 3/19/2014 | 3/20/2014 | GES | 15,500 | 15,000 |
| Nan Huang | 5/29/2014 | 5/29/2014 | 5/30/2014 | GES | 3,000 | 0 |
| Nan Huang | 8/27/2014 | 8/27/2014 | 8/28/2014 | GES | 7,000 | 7,000 |
| Nan Huang | 3/25/2013 | 3/25/2013 | 3/26/2013 | GMAN | 4,000 | 4,000 |
| Nan Huang | 5/28/2014 | 5/28/2014 | 5/29/2014 | GMAN | 4,000 | 2,000 |
| Nan Huang | 3/21/2012 | 3/22/2012 | 3/22/2012 | GME | 500 | 0 |
| Nan Huang | 3/26/2013 | 3/28/2013 | 3/28/2013 | GME | 6,000 | 6,000 |
| Nan Huang | 5/21/2013 | 5/23/2013 | 5/23/2013 | GME | 30,000 | 0 |
| Nan Huang | 11/20/2013 | 11/21/2013 | 11/21/2013 | GME | 3,000 | 0 |
| Nan Huang | 4/25/2013 | 4/26/2013 | 4/26/2013 | GNC | 15,000 | 15,000 |
| Nan Huang | 10/23/2013 | 10/24/2013 | 10/24/2013 | GNC | 15,000 | 0 |
| Nan Huang | 2/13/2014 | 2/13/2014 | 2/14/2014 | GNC | 8,000 | 8,000 |
| Nan Huang | 11/7/2014 | 11/10/2014 | 11/10/2014 | GOGO | 5,000 | 0 |
| Nan Huang | 8/22/2013 | 8/22/2013 | 8/23/2013 | GPS | 4,000 | 0 |
| Nan Huang | 2/26/2014 | 2/27/2014 | 2/28/2014 | GPS | 14,000 | 10,000 |
| Nan Huang | 11/20/2014 | 11/20/2014 | 11/21/2014 | GPS | 16,000 | 16,000 |

38

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Nan Huang | 2/22/2013 | 2/26/2013 | 2/26/2013 | HD | 4,000 | 4,000 |
| Nan Huang | 5/20/2013 | 5/21/2013 | 5/21/2013 | HD | 28,000 | 3,000 |
| Nan Huang | 7/19/2013 | 8/20/2013 | 8/20/2013 | HD | 105,800 | 0 |
| Nan Huang | 11/18/2013 | 11/19/2013 | 11/19/2013 | HD | 73,000 | 0 |
| Nan Huang | 8/18/2014 | 8/19/2014 | 8/19/2014 | HD | 2,200 | 2,200 |
| Nan Huang | 11/17/2014 | 11/18/2014 | 11/18/2014 | HD | 5,500 | 1,000 |
| Nan Huang | 10/30/2014 | 10/31/2014 | 10/31/2014 | HGG | 60,000 | 0 |
| Nan Huang | 8/16/2012 | 8/17/2012 | 8/17/2012 | HIBB | 200 | 200 |
| Nan Huang | 11/15/2012 | 11/16/2012 | 11/16/2012 | HIBB | 2,000 | 2,000 |
| Nan Huang | 10/3/2013 | 10/28/2013 | 10/29/2013 | HLF | 20,000 | 0 |
| Nan Huang | 2/20/2013 | 2/21/2013 | 2/21/2013 | HSNI | 11,000 | 0 |
| Nan Huang | 3/17/2014 | 3/18/2014 | 3/18/2014 | HTZ | 120,000 | 0 |
| Nan Huang | 2/19/2014 | 2/19/2014 | 2/20/2014 | JACK | 2,000 | 2,000 |
| Nan Huang | 5/14/2014 | 5/14/2014 | 5/15/2014 | JACK | 30,000 | 0 |
| Nan Huang | 2/23/2012 | 2/24/2012 | 2/24/2012 | JCP | 200 | 0 |
| Nan Huang | 4/25/2012 | 5/15/2012 | 5/16/2012 | JCP | 8,300 | 1,000 |
| Nan Huang | 6/29/2012 | 8/10/2012 | 8/10/2012 | JCP | 62,400 | 27,200 |
| Nan Huang | 9/13/2012 | 11/9/2012 | 11/9/2012 | JCP | 29,000 | 0 |
| Nan Huang | 2/22/2013 | 2/27/2013 | 2/28/2013 | JCP | 9,000 | 0 |
| Nan Huang | 8/19/2013 | 8/20/2013 | 8/20/2013 | JCP | 4,000 | 0 |
| Nan Huang | 11/15/2013 | 11/20/2013 | 11/20/2013 | JCP | 210,100 | 0 |
| Nan Huang | 5/9/2014 | 5/15/2014 | 5/16/2014 | JCP | 20,000 | 10,000 |
| Nan Huang | 8/5/2013 | 8/5/2013 | 8/6/2013 | JMBA | 4,000 | 4,000 |
| Nan Huang | 5/8/2014 | 5/8/2014 | 5/9/2014 | JMBA | 3,000 | 3,000 |
| Nan Huang | 8/28/2012 | 8/29/2012 | 8/29/2012 | JOSB | 2,400 | 0 |
| Nan Huang | 8/15/2013 | 8/15/2013 | 8/16/2013 | JWN | 600 | 600 |
| Nan Huang | 8/14/2014 | 8/14/2014 | 8/15/2014 | JWN | 20,000 | 20,000 |
| Nan Huang | 9/9/2014 | 9/9/2014 | 9/10/2014 | KKD | 2,000 | 2,000 |
| Nan Huang | 6/26/2012 | 8/14/2012 | 8/14/2012 | KORS | 300 | 0 |
| Nan Huang | 2/11/2013 | 2/12/2013 | 2/12/2013 | KORS | 6,200 | 4,200 |
| Nan Huang | 5/28/2013 | 5/29/2013 | 5/29/2013 | KORS | 4,500 | 0 |
| Nan Huang | 8/5/2013 | 8/6/2013 | 8/6/2013 | KORS | 6,000 | 6,000 |
| Nan Huang | 11/4/2013 | 11/5/2013 | 11/5/2013 | KORS | 42,000 | 34,000 |
| Nan Huang | 2/3/2014 | 2/4/2014 | 2/4/2014 | KORS | 9,000 | 9,000 |
| Nan Huang | 5/27/2014 | 5/28/2014 | 5/28/2014 | KORS | 500 | 0 |
| Nan Huang | 8/1/2014 | 8/4/2014 | 8/4/2014 | KORS | 6,000 | 0 |
| Nan Huang | 2/27/2013 | 2/28/2013 | 2/28/2013 | KSS | 6,000 | 6,000 |
| Nan Huang | 5/21/2014 | 5/21/2014 | 5/22/2014 | LB | 2,000 | 1,000 |
| Nan Huang | 2/14/2013 | 2/20/2013 | 2/21/2013 | LL | 13,000 | 0 |
| Nan Huang | 3/12/2013 | 4/24/2013 | 4/24/2013 | LL | 21,000 | 13,000 |
| Nan Huang | 9/26/2013 | 10/23/2013 | 10/23/2013 | LL | 7,000 | 6,000 |
| Nan Huang | 2/18/2014 | 2/19/2014 | 2/19/2014 | LL | 4,000 | 4,000 |

