**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| |
|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-v-<br><br>BONAN HUANG, et al.,<br><br>Defendants. |

Case No. 2:15-cv-00269-MAK

**DEFENDANTS BONAN AND NAN HUANG'S OPPOSITION
TO PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Securities and Exchange Commission ("SEC") fails to establish that there are no triable issues in this case and thus this Court should deny its motion for summary judgment. The movant bears the burden to prove it is entitled to judgment as a matter of law, instead what the SEC has established is that it lacks evidence sufficient to prevail at trial. The SEC has failed to show that the information that Defendants possessed was material. Instead, the SEC misinterprets Third Circuit case law, obfuscates the record, and ignores evidence that cuts against its case.

**BACKGROUND**

In this civil case, the SEC alleges that Defendants Bonan and Nan Huang violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder by insider trading on the basis of information misappropriated from their former employer, Capital One. The SEC now moves for summary judgment, arguing that the evidence set forth in its motion establishes liability as a matter of law and that no genuine issue of fact exists for trial.

The SEC has proffered evidence demonstrating that Defendants accessed and downloaded information from a database maintained by Capital One that tracked all credit card transactions made by Capital One credit card holders (referred to here as "Capital One transaction data"). (0089a–93a.)[1] The evidence suggests that Defendants looked at the transaction data along with publicly available information about numerous retail companies. (*Id.*) The evidence also indicates that Defendants bought options for the stocks of many of these same companies over several years. (0046a–47a.) Specifically, the SEC has set forth evidence that purports to show that Bonan Huang traded in the securities of 157 companies for which he was in possession of Capital One transaction data, and that Nan Huang traded in the securities of 149 companies for which he was in possession of Capital One transaction data. (*Id.*) The SEC details in its motion the circumstances surrounding Defendants' trades in only two of those companies, but seeks summary judgment on all by pointing to a list that sets out all the other trades allegedly at issue in this case. (SEC Mem. 5–7[2]; 0067a–88a.) Once Capital One learned that Defendants were accessing and downloading the transaction data more than their job functions required, Defendants were fired for violating Capital One's code of conduct. (0001a–04a.)

For the purposes of this motion, Defendants do not contest any of the facts set forth in the preceding paragraph. Instead, as Defendants have consistently maintained, the primary issue in dispute in this case is whether the Capital One transaction data was, at the time of each alleged improper transaction, material nonpublic information as that term is defined by courts interpreting securities law.

---

[1] Record citations to the SEC's Appendix to the Statement of Undisputed Facts are to specific pages 0001a through 0803a. Record citations to Defendants' Appendix to the Statement of Material Facts are to specific pages 0804a through 0870a.

[2] Citations to Plaintiff Securities And Exchange Commission's Memorandum Of Law In Support Of Its Motion For Summary Judgment Against Defendants Bonan Huang And Nan Huang are designated as "SEC Mem. __."

The SEC fails to establish that the information was nonpublic as a matter of law. The only evidence it offers in support of its theory is a declaration by Capital One. (SEC Mem. 13; 0001a–04a.) The declaration simply states that Capital One "did not sell or otherwise disclose the credit card transaction information in Teradata to anyone outside the company." (0002a–03a.) Defendants do not challenge the veracity of the declaration, but do not concede that this one affidavit is sufficient to demonstrate that the information was nonpublic.

The SEC also cannot demonstrate that there is no triable issue of fact regarding materiality. The SEC first asserts that the nature of the transaction data makes it material as a matter of law. (SEC Mem. 14–15.) The SEC contends that the transaction data constitutes information about a company's revenue, and argues that the Third Circuit has held that anything having to do with revenue is material as a matter of law. (*Id.*) Taken to its logical extreme, this argument suggests that data about the sale of a single cup of coffee at Starbucks would be relevant to a reasonable Starbucks investor. The SEC misunderstands the law.

The SEC next points to four categories of evidence it argues necessarily prove that the transaction data was material:

> *(1)* The first category of evidence is publicly available information about revenue. The SEC specifically cites the Yahoo! Finance webpage, which tracks analyst's revenue predictions for companies, and the SEC cites two examples when companies issued press releases touting their companies' revenues. (0505a–12a, 0522a–37a.) From this evidence, the SEC asserts that revenue predictions and announcements are generally important to investors. (SEC Mem. 15–16.)

