**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION** | **Case No.  2:15-cv-00269-MAK** |
| **Plaintiff,** | |
| **v.** | |
| **BONAN HUANG, et al.** | |
| **Defendants.** | |

**PLAINTIFF SECURITIES AND EXCHANGE
<u>COMMISSION'S PROPOSED JURY INSTRUCTIONS</u>**

David L. Axelrod
Christopher R. Kelly

Attorneys for Plaintiff:

SECURITIES AND EXCHANGE
COMMISSION
Philadelphia Regional Office
One Penn Center
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

Dated: November 12, 2015

## <u>TABLE OF CONTENTS</u>

**PRELIM. INSTRUCTION NO. 1 – INTRODUCTION; ROLE OF JURY** ...........................1

**PRELIM. INSTRUCTION NO. 2 – DESCRIPTION OF CASE** ...............................................2

**PRELIM. INSTRUCTION NO. 3 – CONDUCT OF THE JURY** ...........................................4

**PRELIM. INSTRUCTION NO. 4 – PREPONDERANCE OF THE EVIDENCE** .................6

**PRELIM. INSTRUCTION NO. 5 – DESCRIPTION OF TRIAL PROCEEDINGS** ............7

**FINAL INSTRUCTION NO. 1 – EVIDENCE** ........................................................................8

**FINAL INSTRUCTION NO. 2 – DIRECT AND CIRCUMSTANTIAL EVIDENCE** .........10

**FINAL INSTRUCTION NO. 3 – CHARTS AND SUMMARIES IN EVIDENCE** ..............11

**FINAL INSTRUCTION NO. 4 – OPINION TESTIMONY** ...................................................12

**FINAL INSTRUCTION NO. 5 – INFERENCE FROM ASSERTION OF PRIVILEGE
AGAINST SELF-INCRIMINATION** ......................................................................................13

**FINAL INSTRUCTION NO. 6 – THE SEC'S ALLEGATIONS** ..........................................15

**FINAL INSTRUCTION NO. 7 – INSIDER TRADING STATUTORY PURPOSE** ............16

**FINAL INSTRUCTION NO. 8 – INSIDER TRADING, SECURITY FRAUD** ...................18

**FINAL INSTRUCTION NO. 9 – MISAPPROPRIATION THEORY OF INSIDER
TRADING** ..............................................................................................................................19

**FINAL INSTRUCTION NO. 10 – ELEMENTS OF LIABILITY FOR
INSIDER TRADING** .............................................................................................................20

**FINAL INSTRUCTION NO. 11 – MATERIAL NONPUBLIC INFORMATION** ..............21

**FINAL INSTRUCTION NO. 12 – DUTY OF TRUST AND CONFIDENCE** ......................23

**FINAL INSTRUCTION NO. 13 – BREACH OF DUTY OF TRUST
AND CONFIDENCE** .............................................................................................................24

**FINAL INSTRUCTION NO. 14 – INSIDE INFORMATION DOES NOT HAVE TO BE
SOLE REASON FOR TRADING** ..........................................................................................25

**FINAL INSTRUCTION NO. 15 – SCIENTER** ....................................................................26

**FINAL INSTRUCTION NO. 16 – INSTRUMENTALITY OF
INTERSTATE COMMERCE** ......................................................................27

**FINAL INSTRUCTION NO. 17 – BURDEN OF PROOF; PREPONDERANCE
OF THE EVIDENCE** ...................................................................................29

**FINAL INSTRUCTION NO. 18 – DELIBERATIONS**.............................................30

**PRELIM. INSTRUCTION NO. 1 – INTRODUCTION; ROLE OF JURY**

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

_____

3d Cir. Model (civil) § 1.1.