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Nan Huang | 10/21/2014 | 10/22/2014 | 10/22/2014 | LL | 12,300 | 0 |
| Nan Huang | 8/1/2012 | 8/2/2012 | 8/3/2012 | LNKD | 100 | 100 |
| Nan Huang | 2/7/2013 | 2/7/2013 | 2/8/2013 | LNKD | 5,000 | 5,000 |
| Nan Huang | 8/1/2013 | 8/1/2013 | 8/2/2013 | LNKD | 2,000 | 0 |
| Nan Huang | 10/29/2013 | 10/29/2013 | 10/30/2013 | LNKD | 500 | 0 |
| Nan Huang | 2/6/2014 | 2/6/2014 | 2/7/2014 | LNKD | 2,000 | 2,000 |
| Nan Huang | 5/1/2014 | 5/1/2014 | 5/2/2014 | LNKD | 7,000 | 0 |
| Nan Huang | 7/31/2014 | 7/31/2014 | 8/1/2014 | LNKD | 500 | 500 |
| Nan Huang | 10/30/2014 | 10/30/2014 | 10/31/2014 | LNKD | 4,000 | 4,000 |
| Nan Huang | 2/22/2013 | 2/25/2013 | 2/25/2013 | LOW | 1,000 | 0 |
| Nan Huang | 7/24/2013 | 8/21/2013 | 8/21/2013 | LOW | 25,000 | 0 |
| Nan Huang | 11/19/2013 | 11/20/2013 | 11/20/2013 | LOW | 30,000 | 0 |
| Nan Huang | 2/13/2014 | 2/26/2014 | 2/26/2014 | LOW | 25,000 | 0 |
| Nan Huang | 8/19/2014 | 8/20/2014 | 8/20/2014 | LOW | 10,000 | 10,000 |
| Nan Huang | 9/6/2012 | 9/7/2012 | 9/7/2012 | LULU | 5,400 | 5,400 |
| Nan Huang | 6/11/2014 | 6/12/2014 | 6/12/2014 | LULU | 2,000 | 2,000 |
| Nan Huang | 9/10/2014 | 9/11/2014 | 9/11/2014 | LULU | 2,000 | 2,000 |
| Nan Huang | 12/8/2014 | 12/11/2014 | 12/11/2014 | LULU | 7,500 | 7,500 |
| Nan Huang | 8/21/2012 | 8/21/2012 | 8/22/2012 | LZB | 200 | 0 |
| Nan Huang | 2/19/2013 | 2/19/2013 | 2/20/2013 | LZB | 2,000 | 2,000 |
| Nan Huang | 6/16/2014 | 6/17/2014 | 6/18/2014 | LZB | 2,000 | 2,000 |
| Nan Huang | 11/12/2013 | 11/13/2013 | 11/13/2013 | M | 50,000 | 40,000 |
| Nan Huang | 11/11/2014 | 11/12/2014 | 11/12/2014 | M | 47,100 | 47,100 |
| Nan Huang | 3/10/2014 | 3/10/2014 | 3/10/2014 | MED | 13,000 | 0 |
| Nan Huang | 5/5/2014 | 5/5/2014 | 5/6/2014 | MED | 9,000 | 9,000 |
| Nan Huang | 8/7/2014 | 8/7/2014 | 8/8/2014 | MED | 6,000 | 6,000 |
| Nan Huang | 5/7/2013 | 5/8/2013 | 5/8/2013 | MFB | 2,000 | 0 |
| Nan Huang | 6/3/2014 | 6/3/2014 | 6/4/2014 | MFRM | 1,000 | 1,000 |
| Nan Huang | 9/5/2012 | 9/5/2012 | 9/6/2012 | MW | 10,500 | 7,000 |
| Nan Huang | 8/13/2014 | 8/13/2014 | 8/14/2014 | NDLS | 3,000 | 3,000 |
| Nan Huang | 1/22/2013 | 1/23/2013 | 1/24/2013 | NFLX | 300 | 0 |
| Nan Huang | 7/22/2013 | 7/22/2013 | 7/23/2013 | NFLX | 500 | 500 |
| Nan Huang | 10/8/2013 | 10/21/2013 | 10/22/2013 | NFLX | 800 | 800 |
| Nan Huang | 1/22/2014 | 1/22/2014 | 1/23/2014 | NFLX | 4,200 | 4,200 |
| Nan Huang | 4/21/2014 | 4/21/2014 | 4/22/2014 | NFLX | 100 | 100 |
| Nan Huang | 1/30/2014 | 1/30/2014 | 1/31/2014 | NGVC | 1,000 | 0 |
| Nan Huang | 2/1/2013 | 2/12/2013 | 2/13/2013 | NILE | 44,500 | 12,300 |
| Nan Huang | 5/2/2013 | 5/2/2013 | 5/3/2013 | NILE | 3,000 | 3,000 |
| Nan Huang | 7/30/2013 | 8/1/2013 | 8/1/2013 | NILE | 16,000 | 6,000 |
| Nan Huang | 10/30/2013 | 10/31/2013 | 10/31/2013 | NILE | 38,900 | 0 |
| Nan Huang | 2/5/2014 | 2/6/2014 | 2/6/2014 | NILE | 4,000 | 4,000 |
| Nan Huang | 10/28/2013 | 10/28/2013 | 10/29/2013 | NTRI | 38,000 | 38,000 |