> *(2)* The second category of evidence relates to Defendants' actions. The SEC asserts that Defendants' efforts to obtain and analyze the transaction data and to keep their activities secret from their employer is evidence that the information was material to them, and thus to a reasonable investor. (SEC Mem. 16–18.)

> *(3)* The third category of evidence relates to Capital One's actions. The SEC asserts that Capital One's policies and procedures prohibited personal use of the transaction data is evidence that the information was material. (SEC Mem. 18.)

*(4)* The fourth category of evidence relates Defendants' trading profits. The SEC compares these profits to the returns generated by market indices and the hedge fund industry generally, and concludes that Defendants' returns were higher. The SEC asserts that this also tends to prove materiality. (SEC Mem. 18–19.)

Based solely on this evidence, and despite never discussing the actual market for any of the securities at issue, the SEC argues that "reasonable minds cannot differ" as to whether the Capital One transaction data is material. (SEC Mem. 14.) As is discussed below, the SEC is wrong across the board on its materiality arguments.

## ARGUMENT

### I.    Summary Judgment Standard

Summary judgment is warranted only when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A material fact dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When evaluating a motion for summary judgment, the facts are to be construed in a light most favorable to the non-moving party. *Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The district court cannot decide issues of fact at the summary judgment stage" because the court's function "is not to weigh the evidence and determine the truth of the matter, but rather to determine if there is a genuine issue for trial." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993). The moving party bears the initial burden of showing the basis of its motion, which in this case means that the SEC must prove its case as a matter of law, and only then is the burden shifted to the non-moving party to present specific facts showing that a genuine issue exists for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

II.     **The SEC Has Not Proven That The Capital One Transaction Data Was Material As A Matter Of Law**

The SEC has not presented any evidence that would justify taking the issue of materiality away from the trier of fact in this case. Indeed, despite quoting case law holding that information is material only when it "significantly alter[s] the total mix of information available" to a reasonable investor (SEC Mem. 13), the SEC never discusses what mix of information was actually available to investors for any of the securities at issue, and the SEC never addresses how the Capital One transaction data would have significantly altered that mix if disclosed. Instead, in its bid to avoid trial, the SEC mischaracterizes Third Circuit case law, ignores unhelpful facts, and relies on evidence that is hardly probative of materiality. The SEC has set forth such weak evidence of materiality, summary judgment in favor of Defendants pursuant to Rule 56(f) is more appropriate than judgment in favor of the SEC.

A.     **Materiality Standard**

To succeed on an insider trading claim, the SEC must prove that a defendant bought or sold a security on the basis of material nonpublic information about the security in violation of a duty of trust or confidence. *See U.S. v. McGee*, 763 F.3d 304, 310–11 (3d Cir. 2014). Insider trading liability is predicated on the notion that insider trading is a type of securities fraud proscribed by Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. *U.S. v. Newman*, 773 F.3d 438, 445 (2d Cir. 2014). Therefore, courts analyzing materiality in an insider trading case look generally to how materiality is applied in all types of securities fraud cases. *See, e.g.*, *SEC v. Fox*, 855 F.2d 247, 252–53 (5th Cir. 1988); *SEC v. Mangan*, 598 F. Supp. 2d 731, 734 (W.D.N.C. 2008).

The question of whether certain information is material is an objective one that turns on the significance of the information to a reasonable investor. *TSC Indus. v. Northway Inc.*, 426

U.S. 438, 449 (1976). Information not disclosed to the market is material only if it would have assumed actual significance in the deliberations of the reasonable investor. *Id.*; *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir. 1996). The oft cited standard is that there must be "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (quoting *TSC Indus.*, 426 U.S. at 449).

The reasonable investor is someone, for example, who understands the economic conditions and trends with respect to a particular geographic area (*see In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 377 (3d Cir. 1993)), or who can conduct calculations to make sense of a financial disclosure (*see In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 269–71 (3d Cir. 2005)). In other words, the reasonable investor is someone who understands the complex factors that make up the total mix of information available in the market about a specific security.