**PRELIM. INSTRUCTION NO. 2 – DESCRIPTION OF CASE**

In this case, the plaintiff U.S. Securities and Exchange Commission ("SEC") claims that defendants Bonan Huang and Nan Huang violated the securities laws by committing insider trading; Bonan Huang and Nan Huang deny that claim.  I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements that the SEC must prove to make its case:

*To prevail the SEC must prove by a preponderance of the evidence that Bonan Huang and Nan Huang engaged in insider trading when they breached a duty they owed to their employer, Capital One, by using Capital One's material nonpublic information to trade in the securities of numerous publicly-traded companies, the SEC must show that:*

*(1)    Bonan Huang and Nan Huang obtained material nonpublic information from their employer, Capital One;*

*(2)    Bonan Huang and Nan Huang owed a duty of trust and confidence to Capital One;*

*(3)    Bonan Huang and Nan Huang breached that duty of trust and confidence by using the material nonpublic information to trade in the securities of numerous retail companies;*

*(4)    Bonan Huang and Nan Huang acted with the intent to deceive, manipulate, or defraud, or were reckless in not knowing that their conduct was deceptive, manipulative, or fraudulent; and*

*(5)      Bonan Huang and Nan Huang used, or caused to be used, any means or instrumentalities of interstate transportation or communication, including the mails or the facilities of a national securities exchange in furtherance of a scheme to defraud or fraudulent conduct.*

---

3d Cir. Model (civil) § 1.2 (italicized portion added).

**PRELIM. INSTRUCTION NO. 3 – CONDUCT OF THE JURY**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves.  If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly.  There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence.  I know that many of you use cell phones, smart phones [like Blackberries and iPhones], and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others.  You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends.  You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services [such as Twitter], or through any blog, website, internet chat room, or by way of any other social networking websites or services [including Facebook, MySpace, LinkedIn, and YouTube].

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either.  [That is why you are asked to wear your juror tags.  It shows that you are someone who is not to be approached in any way.]

Second, do not read or listen to anything related to this case that is not admitted into evidence.  By that I mean, if there is a newspaper article or radio or television report relating to

4

this case, do not read the article or watch or listen to the report.  In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case.  Do not do any research on the internet, for example.  You are to decide the case upon the evidence presented at trial.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case.  Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims until all of the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

---

3d Cir. Model (civil) § 1.3.

**PRELIM. INSTRUCTION NO. 4 – PREPONDERANCE OF THE EVIDENCE**

This is a civil case.  The SEC is the party that brought this lawsuit.  Bonan Huang and Nan Huang are the parties against whom the lawsuit was filed.  The SEC has the burden of proving its case by what is called the preponderance of the evidence.  That means the SEC has to prove to you, in light of all the evidence, that what it claims is more likely so than not so.  To say it differently: if you were to put the evidence favorable to the SEC and the evidence favorable to Bonan Huang and Nan Huang on opposite sides of the scales, the SEC would have to make the scales tip somewhat on its side.  If the SEC fails to meet this burden, the verdict must be for Bonan Huang and Nan Huang.  If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard of proof and it applies only to criminal cases.  It does not apply in civil cases such as this.  So you should put it out of your mind.

---

3d Cir. Model (civil) § 1.10 (modified to delete section on affirmative defenses and counterclaims).

**PRELIM. INSTRUCTION NO. 5 – DESCRIPTION OF TRIAL PROCEEDINGS**

The trial will proceed in the following manner:

First, attorneys for the SEC will make an opening statement to you. Next, attorneys for Bonan Huang and Nan Huang may make an opening statement.  What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.  [A party is not required to make an opening statement.]

After [Before] the attorneys have made their opening statements, [I will instruct you on the applicable law and] then each party is given an opportunity to present its evidence.

The SEC goes first because it has the burden of proof.  The SEC will present witnesses whom counsel for Bonan Huang and Nan Huang may cross-examine, and the SEC may also present evidence.  Following the SEC's case, Bonan Huang and Nan Huang may present evidence.  Counsel for the SEC may cross-examine witnesses for the defense.  [After the parties' main case is presented, they may be permitted to present what is called rebuttal evidence.]

After all the evidence has been presented, [I will instruct you on the law and then] the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. [Once the closing arguments are completed, I will then instruct you on the law.]  After that you will retire to the jury room to deliberate on your verdict in this case.