40

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Nan Huang | 4/30/2014 | 5/1/2014 | 5/2/2014 | NTRI | 15,000 | 15,000 |
| Nan Huang | 11/3/2014 | 11/3/2014 | 11/3/2014 | NTRI | 18,000 | 0 |
| Nan Huang | 10/22/2014 | 10/22/2014 | 10/23/2014 | ORLY | 3,000 | 3,000 |
| Nan Huang | 10/24/2013 | 10/24/2013 | 10/25/2013 | OUTR | 6,000 | 0 |
| Nan Huang | 5/1/2014 | 5/1/2014 | 5/2/2014 | OUTR | 10,000 | 10,000 |
| Nan Huang | 7/31/2014 | 7/31/2014 | 8/1/2014 | OUTR | 18,000 | 6,000 |
| Nan Huang | 8/7/2012 | 8/7/2012 | 8/8/2012 | PCLN | 200 | 0 |
| Nan Huang | 5/9/2013 | 5/9/2013 | 5/10/2013 | PCLN | 600 | 600 |
| Nan Huang | 5/20/2014 | 5/21/2014 | 5/21/2014 | PETM | 1,000 | 1,000 |
| Nan Huang | 7/20/2012 | 7/23/2012 | 7/23/2012 | PETS | 1,000 | 1,000 |
| Nan Huang | 10/17/2014 | 10/20/2014 | 10/20/2014 | PETS | 300 | 300 |
| Nan Huang | 12/18/2013 | 12/19/2013 | 12/19/2013 | PIR | 17,000 | 0 |
| Nan Huang | 11/13/2012 | 11/15/2012 | 11/15/2012 | PLCE | 4,000 | 4,000 |
| Nan Huang | 3/25/2013 | 3/26/2013 | 3/26/2013 | PLCE | 30,000 | 0 |
| Nan Huang | 11/25/2013 | 11/26/2013 | 11/26/2013 | PLCE | 40,000 | 0 |
| Nan Huang | 3/5/2014 | 3/6/2014 | 3/6/2014 | PLCE | 8,000 | 8,000 |
| Nan Huang | 8/20/2014 | 8/21/2014 | 8/21/2014 | PLCE | 12,000 | 12,000 |
| Nan Huang | 8/20/2014 | 8/20/2014 | 8/21/2014 | PLKI | 6,100 | 0 |
| Nan Huang | 10/19/2012 | 10/23/2012 | 10/24/2012 | PNRA | 2,700 | 2,700 |
| Nan Huang | 10/22/2013 | 10/22/2013 | 10/23/2013 | PNRA | 16,000 | 16,000 |
| Nan Huang | 2/18/2014 | 2/18/2014 | 2/19/2014 | PNRA | 3,000 | 3,000 |
| Nan Huang | 7/29/2014 | 7/29/2014 | 7/30/2014 | PNRA | 4,200 | 0 |
| Nan Huang | 5/6/2014 | 5/6/2014 | 5/7/2014 | PZZA | 6,000 | 0 |
| Nan Huang | 8/5/2014 | 8/5/2014 | 8/6/2014 | PZZA | 2,000 | 0 |
| Nan Huang | 12/12/2013 | 12/12/2013 | 12/13/2013 | RH | 2,000 | 2,000 |
| Nan Huang | 2/4/2013 | 2/6/2013 | 2/6/2013 | RL | 4,500 | 4,500 |
| Nan Huang | 5/22/2013 | 5/23/2013 | 5/23/2013 | RL | 7,000 | 7,000 |
| Nan Huang | 8/6/2013 | 8/7/2013 | 8/7/2013 | RL | 4,000 | 4,000 |
| Nan Huang | 5/8/2014 | 5/9/2014 | 5/9/2014 | RL | 4,000 | 4,000 |
| Nan Huang | 8/5/2014 | 8/6/2014 | 8/6/2014 | RL | 7,000 | 0 |
| Nan Huang | 8/6/2014 | 8/6/2014 | 8/7/2014 | RNDY | 5,000 | 0 |
| Nan Huang | 8/21/2014 | 8/21/2014 | 8/22/2014 | ROST | 14,000 | 14,000 |
| Nan Huang | 5/16/2013 | 5/21/2013 | 5/21/2013 | RRGB | 19,000 | 0 |
| Nan Huang | 2/10/2014 | 2/14/2014 | 2/14/2014 | RRGB | 5,000 | 2,000 |
| Nan Huang | 5/19/2014 | 5/20/2014 | 5/20/2014 | RRGB | 1,000 | 1,000 |
| Nan Huang | 8/13/2014 | 8/14/2014 | 8/14/2014 | RRGB | 14,000 | 14,000 |
| Nan Huang | 11/3/2014 | 11/4/2014 | 11/4/2014 | RRGB | 14,000 | 0 |
| Nan Huang | 1/6/2014 | 1/8/2014 | 1/9/2014 | RT | 15,000 | 3,000 |
| Nan Huang | 4/8/2014 | 4/9/2014 | 4/10/2014 | RT | 100 | 100 |
| Nan Huang | 1/23/2014 | 1/23/2014 | 1/24/2014 | SBUX | 1,500 | 1,500 |
| Nan Huang | 4/24/2014 | 4/24/2014 | 4/25/2014 | SBUX | 6,000 | 6,000 |
| Nan Huang | 1/23/2013 | 1/24/2013 | 1/25/2013 | SCSS | 22,000 | 22,000 |