For purposes of analyzing materiality at the summary judgment stage, it is important to note that materiality is a mixed question of law and fact. *Westinghouse*, 90 F.3d at 714. The Third Circuit has held that "where there is room for differing opinions on the issue of materiality, the question should be left for jury determination." *Ieradi v. Myland Laboratories, Inc.*, 230 F.3d 594, 599 (3d Cir. 2000).

There is a long line of cases from the Third Circuit demonstrating that proving materiality requires significant evidence that directly speaks to how the market would view the relevant information. *See, e.g.*, *Merck & Co.*, 432 F.3d at 269 (disclosure about "aggressive" revenue-recognition practice was immaterial); *Oran*, 226 F.3d at 283 (adverse reaction reports linking

diet pills to heart valve complications were immaterial); *Ieradi*, 230 F.3d at 599 (failure to disclose exclusive supply contracts was immaterial); *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1425 (3d Cir. 1997) (misstated sales revenue was immaterial as a matter of law); *Westinghouse*, 90 F.3d at 715 (misrepresented loan loss reserves were immaterial); *Trump Casino*, 7 F.3d at 369 (misrepresentation that partnership could repay certain bonds was immaterial).

### B.    Revenue information is not material as a matter of law

Contrary to the representations in the SEC's memorandum of law, the Third Circuit has never held that revenue information is material as a matter of law. The SEC cites *Rothberg v. Rosenbloom*, 771 F.2d 818, 821 (3d Cir. 1985) for the proposition that "the Third Circuit has expressly held that company revenue information is material as a matter of law." (SEC Mem. 14.) The SEC misinterprets this case, which says no such thing.

In *Rothberg*, after a bench trial and not at the summary judgment phase, the judge held that the *in pari delicto* defense applied to a dispute arising from non-payment of promissory notes because the notes grew out of transactions involving illegal insider trading. 771 F.2d at 819. As part of that ruling, the district court found that the information at issue was material. *Id.* at 820–22. On appeal, the Third Circuit simply held that the district court's trial finding was not erroneous and was supported by the facts presented at trial. *Id.* at 821, 823. The opinion says nothing about revenue information always being material, and there is nothing in the holding that even suggests such an interpretation.[3]

---

[3] To the extent that *Rothberg* has any relevance to this motion, the opinion supports denying the SEC's motion for summary judgment. The issue in *Rothberg* was, in part, whether it was material to know that a company's orders for one year would substantially exceed those from the prior year based on seeing the company's books and conversing with the company's sales people. *Id.* at 820. As mentioned, this materiality issue was left to the factfinder to decide at trial. *Id.* at 819.

The SEC's assertion that revenue information is material as a matter of law is directly contradicted by another case cited in its own brief, *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997). The Third Circuit held in *Burlington* that a company's understated sales revenue was <u>immaterial</u> as a matter of law because when the company later disclosed the correct sales revenue, there was no appreciable effect on the market price of the stock or on analysts' projections of the company's earnings. *Id.* at 1425. In other words, when faced directly with the issue of whether a reasonable investor would like to know the actual sales revenue of a company (as opposed to the understated revenue disclosed by the company), rather than hold that such information is always material, the Third Circuit dismissed the case upon finding that the information was immaterial.[4]

The SEC's assertion that revenue information is material as a matter of law also ignores the Supreme Court's holdings about materiality and the SEC's own guidance on the issue. The Supreme Court has held that "[a]ny approach that designates a single fact or occurrence as always determinative of an inherently fact-specific finding such as materiality, must necessarily be overinclusive or underinclusive." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 131 S. Ct. 1309, 1318 (2011) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988)). Likewise, when proposing Regulation FD, which addresses when companies must disclose material nonpublic information to the market, the SEC stated that "[w]hile we acknowledged in the Proposing Release that materiality judgments can be difficult, we do not believe an appropriate answer to this difficulty is to set forth a bright-line text, or an exclusive list of 'material' items for purposes of Regulation FD." Selective Disclosure and Insider Trading, Securities Act Release

---

[4] In this case, the Capital One transaction data does not go to, or even come close to, total sales revenues of any company at issue. The SEC's own theory is that at most Defendants had information about approximately 2% of revenues of certain companies. (0109a n.13.)