[At this point the court may wish to inform the jury of the scheduling and length of the trial, and other logistical information.]

---

3d Cir. Model (civil) § 1.12 (bracketed section from model).

**FINAL INSTRUCTION NO. 1 – EVIDENCE**

The evidence from which you are to find the facts consists of the following:

      1. The testimony of the witnesses;

      2. Documents and other things received as exhibits;

      3. Any facts that are stipulated--that is, formally agreed to by the parties; and

      [4. Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.]

The following things are not evidence:

      1. Statements, arguments, and questions of the lawyers for the parties in this case;

      2. Objections by lawyers;

      3. Any testimony I tell you to disregard; and

      4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced

by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded.   Do not speculate about what a witness might have said or what an exhibit might have shown.

---

3d Cir. Model (civil) § 1.5.

**FINAL INSTRUCTION NO. 2 – DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

---

3d Cir. Model (civil) § 1.6.

10

**FINAL INSTRUCTION NO. 3 – CHARTS AND SUMMARIES IN EVIDENCE**

The SEC has presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

---

3d Cir. Model (civil) § 2.7.

## FINAL INSTRUCTION NO. 4 – OPINION TESTIMONY

You have heard [will hear] testimony containing opinions from [name of witness].  In weighing this opinion testimony, you may consider [his/her] qualifications, the reasons for [his/her] opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness.  The opinion of [name of witness] should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that [name of witness] may have, including any bias that may arise from evidence that [name of witness] has been or will be paid for reviewing the case and testifying [or from evidence that [name of witness] testifies regularly and makes a large portion of [his/her] income from testifying in court].

---

3d Cir. Model (civil) § 2.11.

12

**FINAL INSTRUCTION NO. 5 – INFERENCE FROM ASSERTION OF PRIVILEGE AGAINST SELF-INCRIMINATION**

You have heard that Bonan Huang and Nan Huang declined to answer questions or otherwise respond to discovery on the grounds of their Fifth Amendment privilege against self-incrimination.

The Fifth Amendment of the United States Constitution affords every person the right to decline to answer any questions or otherwise respond to discovery if he or she believes that the answers may tend to incriminate them.  However, in civil cases, you are permitted, but not required, to draw the adverse inference – meaning a deduction or conclusion – that the withheld information would have been unfavorable to Bonan Huang and Nan Huang.

Any inference you may draw should be based upon all the facts and circumstances in this case as you may find them.

In this case, defendants have invoked the Fifth Amendment and refused to answer questions about nearly every relevant issue in this case.   Because of their refusal to answer, you may draw an adverse inference against defendants that:

- defendants accessed and took possession of Capital One's data without a business justification for doing so;

- defendants breached a fiduciary duty to Capital One in accessing and misappropriating, or in other words, stealing, Capital One's data for their personal use;

- defendants used Capital One's data as the basis of their trading and that information was important to their trading decisions;

- Capital One's data was material and nonpublic; and

- defendants understood that in misappropriating Capital One's data and using it as the basis for trading that they were breaching their fiduciary duty to Capital One and violating federal securities laws.

---

Adapted from L. Sand, <u>Modern Federal Jury Instructions,</u> Instr. 75-1 (defining inference); 75-5 (adverse inference); <u>SEC v. Colello,</u> 139 F.3d 674 (9th Cir. 1998); <u>SEC v. Prime One Partners, Corp.,</u> 1995 U.S. Dist. LEXIS 22587, *16-17 (C.D. Cal. June 9, 1995) (relying on an adverse inference from defendants' invocation of the Fifth Amendment in granting summary judgment in favor of the SEC on whether defendant made a material misrepresentation); <u>SEC v. Suman,</u> 684 F. Supp. 2d 378, 386-87 (S.D.N.Y. 2010) (applying an adverse inference in finding summary judgment for the SEC in an insider trading case).