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Nan Huang | 7/17/2013 | 7/17/2013 | 7/18/2013 | SCSS | 12,000 | 12,000 |
| Nan Huang | 10/9/2013 | 10/16/2013 | 10/17/2013 | SCSS | 17,100 | 17,100 |
| Nan Huang | 7/15/2014 | 7/16/2014 | 7/17/2014 | SCSS | 16,000 | 0 |
| Nan Huang | 8/23/2012 | 8/23/2012 | 8/24/2012 | SCVL | 200 | 0 |
| Nan Huang | 12/2/2013 | 12/2/2013 | 12/3/2013 | SCVL | 6,000 | 6,000 |
| Nan Huang | 8/12/2014 | 8/13/2014 | 8/13/2014 | SEAS | 6,000 | 6,000 |
| Nan Huang | 11/11/2014 | 11/12/2014 | 11/12/2014 | SEAS | 10,000 | 0 |
| Nan Huang | 2/5/2013 | 2/5/2013 | 2/6/2013 | SFLY | 3,000 | 3,000 |
| Nan Huang | 5/1/2013 | 5/1/2013 | 5/2/2013 | SFLY | 7,000 | 7,000 |
| Nan Huang | 11/6/2014 | 11/6/2014 | 11/7/2014 | SFM | 6,000 | 0 |
| Nan Huang | 7/18/2013 | 7/18/2013 | 7/18/2013 | SHW | 6,000 | 0 |
| Nan Huang | 10/23/2013 | 10/25/2013 | 10/25/2013 | SHW | 16,000 | 16,000 |
| Nan Huang | 2/19/2013 | 2/20/2013 | 2/20/2013 | SIX | 9,000 | 0 |
| Nan Huang | 4/18/2013 | 4/22/2013 | 4/22/2013 | SIX | 18,000 | 0 |
| Nan Huang | 7/18/2013 | 7/22/2013 | 7/22/2013 | SIX | 65,000 | 65,000 |
| Nan Huang | 5/14/2013 | 5/15/2013 | 5/16/2013 | SKX | 32,200 | 0 |
| Nan Huang | 7/24/2013 | 7/24/2013 | 7/25/2013 | SKX | 12,000 | 0 |
| Nan Huang | 3/11/2013 | 3/12/2013 | 3/12/2013 | SSI | 2,000 | 0 |
| Nan Huang | 11/18/2014 | 11/19/2014 | 11/19/2014 | SSI | 9,000 | 4,000 |
| Nan Huang | 5/4/2012 | 7/25/2012 | 7/26/2012 | STMP | 2,800 | 0 |
| Nan Huang | 10/10/2013 | 10/10/2013 | 10/11/2013 | SWY | 1,000 | 1,000 |
| Nan Huang | 7/8/2014 | 7/8/2014 | 7/9/2014 | TCS | 2,000 | 2,000 |
| Nan Huang | 1/7/2015 | 1/8/2015 | 1/9/2015 | TCS | 1,000 | 1,000 |
| Nan Huang | 5/22/2014 | 5/22/2014 | 5/23/2014 | TFM | 10,200 | 2,000 |
| Nan Huang | 5/20/2014 | 5/21/2014 | 5/21/2014 | TGT | 2,000 | 0 |
| Nan Huang | 5/24/2013 | 5/28/2013 | 5/28/2013 | TIF | 14,000 | 14,000 |
| Nan Huang | 10/29/2013 | 10/29/2013 | 10/30/2013 | TRLA | 14,000 | 14,000 |
| Nan Huang | 1/29/2013 | 1/30/2013 | 1/31/2013 | TSCO | 3,100 | 3,100 |
| Nan Huang | 4/23/2014 | 4/23/2014 | 4/24/2014 | TSCO | 1,500 | 1,500 |
| Nan Huang | 5/8/2014 | 5/8/2014 | 5/9/2014 | TUES | 12,000 | 12,000 |
| Nan Huang | 11/6/2013 | 11/7/2013 | 11/8/2013 | TUMI | 30,000 | 0 |
| Nan Huang | 7/29/2013 | 7/29/2013 | 7/30/2013 | TXRH | 3,000 | 3,000 |
| Nan Huang | 11/3/2014 | 11/3/2014 | 11/4/2014 | TXRH | 4,000 | 4,000 |
| Nan Huang | 7/23/2012 | 7/24/2012 | 7/24/2012 | UA | 3,000 | 0 |
| Nan Huang | 10/24/2012 | 10/25/2012 | 10/25/2012 | UA | 1,000 | 1,000 |
| Nan Huang | 8/14/2012 | 9/6/2012 | 9/7/2012 | ULTA | 10,900 | 1,200 |
| Nan Huang | 9/11/2014 | 9/11/2014 | 9/12/2014 | ULTA | 2,000 | 2,000 |
| Nan Huang | 3/11/2013 | 3/11/2013 | 3/12/2013 | URBN | 6,000 | 0 |
| Nan Huang | 8/19/2013 | 8/19/2013 | 8/20/2013 | URBN | 2,000 | 2,000 |
| Nan Huang | 8/18/2014 | 8/18/2014 | 8/19/2014 | URBN | 35,000 | 0 |
| Nan Huang | 10/28/2014 | 10/28/2014 | 10/29/2014 | USNA | 100 | 100 |
| Nan Huang | 2/27/2013 | 2/28/2013 | 2/28/2013 | VITC | 1,000 | 1,000 |