No. 33-7881, Exchange Act Release No. 34-43154, 65 Fed. Reg. 51716, at 51721 (Aug. 24, 2000).

The SEC is simply wrong when arguing that the Capital One transaction data is material because any information about revenue is material as a matter of law. Even if revenue information was always material as a matter of law, which it is not, this case contemplates only a small percentage of revenue information and not actual revenues. (*See* 0109a n.13.)  If the whole is not material as a matter of law, obviously a small percentage of the same cannot be.

**C.**      **The SEC's materiality evidence is insufficient to justify summary judgment**

The SEC's motion should be denied not only because the SEC incorrectly believes that any amount of revenue information is material as a matter of law. The SEC also misunderstands what evidence is sufficient to prove materiality in this case as a matter of law. The SEC points to the following circumstantial evidence that it contends should be dispositive on the issue of materiality: (1) revenue is considered material by securities industry professionals and investors; (2) Defendants' actions demonstrate that they subjectively believed the information was material; (3) Capital One's treatment of the data indicates that the information was material; (4) Defendants' trading profits demonstrate that the information was material. (SEC Mem. 14.) Although the SEC may rely on circumstantial evidence to prove an insider trading case, the circumstantial evidence presented here does not establish that the relevant amount of Capital One transaction data is "so obviously important to the investor, that reasonable minds cannot differ on the question of materiality," *SEC v. Research Automation Corp.*, 585 F.2d 31, 35 (2d Cir. 1978) (internal quotations omitted). *Cf. SEC v. Garcia*, No. 10-cv-5268, 2011 WL 6812680, at *14 (N.D. Ill. Dec. 28, 2011) (holding that the SEC's circumstantial evidence was insufficient to avoid entering summary judgment in favor of an insider trading defendant).

1.       *The SEC's general evidence about the importance of revenue is insufficient to prove materiality in this case*

The SEC contends that the importance that industry analysts and investors generally place on revenue demonstrates that the Capital One transaction data was material. The only evidence cited to support this contention is the fact that revenue is tracked by Yahoo! Finance and that two companies have highlighted revenue in press releases. (SEC Mem. 15–16.)

Materiality is an individualized inquiry into whether the information actually at issue in the case significantly altered the total mix of information available to a reasonable investor. *See Matrixx*, 131 S. Ct. at 1318, 1321; *see also U.S. v. Smith*, 155 F.3d 1051, 1066 (9th Cir. 1998) (holding that "materiality requires a nuanced, case-by-case approach.") The SEC cites no case law to suggest that the materiality element can be satisfied by simply noting a few examples where market participants discuss an issue like revenue. To prevail, the SEC must demonstrate that knowing a minute portion of projected revenues is always material. That is not the case here.

Furthermore, The SEC's argument ignores Third Circuit case law about what type of information has proven to be <u>immaterial</u> in securities fraud cases. *See, e.g., Oran*, 226 F.3d at 283 (adverse reaction reports linking diet pills to heart valve complications were immaterial); *Burlington Coat Factory*, 114 F.3d at 1425 (revenue disclosure was immaterial as a matter of law); *Westinghouse*, 90 F.3d at 715 (misrepresented loan loss reserves were immaterial). In all of these cases, the Third Circuit could have presumably relied on scant evidence similar to what the SEC puts forward here, showing that, for example, the market is generally interested in information about adverse drug reactions with respect to pharmaceutical companies, or with revenue, or with loan loss reserves. Yet in each of those cases, the Third Circuit went the other way and held the information was immaterial as a matter of law because it made an individual

assessment of the facts and circumstances relating to each transaction, and did not oversimplify the matter by making materiality a one-size-fits-all analysis, as the SEC suggests.