## FINAL INSTRUCTION NO. 6 – THE SEC'S ALLEGATIONS

The SEC has alleged that defendants Bonan Huang and Nan Huang committed securities fraud by engaging in what is known as "insider trading." The Complaint, which is a set of factual assertions, alleges that Bonan Huang and Nan Huang, then-employees of Capital One, stole material nonpublic information from Capital One. Specifically, the Complaint alleges that Bonan Huang and Nan Huang repeatedly accessed Capital One's database of credit card transactions and downloaded Capital One's credit card transaction data, which they then analyzed and used to trade securities.

The Complaint alleges that, as Capital One employees, Bonan Huang and Nan Huang owed Capital One a duty of trust and confidence. The Complaint alleges that Bonan Huang and Nan Huang breached this duty by using Capital One's material nonpublic information to trade securities, in violation of Capital One policies. As a result of their unlawful trading, the SEC alleges that Bonan Huang made $2,294,696 and Nan Huang made $4,403,545.

---

Adapted from the Complaint filed by the U.S. Securities and Exchange Commission.

**FINAL INSTRUCTION NO. 7 – INSIDER TRADING STATUTORY PURPOSE**

The Securities and Exchange Act of 1934 was the second of two laws passed by Congress to provide a comprehensive plan to protect the investing public in the purchase and sale of securities that are publicly distributed.  Even though the first Act – the 1933 Securities Act – is not directly involved in this case, I shall briefly discuss its history and purpose to provide you with a better understanding of the entire legislative scheme.

The stock market crash of 1929 led to much legislation in the area of federal regulation. Included in this legislation was the Securities Act of 1933, and the creations of the Securities and Exchange Commission.  The Securities Act was enacted to protect the investing public in the purchase of securities that is publicly distributed.  The Act requires full and fair disclosure of all important facts so that the investing public can make informed investment decisions.

Following the enactment of the Securities Act of 1933 requiring full and fair disclosure relating to the offering of securities to the investing public, Congress enacted the Securities Exchange Act of 1934 to ensure fair dealing and outlaw deceptive and inequitable practices by those selling or buying securities on the securities exchanges, over the counter markets or in face-to-face transactions.  Among the primary objectives of the Securities Exchange Act are the maintenance of fair and honest security markets and the elimination of manipulative practices that tend to distort the fair and just price of securities.  The statute and rules are designed to support investor expectations that the securities markets are free from fraud and to prevent a wide variety of devices and schemes that are contrary to a climate of fair dealing.

Congress recognized that any deceptive or manipulative practice that influenced or
related to trading activity undermined the function and purpose of a free market.

---

L. Sand, Modern Jury Instructions, Instr. 57-19 and SEC v. Zandford, 535 U.S. 813 (2002); Ernst
& Ernst v. Hochfelder, 425 U.S. 185 (1976); Superintendent of Life ins. v. Bankers Life &
Casualty Co., 404 U.S. 6 (1971); United States v. Parrott, 425 F. 2d 972 (2d Cir. 1970). See also
United States v. O'Hagan, 521 U.S. 641, 666 (1997) (the "animating purpose of the [1934]
Exchange Act [is] to insure honest securities markets and thereby promote investor confidence");
United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 849 (1975) ("[t]he primary purpose
of the Acts of 1933 and 1934 was to eliminate serious abuses in a largely unregulated securities
market [including] the need for regulation to prevent fraud and to protect the interest of
investors").

**FINAL INSTRUCTION NO. 8 – INSIDER TRADING, SECURITY FRAUD**

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (2006), proscribes using a deceptive device in connection with the purchase or sale of securities in contravention of rules prescribed by the SEC.   Pursuant to this Congressional delegation, the SEC promulgated Rule 10b–5, 17 C.F.R. § 240.10b–5.  The Rule proscribes, in relevant part, "employ[ing] any device, scheme, or artifice to defraud" or "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(a), (c).  When someone uses material nonpublic information in breach of a duty, that is a violation of the law.