42

| Defendant Name | Date Position First Opened | Earnings Announcement Date | Adjusted Earnings Announcement Date | Trading Symbol | Opening Shares | Closed Shares |
|---|---|---|---|---|---|---|
| Nan Huang | 1/31/2013 | 1/31/2013 | 2/1/2013 | VPRT | 3,800 | 3,800 |
| Nan Huang | 1/27/2014 | 1/29/2014 | 1/30/2014 | VPRT | 5,000 | 0 |
| Nan Huang | 4/29/2014 | 4/29/2014 | 4/30/2014 | VPRT | 18,000 | 18,000 |
| Nan Huang | 10/29/2014 | 10/29/2014 | 10/30/2014 | VPRT | 8,000 | 8,000 |
| Nan Huang | 8/29/2012 | 8/29/2012 | 8/30/2012 | VRA | 2,000 | 0 |
| Nan Huang | 12/4/2012 | 12/5/2012 | 12/6/2012 | VRA | 4,000 | 0 |
| Nan Huang | 3/13/2013 | 3/13/2013 | 3/14/2013 | VRA | 14,000 | 0 |
| Nan Huang | 6/4/2014 | 6/5/2014 | 6/5/2014 | VRA | 5,000 | 0 |
| Nan Huang | 11/3/2014 | 11/4/2014 | 11/4/2014 | VSI | 19,000 | 0 |
| Nan Huang | 7/30/2014 | 7/30/2014 | 7/31/2014 | WFM | 15,000 | 15,000 |
| Nan Huang | 11/5/2014 | 11/5/2014 | 11/6/2014 | WFM | 10,000 | 10,000 |
| Nan Huang | 2/16/2012 | 2/21/2012 | 2/21/2012 | WMT | 2,000 | 1,000 |
| Nan Huang | 11/13/2012 | 11/15/2012 | 11/15/2012 | WMT | 12,000 | 12,000 |
| Nan Huang | 5/14/2013 | 5/16/2013 | 5/16/2013 | WMT | 52,000 | 0 |
| Nan Huang | 8/14/2013 | 8/15/2013 | 8/15/2013 | WMT | 14,000 | 14,000 |
| Nan Huang | 11/13/2013 | 11/14/2013 | 11/14/2013 | WMT | 30,000 | 30,000 |
| Nan Huang | 3/7/2012 | 3/8/2012 | 3/8/2012 | WSM | 300 | 300 |
| Nan Huang | 8/21/2012 | 8/21/2012 | 8/22/2012 | WSM | 1,200 | 1,200 |
| Nan Huang | 3/19/2013 | 3/19/2013 | 3/20/2013 | WSM | 10,000 | 10,000 |
| Nan Huang | 11/20/2013 | 11/20/2013 | 11/21/2013 | WSM | 12,800 | 12,800 |
| Nan Huang | 2/12/2014 | 2/13/2014 | 2/14/2014 | WTW | 11,000 | 11,000 |
| Nan Huang | 10/29/2014 | 10/29/2014 | 10/30/2014 | WTW | 7,000 | 0 |
| Nan Huang | 10/29/2013 | 10/29/2013 | 10/30/2013 | YELP | 20,000 | 0 |
| Nan Huang | 2/5/2014 | 2/5/2014 | 2/6/2014 | YELP | 7,000 | 7,000 |
| Nan Huang | 4/30/2014 | 4/30/2014 | 5/1/2014 | YELP | 1,000 | 0 |
| Nan Huang | 5/7/2014 | 5/7/2014 | 5/7/2014 | Z | 2,500 | 0 |
| Nan Huang | 8/29/2012 | 8/30/2012 | 8/31/2012 | ZUMZ | 13,000 | 6,000 |
| Nan Huang | 3/13/2014 | 3/13/2014 | 3/14/2014 | ZUMZ | 10,000 | 10,000 |
| Nan Huang | 9/4/2014 | 9/4/2014 | 9/4/2014 | ZUMZ | 10,000 | 0 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SECURITIES AND EXCHANGE
COMMISSION