Indeed, in *Westinghouse*, the Third Circuit, in a decision written by current Supreme Court Justice Samuel Alito, explicitly recognized that "adequacy of loan loss reserves is generally the type of information that would significantly influence a reasonable investor," but the Court <u>still held the information at issue was immaterial</u>. 90 F.3d at 715. The Court found that an adequate loan loss reserve would have resulted in writing down one asset by $1.278 million, which "would have amounted to merely 0.54% of Westinghouse's net income of $234 million for the quarter." *Id.* On that basis, the Court held that the inadequate loan loss reserve allegation was "not sufficiently material to be actionable." *Id.*

In the face of *Westinghouse*, and numerous other materiality decisions from the Third Circuit, the SEC's argument lacks merit. The contention that a few references to the word revenue by market participants is enough to establish that "reasonable minds cannot differ" is unmoored from the actual case law.

Furthermore, this case deals with Defendants' possession of Capital One's transaction data, not their possession of any particular company's actual revenue figures. Even to the extent that circumstantial evidence about the importance of revenue could be considered to be marginally probative of materiality in some cases, it is irrelevant in this case in which the SEC has not presented any evidence to show that Defendants actually knew a company's total revenue before it was disclosed.

### 2. *Defendants' actions are of little probative value to an objective materiality inquiry*

The SEC contends that the alleged subjective importance that Defendants placed on the Capital One transaction data is sufficient to justify summary judgment as to materiality. (SEC

Mem. 16.) Such subjective evidence should be given minimal value considering that materiality is an objective inquiry, *TSC Indus.*, 426 U.S. at 445 ("The question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor."). Indeed, the SEC does not cite a single case holding that the issue of materiality should be taken away from the trier of fact based solely on evidence of a defendant's subjective belief about materiality.

The Third Circuit has held that "a particular misrepresentation or omission to a reasonable investor in one document or circumstance may not influence a reasonable investor in another." *Trump Casino*, 7 F.3d at 369. As this holding suggests, a reasonable investor may judge the materiality of certain information differently based on the context and circumstances surrounding the disclosure of that information. Whereas the case here deals with more than 100 different securities traded in numerous different circumstances, how a reasonable investor would have viewed the Capital One transaction data may vary by each security and by the timing of each transaction, and should not be determined before trial in blunderbuss fashion based solely on Defendants' alleged beliefs.

Furthermore, the weight that the SEC attempts to give Defendants' actions is undermined by the actual evidence that the SEC relies on. The SEC initially claims that Defendants "spent countless hours" accessing the Capital One transaction data. (SEC Mem. 16.) The SEC cites no evidence to support that claim. Instead, the SEC's own expert notes in his report that the Capital One transaction data was accessed using computer commands that, for example, <u>automatically</u> performed certain manipulations and automatically accessed public information about companies. (0102a–03a; 0105a.) This evidence of automation cuts against the SEC's assertion that Defendants spent hours attempting to access the transaction data.

The SEC also claims that Defendants must have considered the information material because "it was the *only information* that they used to make investment decisions." (SEC Mem. 17 (emphasis in original).) The SEC's factual basis for this argument is that Defendants asserted their Fifth Amendment rights in response to interrogatories about what other information they considered when trading securities. However, a Fifth Amendment assertion is not the same thing as an acknowledgment that Defendants used no other information. The SEC overreaches here. And it cannot justify such an inference because there must be some independent corroborative evidence supporting the inference. *S.E.C. v. Graystone Nash, Inc.,* 25 F.3d 187, 191 (3d Cir.1994); *U.S. v. Local 560 of Intern. Broth. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 780 F.2d 267, 292 n.32 (3d Cir. 1985). Importantly, the SEC well knows that the evidence actually suggests the opposite of its assertion; as is noted in its own brief, Defendants accessed company-specific information from publically available sources. (SEC Mem. 17.)

Finally, the SEC claims that Defendants' conduct suggests that the transaction data was material because Defendants attempted to conceal their actions from their employer. (SEC Mem. 17–18.) This is a wild leap not supported by the evidence or by common sense. Concealment does not equate to materiality. It may relate to breach of a duty, but it does not go to whether the information significantly altered the total mix of information.  The SEC mistakenly conflates the elements of insider trading here.