---

Adapted from <u>SEC v. Timothy McGee</u>, 895 F. Supp. 2d 669, 674-76 (E.D. Pa. Sept. 12, 2012); <u>aff'd</u> <u>United States v. McGee</u>, 763 F.3d 304, 309 (3d Cir. 2014); L. Sand, <u>Modern Federal Jury Instructions</u>, Instr. 57-18.

**FINAL INSTRUCTION NO. 9 – MISAPPROPRIATION THEORY OF INSIDER TRADING**

In this case, the SEC alleges that defendants Bonan Huang and Nan Huang are liable for securities fraud under the misappropriation theory of insider trading.  The misappropriation theory applies to one who, while owing a duty of loyalty and confidentiality to a source of inside information, uses that nonpublic information to trade in securities.  Under the misappropriation theory, the person using the information deceives the source of the information, breaching his duty of loyalty and confidentiality to that person or entity.  The deception occurs when the person fails to disclose to the source that he intends to rely on the nonpublic information to trade in the securities.  Here, the SEC alleges that defendants breached a duty to Capital One by using its confidential credit card transaction data to then trade in the securities of many companies for their own profit without disclosing this to their employer.

---

Adapted from United States v. McGee, Case No. 12-236 (E.D. Pa.), Jury Instructions (Tr. 11/15/12 at 66-67).

19

## FINAL INSTRUCTION NO. 10 – ELEMENTS OF LIABILITY FOR INSIDER TRADING

In order to show defendants Bonan Huang and Nan Huang liable for securities fraud under the misappropriation theory of insider trading, the SEC must establish by a preponderance of the evidence each of the following elements:

(1) Bonan Huang and Nan Huang obtained material nonpublic information from their employer, Capital One;

(2) Bonan Huang and Nan Huang owed a duty of trust and confidence to Capital One;

(3) Bonan Huang and Nan Huang breached that duty of trust and confidence by trading in a security on the basis of material nonpublic information;

(4) Bonan Huang and Nan Huang intended to deceive, manipulate, or defraud, or were reckless in not knowing that their conduct was deceptive, manipulative, or fraudulent; and

(5)  Bonan Huang and Nan Huang used, or caused to be used, any means or instrumentalities of interstate transportation or communication, including the mails or the facilities of a national securities exchange in furtherance of a scheme to defraud or fraudulent conduct.

---

Adapted from United States v. McGee, Case No. 12-236 (E.D. Pa.), Jury Instructions (Tr. 11/15/12 at 67-68); SEC v. Obus, 693 F.3d 276, 286 (2d Cir. 2012) (holding that scienter in a civil case may be established through recklessness); SEC v. Payton, No. 14 Civ. 4644(JSR), 2015 WL 1538454, at *1 (S.D.N.Y. Apr. 6, 2015) (same).

20

**FINAL INSTRUCTION NO. 11 – MATERIAL NONPUBLIC INFORMATION**

The first element the SEC must establish by a preponderance of the evidence is that Bonan Huang and Nan Huang obtained information that was both material and nonpublic at the time they traded securities.

Information is nonpublic if it is not available to the public through such sources as press releases, public filings with the SEC, trade publications, analyst reports, newspapers, magazines, television, radio, word of mouth, or other sources.  In deciding whether information has been effectively disseminated to the investing public, bear in mind that the test is not when a limited segment of people knew about such information.  The test is whether investors throughout the country had access to the information.  In considering whether the defendant possessed nonpublic information, you may consider whether the information possessed was more reliable or more specific than any rumors, speculation, or other information that may have been available to the general public.

Material information is information which a reasonable investor would have considered significant in making an investment decision.  Information is material when there is a substantial likelihood that disclosure of the information would be viewed by a reasonable investor as significantly altering the "total mix" of information made available concerning the company.  Nonpublic information about a company's revenue is material.

In assessing materiality, and determining whether the information here would have significantly altered the total mix of information for a reasonable investor, you may consider, among other things, how defendants treated Capital One's credit card transaction data and whether trading on the basis of this credit card transaction data was profitable.