           Plaintiff,

    v.

BONAN HUANG, et al.

           Defendants.

Case No. 2:15-cv-00269-MAK

## DECLARATION OF STEPHEN GRAHAM

I, Stephen Graham, based on my personal knowledge, hereby declare and state:

1.       I am over eighteen years of age and competent to make this declaration.

2.       I am a Financial Economist in the Office of Litigation Economics in the Division of Economic and Risk Analysis at the U.S. Securities and Exchange Commission ("SEC"). I perform economic and quantitative analysis and research in support of the Enforcement Division of the Commission. These analyses include detecting manipulative trading patterns and market abuses; quantifying harm to investors; measuring stock price reactions to corporate announcements and other events; and calculating disgorgement of ill-gotten gains.

3.       A true and correct copy of my expert report in this matter is attached as Exhibit 1. A true and correct copy of my rebuttal report in this matter is attached as Exhibit 2.

4.       The SEC was provided with forensic images of the hard drives from the Capital One work computers of Bonan Huang and Nan Huang (the" Defendants"). A forensic image reproduces the folder structure residing on a computer and reproduces all the files included in the folders. The files within the folders include Microsoft Excel spreadsheets; computer code written in the programming language SQL and in other languages; files showing the execution of SQL

programs; files showing the output from SQL programs; e-mails exchanged between Bonan Huang and Nan Huang; and other types of files. I was able to open these files and examine their contents. I was also provided access to documents that were provided to the SEC from Capital One and other third parties. This document set includes e-mails (and their attachments) sent between the Defendants using Capital One's e-mail server and a listing of queries made to the Capital One transaction database. It also includes monthly statements of their brokerage accounts. My testimony is based on my review and analysis of these materials.

5.      From at least February 2012 through January 2015, Defendants downloaded merchant-specific credit card transaction data from Capital One's database known as Teradata, using computer programs known as SQL queries, for over 200 publicly-traded consumer retail companies, such as Chipotle restaurants, Macy's department stores, and luxury retailer Coach.

6.      From February 1, 2012 through January 9, 2015, the Defendants downloaded Capital One credit card transaction data at least 13,270 times, which averages to 368 instances per month or more than ten times per day. Specifically, Bonan Huang submitted at least 9,480 completed SQL queries to Teradata and Nan Huang submitted at least 3,790 completed SQL queries. The Defendants searched for transaction information for a single merchant or for as many as 176 merchants in a single query. Examples of queries are attached in my report as Exhibit A.

7.      Defendants obtained Capital One's proprietary, non-public credit card transaction information for at least 226 different merchants. A list of merchants for which Defendants downloaded and analyzed credit card transaction information appears as Exhibit B in my report.

8.      Defendants saved the outputs from their Teradata searches, as well as their analysis of that output, in personal folders on their work computers. Defendants set up their data

0090

downloads from Teradata to overwrite previously downloaded data, which reduced the storage space being taken up by their activities.

9.     There are several types of output files on the Defendants' work computers that contain Capital One transaction data or show various analyses performed on the transactions data, organized by company name or ticker symbol. Bonan Huang's computer had at least 218 such files and Nan Huang's computer had at least 177 such files.

10.     One type of output file, numbering 140 files on Nan Huang's computer, are company-specific spreadsheets identified by ticker symbol. Formulas within the spreadsheets aggregate Capital One transactions to quarterly totals, compare the quarterly transaction totals to the historical quarterly revenue reported by that company, and calculate quarterly transaction total as a percentage of the corresponding company reported quarterly revenue. Many of the files also contain formulas that create predictions of company reported quarterly revenue using the quarterly transactions totals and the historic relationship between transactions and company reported revenue. Many of the files also contain fragments of SQL code with instructions to download transactions data from the Capital One database.

11.     Another type of output file similarly contain quarterly transactions data obtained from the Capital One transactions database combined with company-specific financial performance information and analysts' forecasts that the Defendants pulled from "Yahoo Finance" and "Street Insider." Each of these output files contain up to six quarters' worth of Capital One transaction data and company performance data for 200 or more companies. There are five such files on Nan Huang's computer and one file on Bonan Huang's computer with the same name but not all the same features.