The Court should give little weight to this evidence about Defendants' actions when determining whether summary judgment is appropriate. To do otherwise would be to ignore the Supreme Court's holding that the materiality inquiry is an objective one.

13

### 3.    *Capital One's treatment of the transaction data is irrelevant*

The SEC contends that the fact that Capital One took steps to protect the information being used or disseminated improperly constitutes evidence of materiality. (SEC Mem. 18.) This evidence is irrelevant, and the SEC's theory in this regard is baseless.

The SEC relies on one Eighth Circuit case for the proposition that courts assessing materiality have considered whether a company that owns the nonpublic information takes care to keep it confidential. This case says nothing to suggest such information is actually relevant to materiality. Instead, the case finds that the fact that information was protected by the company merely suggested that the information was "more reliable and more important" than certain witnesses claimed at trial. *U.S. v. Anderson*, 533 F.3d 623, 630 (8th Cir. 2008). This case has never been applied for the proposition that the SEC argues in this case and is inapplicable to a Third Circuit case analyzing materiality at the summary judgment stage.

Furthermore, the SEC's evidence to support its contention is weak and does not justify summary judgment. The SEC points to the fact that Capital One had policies and procedures prohibiting Defendants from personally using and profiting on the company's proprietary information. Considering the likelihood that countless other companies have similar policies and procedures that extend broadly to all sorts of proprietary and other private information, the SEC's contention that all such information can be considered material to a reasonable investor must be incorrect. Indeed, Capital One's policies state that private employee information, such as social security numbers, is protected information that should not be disclosed publicly. (0017a.) No one can argue that the social security numbers of Capital One employees are material to a reasonable investor.

### 4.     The SEC fails to present sufficient evidence to establish price impact

In its motion for summary judgment, the SEC raises the issue of price impact but makes no effort to prove it properly. The SEC contends that Defendants' trading profits demonstrate that the Capital One transaction data is material. (SEC Mem. 18–19.) This argument is intended to suggest that Defendants' trades were only profitable because the price of the securities in which they invested moved favorably upon disclosure of each company's revenue figures.

The SEC's argument fails to recognize what is actually required to prove materiality by price impact.[5] As the Third Circuit has recognized: "Demonstrating that market reactions are caused by company press releases should not, however, be an exercise in *post host, propter hoc* logic. Many variables have the potential to and do affect a stock price-the daily market average; national, local and industry-specific economic news; competitors' activities; and on and on." *U.S. v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (quoting *Unger v. Amedisys Inc.*, 401 F.3d 316, 325 (5th Cir. 2005). Where multiple variables may be at issue, the Third Circuit has suggested that expert testimony may be required to help the trier of fact discern the reason for a particular price movement. *See id.* (affirming *U.S. v. Schiff*, 538 F. Supp. 2d 818, 841–42 (D.N.J. 2008) ("The underlying facts proffered likely require expert testimony.")).

Despite alleging that the Capital One transaction data was material with respect to dozens of securities transactions, the SEC has presented virtually no evidence showing when the prices of those stocks moved based on disclosure of revenue data that Defendants were aware of. Instead, the SEC cherry picked two examples for the purpose of this motion that purport to show

---

[5] The Third Circuit has "one of the clearest commitments to the efficient market hypothesis" when compared to other courts of appeals. *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 269 (3d Cir. 2005) (internal quotations omitted). "In the context of an 'efficient' market, the concept of materiality translates into information that alters the price of the firm's stock." *Burlington Coat Factory*, 114 F.3d at 1425 (internal citations omitted). As a result, "if a company's disclosure of information has no effect on stock prices, it follows that the information disclosed was immaterial as a matter of law." *Oran*, 226 F.3d at 282 (internal quotations and ellipses omitted).

that Defendants were able to profit by trading around strong revenue announcements by Cabela's and Chipotle. (SEC Mem. 5–7, 19.) The SEC ignores every other stock at issue in this case. Even for the two stocks it does mention, the SEC does not make any effort to attempt to exclude other factors that may have impacted the stock price, such as those quoted by the Third Circuit in *Schiff*. The SEC's own expert has even disclaimed any attempt at trying to prove price impact in this case.