21

In this case, the SEC contends that the information Bonan Huang and Nan Huang allegedly stole from Capital One was material and nonpublic because it reflected revenue figures that numerous publicly-traded retail companies had not yet disclosed to the public.  It is up to you to decide based on all of the relevant evidence whether the information allegedly known by the defendants was material.

---

For nonpublic:
United States v. Royer, 549 F.3d 886 (2d Cir. 2008) (affirming conviction for insider trading where former FBI agent was accused of using FBI database information to tip others about stocks to trade and rejecting challenge to jury instruction based on argument that the information was not "nonpublic" because some of the information was publicly available because it was not available "in any practical sense" and the FBI's method of combining the information was itself nonpublic and relevant for trading purposes); SEC v. Texas Gulf Sulphur, 401 F.2d 833, 853 n. 17 (2d Cir. 1968) (en banc) (liability for insider trading attaches at the time one "places an order, rather than the time of its ultimate execution"); SEC v. Mayhew, 121 F.3d 44, 50 (2d Cir. 1997) (holding that tip from corporate insider can serve which is more reliable or specific than public rumors is nonpublic despite existence of such rumors); United States v. Libera, 989 F.2d 596, 601 (2d Cir. 1993) ("trading on stolen information that is not fully impounded in price is a misuse of such information whether or not others are also trading on it").

For materiality:
Adapted from United States v. McGee, Case No. 12-236 (E.D. Pa.), Jury Instructions (Tr. 11/15/12 at 68).  See also Basic Inc. v. Levinson, 485 U.S. 224, 238, 241 n.18 (1988) ("[T]rading (and profit making) by insiders can serve as an indication of materiality . . . ."); TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976); Rothberg v. Rosenbloom, 771 F.2d 818, 821 (3d Cir. 1985) (holding that information about the company's revenue was material as a matter of law); United States v. Anderson, 533 F.3d 623, 630 (8th Cir. 2008) (upheld materiality of internal reports where the company treated them as highly confidential); SEC v. Mayhew, 121 F.3d 44, 52 (2d Cir. 1997) (("[A] major factor in determining whether information was material is the importance attached to it by those who knew about it.").

### FINAL INSTRUCTION NO. 12 – DUTY OF TRUST AND CONFIDENCE

The second element the SEC must establish by a preponderance of that evidence is that Bonan Huang and Nan Huang owed Capital One a duty of trust and confidence that obligated them to keep Capital One's credit card transaction data confidential.

To establish that Bonan Huang and Nan Huang had a duty of trust and confidence, the SEC must prove that Bonan Huang and Nan Huang were expected to keep the material information confidential or that their relationship with Capital One implied such a duty.

An employee typically owes an employer a duty of trust and confidence. A company's confidential information qualifies as property, and undisclosed misappropriation of such information by an employee violates a duty of trust and confidence. In determining whether Bonan Huang and Nan Huang owed Capital One a duty of trust and confidence, you may consider whether they misappropriated, or stole for their own purposes, Capital One's information without disclosing this fact to their employer. You may also consider whether defendants were bound by a company policy that required them to treat Capital One's data as confidential as a condition of their employment.

---

17 C.F.R. 240.10b5-2; <u>SEC v. O'Hagan</u>, 521 U.S. 642, 652 (1997); <u>SEC v. Obus</u>, 693 F.3d 276, 289 (2d Cir. 2012); <u>SEC v. Rocklage</u>, 470 F.3d 1, 7 (1st Cir. 2006); <u>United States v. Libera</u>, 989 F.2d 596, 600 (2d Cir. 1993); <u>Design Strategy, Inc. v. Davis</u>, 469 F.3d 284, 300 (2d Cir. 2006); <u>United States v. Chestman</u>, 947 F.2d 551, 566 (2d Cir. 1991); <u>SEC v. Materia</u>, 745 F.2d 197, 203 (2d Cir. 1984); <u>SEC v. Singer</u>, 786 F. Supp. 1158, 1169 (S.D.N.Y. 1992).