3

12.     Bonan Huang's computer also contains output files of company transaction data from Teradata, organized by ticker symbol and quarter, which were generated automatically and sent in e-mails to himself, according to instructions in a computer program. These files typically contain manipulations of Capital One transaction data for 150 or more companies. There were 85 files of this type on Bonan Huang's computer. In other locations on Bonan Huang's computer, there are 132 other files: SQL programs that download transactions data, either for one company or for numerous companies; transactions data organized by merchant name; and analyst reports on companies for which he downloaded transactions data.

13.     Defendants were able to determine how much money Capital One card users spent during a given period of time at a specific retailer by aggregating Capital One credit card transaction data from Teradata. Based on the analysis set forth in my report, and the information available to me, Capital One's transactional data was statistically significantly correlated with reported quarterly company revenue for 132 companies. Companies announce quarterly financial results on average 30 days after the close of the fiscal quarter. The company transactions data obtained by the Defendants for any quarterly period, therefore, could be considered a leading indicator of the yet-to-be-reported company quarterly revenue.

14.     Exhibit 3 shows, for each Defendant, certain trades he made around company quarterly announcement dates where he queried the Teradata transactions database during the interval between the company's fiscal quarter end date and the company's actual announcement date. The trading dates for each Defendant are summarized in Matthew Cain's Declaration.

15.     From January 2012 to December 2014, each Defendant earned extraordinary rates of return trading securities and nearly all of each Defendant's trading profits came from trades in securities of the companies for which they downloaded and analyzed Capital One transactions

data. Bonan Huang turned an initial balance of $11,343 into $1,712,692 (his ending balance plus his net withdrawals over the period), and Nan Huang turned an initial balance of $11,459 into $1,492,970. In other words, from January 2012 to December 2014, Bonan Huang generated a three-year rate of return of 14,999%, or 432% per year; and Nan Huang generated a three-year rate of return of 12,929%, or 407% per year. These returns are calculated using the cash-in/cash-out method, as described in my report.

16.     Defendants' trading success far outpaced commonly-viewed indices and the best hedge funds in the United States. Defendants' three-year trading returns vastly outperformed the S&P 500 index (64% three-year return), the consumer discretionary sector index (93% three-year return), and the median hedge fund return (24.3% three-year return).

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 23, 2015, at Plano, Texas.

Stephen Graham

**Exhibit 1: Expert Report of Stephen Graham**

0094

**Expert Report**

**of**

**Stephen Graham**


**Securities and Exchange Commission, Plaintiff**

**v.**

**Bonan Huang and Nan Huang, Defendants**

**Case No. 2:15-cv-00269-MAK (E.D. Pa.)**

**September 18, 2015**

# Table of Contents

I.   Scope .......................................................................................................................... 3

II.  Summary of Findings ................................................................................................. 4

III. Qualifications ............................................................................................................ 5

IV.  Facts and Data Considered ...................................................................................... 6

V.   Defendants Systematically Obtained and Analyzed Large Amounts of Transaction Data over Three Years ....................................................................................................................... 7

    A.   Defendants Repeatedly Accessed the Credit Card Transaction Database over Three Years ....... 8

    B.   Defendants Predicted Company Reported Sales Using Teradata Transaction Data ................. 12

VI.  The Credit Card Transaction Information Obtained by Defendants was Valuable to Investors ........ 15

    A.   Sales Estimates Derived from Teradata are Predictive of Companies' Reported Sales ............ 17

    B.   Sales Growth Estimates Derived from Teradata are Predictive of Company Revenue Surprises 19

VII. Defendants' Trading Profits Were Extraordinary ................................................... 25

Appendix 1: CV of Stephen Graham ................................................................................. 30

Appendix 2: Facts and Data Considered ......................................................................... 33

Exhibit A: Examples of SQL Programs .............................................................................. 39

Exhibit B: Tainted Ticker List ........................................................................................... 41

Exhibit C: SQL Program from Walmart DONE File ........................................................... 47

Exhibit D: Forecast Calculations from Walmart DONE File ............................................. 48

Exhibit E: Charts for 20 DONE Files ................................................................................. 49

Exhibit F: Correlations between Transaction Data and Company Reported Sales ................... 54

Exhibit G: Returns on Market, Retail Consumer Industry & Hedge Funds ................. 55

Exhibit H: Defendants' Rates of Returns Compared to Hedge Funds .......................... 56

# I.    Scope

1. I understand that Bonan Huang and Nan Huang (the "Defendants") were employees of Capital One Services, LLC, an affiliate of Capital One Financial Corporation, which is a diversified bank holding company that offers, through its subsidiaries, a broad array of financial products and services to consumers, including credit cards.

2. I was asked to examine the hard drives of the Defendants' work computers, to describe the programs and output files that I found that were used to obtain and analyze transaction data from Capital One's database of credit card transactions (known as "Teradata"), and to identify the consumer retail companies for which credit card transaction data were obtained.

3.  I was also asked to assess the company transaction information obtained by the Defendants from Teradata in order to evaluate whether a reasonable investor would consider this information to be important when making a decision to buy or sell securities in those companies. To form my opinion, I conducted three analyses:

   a. First, I analyzed whether the company transaction information obtained from Teradata was correlated with and predictive of company actual reported sales.

   b. Second, I considered that investors might have access to revenue forecasts produced by equity analysts. I analyzed the question of whether the company transaction data obtained from Teradata would be valuable even to an investor who had access to equity analysts' forecasts of company sales.