The SEC's evidence of price impact is insufficient to carry its burden at trial and thus cannot be sufficient for summary judgment.

### D.       The SEC ignores facts that create a genuine dispute as to materiality

As mentioned above, materiality is a mixed question of law and fact. *Westinghouse*, 90 F.3d at 714. Therefore, by its very nature, materiality is an issue that requires a trier of fact to analyze whether the information at issue would affect a reasonable investor's decision to buy or sell the relevant security. The SEC's argument that no genuine issues of fact exist for the trier of fact with respect to materiality is disingenuous. The SEC completely ignores the numerous facts that undermine its own arguments and that the trier of fact may believe shows that the transaction data is not material.

For example, when the SEC asserts that revenue is considered important by securities professionals, the SEC ignores the fact that the market did not react to numerous revenue disclosures by the companies in which Defendants traded securities. (0804a–06a.) Likewise, when the SEC asserts that Defendants' actions demonstrate subjective belief of materiality, the SEC ignores the glaring fact that Defendants actually relied on the Capital One transaction data for the wrong company when analyzing whether to buy a different company's stock. (0219a–21a, 0251a–53a.) When the SEC asserts that Capital One's treatment of the data is relevant to

materiality, the SEC ignores Capital One's own testimony that its efforts to protect the data were so minimal that it did not even detect the thousands of times that Defendants accessed the database improperly until years later. (0815a–16a (Brooks Dep. 32:19–35:17), 0819a (Brook Dep. 47:2–19).) Finally, when the SEC asserts that Defendants' trading profits prove the information was material, the SEC ignores evidence from Defendants' expert, Dr. Torben Voetmann, that the Capital One transaction data was not statistically predictive of abnormal stock returns. (0206a–07a, 0211a–17a.)

      With respect to this last point, the SEC's actions are particularly surprising. The SEC incorrectly argues that Defendants "have not and cannot present a shred of evidence" to contest the SEC's argument that Defendants' trading profits demonstrate materiality. This is not only untrue, but the SEC attempts to obfuscate the record in an effort to suggest that Defendants have no relevant evidence.

      The evidence supporting the SEC's arguments about the significance of Defendants' trading profits was originally set forth in the initial report by the SEC's materiality expert, Stephen Graham. (0119a–23a.) Defendants' expert, Dr. Voetmann, specifically addressed the argument in his rebuttal report, stating:

> Mr. Graham examines Defendants' returns with the benefit of hindsight and concludes that, since these returns were relatively high, this indicates they must have been trading on material information. However, this analysis is confounded by ex-post information, namely the actual realization of profits after the Defendants traded on the transaction data. On the contrary, to assess whether the Defendants' information was material one has to determine on an *ex-ante* basis whether their transaction data could predict future revenues. My regression analysis above demonstrates that this was not the case.

(0224a–25a.)

Rather than admit that Dr. Voetmann has presented evidence that creates a genuine issue for trial with respect to Defendants' trading profits (i.e., his opinions and regression analysis), the SEC argues that Dr. Voetmann's proposed testimony should not even be considered for purposes of this motion. (SEC Mem. 20.) The SEC claims that it is not relying on the opinions from its own expert that Dr. Voetmann criticizes, and therefore, Dr. Voetmann's opinions are irrelevant. (*Id.*) So what evidence exactly is the SEC relying on if not Mr. Graham's expert report? The SEC instead cites to a declaration prepared by Mr. Graham for purposes of its motion (0092–93), which states exactly the same thing that Mr. Graham stated in his original report (0119a–23a). Amazingly, the SEC thinks that the Court should simply disregard the actual evidence presented by Defendants because the SEC restated the same argument in a declaration to which Defendants have had no opportunity to respond.

The SEC's attempts to present only facts that support its materiality argument and ignore any fact that may undermine the argument should not be validated by granting summary judgment.