**FINAL INSTRUCTION NO. 13 – BREACH OF DUTY OF TRUST AND CONFIDENCE**

The third element the SEC must establish by a preponderance of the evidence is that despite a duty of trust and confidence owed Capital One, Bonan Huang and Nan Huang breached that duty when they traded in various securities on the basis of Capital One's credit card transaction data without disclosing this to Capital One.

_____

SEC v. McGee, 895 F. Supp. 2d 669, 681 (E.D. Pa. 2012).

24

### FINAL INSTRUCTION NO. 14 – INSIDE INFORMATION DOES NOT HAVE TO BE SOLE REASON FOR TRADING

To prove Bonan Huang and Nan Huang liable for insider trading, the SEC must prove that Bonan Huang and Nan Huang purchased securities on the basis of material nonpublic information they misappropriated from Capital One.  The SEC is not required, however, to prove that Bonan Huang and Nan Huang purchased the securities solely because of the material, nonpublic information that they possessed.  With respect to the transactions that are the subject of this case, a defendant's trades are made "on the basis" of information if the defendant making the purchase or sale was aware of the information when he made the purchase or sale.

---

17 C.F.R. §240.10b5-1(b) ("a purchase or sale of a security of an issuer is 'on the basis of' material nonpublic information . . . if the person making the purchase or sale *was aware* of the material nonpublic information when the person made the purchase or sale.") (emphasis supplied); United States v. Rajaratnam, 719 F.3d 139, 159, 160 (2d Cir. 2013) (applying the "knowing possession" standard when interpreting "on the basis of"); SEC v. Adler, 137 F.3d 1325, 1336-37 (11th Cir. 1998) (allowing presumption of use from possession); United States v. Teicher, 987 F.2d 112, 119-20 (2d Cir. 1993) (rejecting argument that government must prove causal connection between insider information and defendant's trading); In Re Oxford Health Plans, Inc. Securities Litigation, 187 F.R.D. 133, 143 (S.D.N.Y. 1999) ("An insider trading violation occurs when a trade is conducted in knowing possession of material, non-public information").

**FINAL INSTRUCTION NO. 15 – SCIENTER**

The fourth element the SEC must establish by a preponderance of the evidence is that Bonan Huang and Nan Huang acted with the intent to deceive, manipulate, or defraud, or were reckless in not knowing that their conduct was deceptive, manipulative, or fraudulent. This is sometimes referred to as acting with scienter. In addition to intentional conduct, scienter may be established through a showing of reckless disregard for the truth, that is, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care.

Direct proof of state of mind is almost never available, and it is not required to prove a defendant's state of mind. You cannot peer into a person's head to see what he or she was thinking at some time in the past. Therefore, the defendant's state of mind may be established by circumstantial evidence based upon a person's words, conduct, acts, and all the surrounding circumstances and the reasonable inferences that may be drawn from them.

For example, attempts to conceal one's conduct may be evidence of scienter. In addition, you have heard testimony that defendants left the United States after Capital One discovered they were stealing the credit card transaction data. Flight may be consistent with a guilty mind.

The defendant's conduct may be considered in light of other evidence in the case if it tends to prove any issue, including state of mind.

---

Herman & MacLean v. Huddleston, 459 U.S. 375, 390 n.30 (1983); Dirks v. SEC, 463 U.S. 646, 651, 660 (1983); Chiarella v. United States, 445 U.S. 222, 230 n.12 (1980); SEC v. Obus, 693 F.3d 276, 286 (2d Cir. 2012); SEC v. Blavin, 760 F.2d 706, 711 (6th Cir. 1985); Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1023 (6th Cir. 1979); SEC v. Musella, 678 F. Supp. 1060, 1062-1063 (S.D.N.Y. 1988). See also 3d Cir. Model (criminal) § 4.31 (consciousness of guilt); Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1069 (3d Cir. 1996) ("Resort to a pretextual explanation is, like flight from the scene of a crime, evidence indicating consciousness of guilt, which is, of course, evidence of illegal conduct." (quoting Binder v. Long Island Lighting Co., 57 F.3d 193, 200 (2d Cir. 1995)).