0097

   c.   Third, I analyzed whether the Defendants' investment returns were extraordinary, as compared to broad market returns, consumer retail industry returns, and to the returns earned by hedge funds.

## II.    Summary of Findings

4.   The Defendants obtained transaction data for hundreds of companies from Teradata on thousands of occasions during the period from February, 2012 to January, 2015.

5.   The Defendants used this transaction data to create predictions of future company sales for over two hundred companies. Because company revenue announcements typically occur several weeks after the fiscal-quarter close, the Defendants would have had their forecasts in hand well before the stock market knew the results.

6.   Company transaction information that the Defendants obtained from Teradata is statistically significantly correlated with and predictive of the companies' actual reported sales.

7.   Even if an investor had access to equity analysts' forecasts of company sales, he or she would find value in the company transaction information that the Defendants obtained from Teradata. I find that the transaction information is statistically significantly correlated with and predictive of revenue surprises (that is, instances when the company's reported revenues exceed or fall short of analysts' expectations).

8.   The Defendants were able to generate exceptionally high rates of returns on their investments. My analysis of the Defendants' securities trading data shows that their realized rates of return over the period January, 2012 to December, 2014 were far in excess of even the most successful hedge funds over the same time period. Bonan Huang

0098

earned an annual return of 432% over the three-year period, while Nan Huang earned an annual return of 407%.

9. Based on my analyses, as summarized above, I conclude that during the period February, 2012 to January, 2015, the Defendants systematically obtained transaction information on hundreds of companies from Teradata and analyzed these data in combination with company sales announcements. I find that the Capital One transaction data is significantly correlated with company actual sales and it predicts revenue surprises. This information gave the Defendants a meaningful trading advantage, by enabling them to buy stock and options in advance of good news, and to take a short position using stock and options before bad news. The Defendants traded in the securities of the companies for which they obtained transaction data and earned exceptionally high rates of return. I conclude that the information the Defendants obtained from Teradata would be important to a reasonable investor in deciding whether to buy or sell the securities of these companies.

## III.    Qualifications

10. I am a Financial Economist in the Office of Litigation Economics in the Division of Economic and Risk Analysis at the U.S. Securities and Exchange Commission ("SEC"). I perform economic and quantitative analysis and research in support of the Enforcement Division of the Commission. These analyses include detecting manipulative trading patterns and market abuses; quantifying harm to investors; measuring stock price reactions to corporate announcements and other events; and calculating disgorgement of ill-gotten gains.

11. I joined the SEC in July, 2012. Prior to joining the SEC, I worked for 15 years in private sector economic consulting firms. I conducted large scale data analyses, econometric modeling, statistical sampling, business forecasting, and damage calculations in litigation matters. My projects spanned many industries, including telecommunications, transportation, banking, securities and finance, and retail sales.

12. I received a B.A. in Economics from Central State University in Oklahoma. I passed the qualifying examinations in the economics Ph.D. program at Texas A&M University. My curriculum vitae is attached as Appendix 1.

13. In private consulting and at the SEC, the majority of my day-to-day work activity has been economic analysis, computer programming and data analysis. I am a proficient coder in eight computer languages, including SQL, and I am a proficient user of Microsoft Excel.

14. I receive an annual salary for the performance of my duties at the SEC. I have not been specially compensated for the preparation of my report nor is my annual salary in any way dependent upon the outcome of this case.

## IV.    Facts and Data Considered

15. The SEC was provided with forensic images of the hard drives from the Defendants' Capital One work computers. A forensic image reproduces the folder structure residing on a computer and reproduces all the files included in the folders. The files within the folders include Microsoft Excel spreadsheets; computer code written in the programming language SQL and in other languages; files showing the execution of SQL programs; files showing the output from SQL programs; e-mails exchanged between Bonan Huang

0100

and Nan Huang; and other types of files. I was able to open these files and examine their contents.

16. I was also provided access to documents that were provided to the SEC from Capital One and other third parties. This document set includes e-mails (and their attachments) sent between the Defendants using Capital One's e-mail server and a listing of queries made to the Capital One transaction database. It also includes monthly statements of their brokerage accounts.

17. There are three primary sources of information on Defendants' hard drives that provide information about their data searches of Teradata: one is their computer programs, another is files (including Excel files) with the output from their searches, and the last is the tracking system used by Teradata.

18. A list of the facts and data that I considered in forming my opinions is attached as Appendix 2.

19. My work is ongoing and my opinions are subject to revisions, including revisions based on new information (including new documents, facts or data, written discovery responses, deposition or other testimony, or reports by other experts or individuals) that subsequently may be provided to me or obtained by me.[1]

## V. Defendants Systematically Obtained and Analyzed Large Amounts of Transaction Data over Three Years

---

[1] I understand that the SEC has sought discovery from Defendants concerning, among other things, (1) why they searched Teradata for company credit card transaction information; (2) what they did with the company credit card transaction information; and (3) why they purchased the securities they did. I understand that Defendants have refused to answer the SEC's written discovery requests on these topics, as well as others, based on their Fifth Amendment rights against self-incrimination and also have refused to sit for deposition based on their fear of being arrested. Additionally, I may be asked to serve as a summary fact witness on other matters not set forth in this report.