## III.    The SEC Has Not Proven That The Capital One Transaction Data Was Nonpublic

The SEC's evidence that the Capital One transaction data was nonpublic is insufficient to justify entering summary judgment as to this issue. The SEC relies exclusively on a declaration by Capital One stating that the company "did not sell or otherwise disclose the credit card transaction information in Teradata to anyone outside the company." (SEC Mem. 13; 0002a–03a.) This evidence fails to account for the fact that the underlying nature of the transaction data is a public transaction by a Capital One cardholder at a retail location. An investor could sit in a Chipotle and count the number of customers that come in each day to buy burritos and obtain similar information as that included in the transaction data and there could be no argument that

such information would be public. The jury should be left to decide whether Capital One's

treatment of the information fundamentally changes it in such a way to make it nonpublic.

## IV.    The Court Should Not Draw Certain Adverse Inferences Against Defendants

The SEC argues that its motion is further supported by the adverse inference that it

requests the Court to apply based on Defendants' assertions of their Fifth Amendment rights

during discovery. (SEC Mem. 22–23.) Defendants recognize that certain adverse inferences may

be appropriate in this case, but they oppose the SEC's requests for an adverse inference that the

Capital One transaction data was material nonpublic information.

As an initial matter, whether the transaction data was material or nonpublic is an

objective inquiry that turns not on any information within Defendants' possession but on the

nature of the actual transaction data. Therefore, an adverse inference is neither necessary nor

appropriate for purposes of determining whether the transaction data is material nonpublic

information. There is no reason that the SEC should be benefit from such an adverse inference in

this circumstance.

Moreover, the SEC ignores the fact that Defendants responded to interrogatories about

the basis for their contentions that the Capital One transaction data is not material and nonpublic.

(0861a–70a.) Instead, the SEC's request for an adverse inference is based on Defendants'

responses to the SEC's numerous requests for admission. (0765a–66a, 0773a–74a, 0780a.) In

response to the individual requests for admission related to materiality and non-publicity,

Defendants asserted proper objections based in part on the fact that the requests were overly

broad because they asked Defendants to admit or deny that the transaction data was material and

nonpublic with respect to every security at issue in this case in response to one discovery request.

(*Id.*) Defendants further objected on the basis that the requests sought improper legal conclusions

about objective issues reserved for the jury. (*Id.*) Defendant even elaborated on these objections

in written and verbal communications with the SEC, including providing applicable case law

citations. (0856a–60a.) The SEC never challenged these objections in a motion, and now

attempts to simply ignore the objections in its effort to win on summary judgment. This is

improper, and an adverse inference should not be drawn as to whether the Capital One

transaction data is material nonpublic information.[6]

## V.      Conclusion

For the foregoing reasons, the SEC's motion for summary judgment should be denied.


Dated:  New York, New York
        November 6, 2015
                                            Morvillo LLP


                                            /s/ Jason Somensatto
                                            Gregory Morvillo
                                            Eugene Ingoglia
                                            Jason Somensatto
                                            200 Liberty Street, 27th Floor
                                            New York, New York 10281
                                            212-796-6330
                                            jsomensatto@morvillolaw.com


                                            Mark Billion
                                            Billion Law
                                            1 International Plaza, Suite 550
                                            Philadelphia, PA 19113
                                            212-268-7722
                                            markbillion@billionalaw.com


                                            *Attorneys for Defendants*
                                            *Bonan and Nan Huang*

---

[6] To the extent that the Court does believe an adverse inference as to materiality is appropriate, the Court should still deny summary judgment because an adverse inference alone is not sufficient to impose liability. *See Merrill Lynch Business Financial Servs. Inc. v. Kupperman*, 06-cv-4802, 2010 WL 2179181, at *2–*3 (D.N.J. May 28, 2010); *In re Winstar*, 348 B.R. 234, 281 (Bkrtcy. D. Del. 2005).

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2015, I caused a true and correct copy of the

foregoing to be served via the Electronic Case Filing System upon the following counsel:

Christopher R. Kelly
United States Securities and Exchange Commission
Philadelphia Office
One Penn Center
1617 JFK Blvd., Ste. 520
Philadelphia, PA 19103


/s/Jason Somensatto