## FINAL INSTRUCTION NO. 16 – INSTRUMENTALITY OF INTERSTATE COMMERCE

The fifth element that the SEC must prove by a preponderance of the evidence is that Bonan Huang and Nan Huang knowingly used, or caused to be used, any instrumentalities of interstate commerce which includes the facilities of a national securities exchange in furtherance of the scheme to defraud or fraudulent conduct.

The term instrumentalities of interstate commerce means instruments, devices, and means of conducting trade, commerce, transportation, or communication among any two states. Instrumentalities of interstate commerce include the use purely within one state of a telephone or any other instrument used to conduct interstate communication, such as the internet.

The New York Stock Exchange, National Association of Securities Dealers' Automated Quotation System, known as NASDAQ, and the Philadelphia Stock Exchange are national securities exchanges. The phrase facilities of a national securities exchange include any property maintained or services provided by the New York Stock Exchange, NASDAQ, or the Philadelphia Stock Exchange. It is not necessary that a defendant be directly or personally involved in any use of any instrumentality of interstate commerce, or any facilities or a national securities exchange. If Bonan Huang and Nan Huang took steps or engaged in conduct which he knew or could reasonably foresee would naturally and probably result in the use of any facilities of a national securities exchange, then you may find that he caused an instrumentality of interstate commerce or any facilities of a national securities exchange to be used.

When one does an act with the knowledge that the use of interstate means of communication or any facilities of a national securities exchange will follow in the ordinary course of business or where such use can reasonably be foreseen, even though not actually intended, then it causes such means to be used. It is enough if you find that Bonan Huang and

Nan Huang, by their acts, directly or indirectly, initiated the steps or aided, abetted, counseled or

induced others to initiate steps that resulted in a chain of cause and effect resulting in the use of

instrumentality of interstate commerce or the facilities of a national securities exchange.

---

Adapted from United States v. McGee, Case No. 12-236 (E.D. Pa.), Jury Instructions (Tr. 11/15/12 at 73-75); United States v. MacEwan, 445 F.3d 237, 244 (3d Cir. 2006) (internet satisfies interstate commerce requirement).

**FINAL INSTRUCTION NO. 17 – BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE**

This is a civil case.  The SEC is the party that brought this lawsuit.  Bonan Huang and Nan Huang are the parties against whom the lawsuit was filed.  The SEC has the burden of proving its case by what is called the preponderance of the evidence.  That means the SEC has to prove to you, in light of all the evidence, that what it claims is more likely so than not so.  To say it differently: if you were to put the evidence favorable to the SEC and the evidence favorable to Bonan Huang and Nan Huang on opposite sides of the scales, the SEC would have to make the scales tip somewhat on its side.  If the SEC fails to meet this burden, the verdict must be for Bonan Huang and Nan Huang.  If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard of proof and it applies only to criminal cases.  It does not apply in civil cases such as this.  So you should put it out of your mind.

---

3d Cir. Model (civil) § 1.10.

## FINAL INSTRUCTION NO. 18 — DELIBERATIONS

When you retire to the jury room to deliberate, you may take with you [these instructions] [your notes] [and] the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you

change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case.  During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a cell phone, smart phone [like Blackberries or iPhones], or computer of any kind; the internet, any internet service, or any text or instant messaging service [like Twitter]; or any internet chat room, blog, website, or social networking service [such as Facebook, MySpace, LinkedIn, or YouTube], to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that a certain number is voting one way or another.   Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a

jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

---

3d Cir. Model (civil) § 3.1.

Plaintiff Securities and Exchange Commission respectfully requests that the Court use the above proposed jury instructions.

Respectfully Submitted,

/s/ Christopher R. Kelly
David L. Axelrod
Christopher R. Kelly

Attorneys for Plaintiff:

SECURITIES AND EXCHANGE
COMMISSION
Philadelphia Regional Office
One Penn Center
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

Dated: November 12, 2015