## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION,

        **Plaintiff,**

        **v.**

BONAN HUANG, et al.,

        **Defendants.**

**Case No. 2:15-cv-00269-MAK**

### PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE
### TO PRECLUDE DEFENDANTS' EXPERT TESTIMONY THAT IS
### IRRELEVANT, UNFAIRLY PREJUDICIAL, AND OTHERWISE INADMISSIBLE

Defendants' expert testimony is irrelevant, unfairly prejudicial, and otherwise

inadmissible.  For the reasons herein, this testimony should be excluded.

Defendants' expert, Dr. Torben Voetmann, conducted two different analyses (correlation

and regression) through which he purportedly assessed whether quarterly company revenue

information or the revenue data defendants stole could be used to predict stock price movement.

Dr. Voetmann found that neither quarterly company revenue information nor the revenue data

defendants stole could be used to predict stock price movement, and uses these results to criticize

the Commission's expert's opinion and analyses.  0207a; 0215-0217a; 0221-0224a; 0240-0250a;

0255-0256a.  Dr. Voetmann's analysis is fatally flawed, however, in that he fails to take into

consideration an interim step that both the Commission and Dr. Voetmann agree is essential for

purposes of predicting stock movement.

Specifically, Dr. Voetmann did not consider, as defendants did, and as one must, how

company revenues (and predictions of revenues from the stolen data) compared to analyst

expectations.[1]  0207a; 0215-0217a; 0221-0224a; 0240-0250a; 0255-0256a; 0273a:18-0275a:3.

See also 0274a:14-17 (where Voetmann explained: "Because you have to look at whether the

market understood why it increased in their revenues from one quarter to the next and the market

may have already factored in that increase.").  The importance of this step in predicting stock

price movement is simple: if it appeared that sales were going to beat analyst expectations, one

would expect an increase in stock price.  Conversely, if it appeared that sales were going to

"miss" analyst expectations, one would expect a decrease in stock price.  As Dr. Voetmann and

the Commission's experts agree, without knowing what analysts were expecting revenue to be in

that quarter, it is much more difficult to predict how a company's sales data for a particular

quarter might impact stock price.[2]

Because of this fundamental error (or  Voetmann's intentional omission), Dr.

Voetmann's analyses have no bearing on this case.  His analyses do not resemble either

defendants' misconduct (the evidence shows that they routinely compared aggregated sales data

to analyst expectations), nor do they serve to rebut Mr. Graham, who performed a completely

different analysis to determine whether Capital One's data was predictive of reported revenue

(not stock price movement).  As such, if Dr. Voetmann were permitted to tender his opinion in

---

[1] Specifically, Dr. Voetmann testifies:

> In order to measure an impact on the stock, my expectation is that you would
> compare that release of earnings X to . . . consensus estimate by analysts and if
> they are in line with expectations of analysts, I would have an expectation that
> there may not be a price response.  If on the other hand, they surprise the market
> by improving earnings above expectations, you might see a positive price impact
> likewise if they are less than expectations, you might see a decline in price
> impact.

0273a:22-0274a:7.

[2] Dr. Voetmann also could have compared the quarterly revenue amount as predicted by the
Capital One data with what the market expected, but did not do so in either of his analyses.
0207a; 0215-0217a; 0221-0224a; 0240-0250a; 0255-0256a.

this matter, it would be wholly irrelevant, and would serve no purpose but to confuse the jury

and prejudice the Commission.

**ARGUMENT**

Dr. Voetmann's expected testimony as set forth above is inadmissible because:  (1) it is

not relevant to the issues in this case; (2) is unfairly prejudicial because it would mislead the

jury, and, at the very least, confuse the issues; and (3) is otherwise inadmissible under Federal

Rule of Evidence ("Rule") 702.  United States v. Schiff, 538 F. Supp. 2d 818, 833 (D.N.J. 2008)

("[A]n expert's testimony, like all other testimony, must be relevant to the matter at hand

pursuant to FRE 401, and more probative than prejudicial or confusing pursuant to FRE 403.").

**I.     DR. VOETMANN'S EXPECTED TESTIMONY SHOULD BE EXCLUDED PURSUANT TO FEDERAL RULES OF EVIDENCE 401 AND 402.**

Pursuant to Rule 401, "[e]vidence is relevant if:  (a) it has any tendency to make a fact

more or less probable than it would be without the evidence; and (b) the fact is of consequence in

determining the action."  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

Here, the specified expected testimony is not relevant.  As explained above, the fact that

the results from Dr. Voetmann analyses do not show a statistically significant relationship

between the variables he used and stock price returns is of no moment.  Through his own

testimony, Dr. Voetmann makes abundantly clear that one would only expect a change in stock

price if he or she were to compare actual reported revenues with the consensus analyst revenue

expectations.  0273a:18-0275a:3.  None of Dr. Voetmann's analyses examines this.

Accordingly, the testimony and exhibits based on these analyses certainly do not have "any

tendency to make a fact more or less probable than it would be without the evidence."  Fed. R.

Evid. 401.  Nor does the fact that Dr. Voetmann found no statistically significant relationship

between variables where no one would expect to find such a relationship "of any consequence in determining the action."  Id.

Quite simply, Dr. Voetmann should not be permitted to testify substantively about the results of his analyses when they are meaningless.  The proffered testimony and exhibits should be excluded.  Inline Connection Corp. v. AOL Time Warner Inc., 470 F. Supp. 2d 424, 433-34 (D. Del. 2007) (granting motion in limine and precluding expert testimony based on Rules 401 and 402).

## II.      DR. VOETMANN'S EXPECTED TESTIMONY SHOULD BE EXCLUDED PURSUANT TO FEDERAL RULE OF EVIDENCE 403.

Even assuming that Dr. Voetmann's expected testimony has some probative value (it does not), it should still be excluded because that value is outweighed by the undue prejudice its admission would create.  Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  The Supreme Court has acknowledged that courts need to be especially cautious in applying Rule 403 to expert witnesses:

> Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.

Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993) (quoting Hon. Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631 (1991)).

The undue prejudice of Dr. Voetmann's expected testimony substantially outweighs any probative value because it would confuse and mislead the jury.  As is clear from Dr. Voetmann's report, the Commission expects Dr. Voetmann to testify regarding his correlation analyses:

> Overall, these results demonstrate a lack of a significant relationship between the transaction data and returns, a more relevant proxy for the market impact of information.  Therefore, Mr. Graham's correlation analysis neither proves a predictive relationship between transaction data and aggregate revenues, nor does it establish by an economically reliable methodology that the transaction data was material to a reasonable investor.

0217a.

Similarly, in regard to his regression analyses, the Commission expects Dr. Voetmann  to testify that:  (1) his "results contradict Mr. Graham's findings completely and demonstrate that his methodology and conclusions are not economically reliable," 0273a; (2) the regression "shows that the transaction data forecast variable does not have any significant incremental explanatory power for abnormal returns, and neither, once again, do analysts expectations," 0223-24a; and (3) "Mr. Graham's regression analysis does not establish by an economically reliable methodology that the transaction data would have been material to a reasonable investor beyond the mix of information already available in the market."  0224a.

As explained above, however, the fact that the results from Dr. Voetmann's correlation and regression analyses do not show a statistically significant relationship between the variables he used and stock price returns is beside the point.  Those results are to be expected.  One would only be able to predict a change in stock price if he or she were to compare actual reported revenues with the consensus analyst revenue expectations.  0273a:18-0275a:3.  Because Dr. Voetmann's analyses do not test whether the difference between actual reported revenues and consensus analyst expectations is predictive of stock price movement, 0207a; 0215-0217a; 0221-0224a; 0240-0250a; 0255-0256a, Dr. Voetmann's testimony will mislead the jury into thinking

that the results of correlation and regression analyses call into question Mr. Graham's testimony

and analyses when they do not.  It will also mislead the jury into thinking that these results call

into question the materiality of the transaction data when they do not.

Dr. Voetmann could have run correlation and regression analyses determining that there

was no statistically significant relationship between victories by his favorite sports team and

reported company quarterly revenue, and the results would be the same (statistically

insignificance) and would have the same probative value (none) for the jury.  But in this

example, it would be easier for the jury to comprehend why these results are meaningless.  Dr.

Voetmann's use of revenue and the Capital One transaction data—which are aspects of this

case—as variables in his analyses without appropriately factoring in consensus analysts'

expectations make his testimony and exhibits all the more misleading to a jury.

Accordingly, Dr. Voetmann's expected testimony should be precluded.  Dedicated

Logistics, Inc. v. Pennsylvania Power Co., Civ. No. 11–1153, 2015 WL 3385885, at *3 (granting

motion in limine and precluding expert testimony based on Rule 403).

## III.     DR. VOETMANN'S EXPECTED TESTIMONY SHOULD BE EXCLUDED PURSUANT TO FEDERAL RULE OF EVIDENCE 702.

Although the Court need not reach this issue because Dr. Voetmann's proffered

testimony, analyses, and opinions should be precluded under Rules 401, 402, and 403, they

similarly are not admissible under Rule 702.  Dr. Voetmann attempts to use his correlation and

regression analyses to suggest that release of the revenue information had no price impact, and

therefore was not material information.  As the Third Circuit recognized in Schiff, however, "[i]f

a company event unrelated to the wholesaler inventory issue, but simultaneously announced,

triggered the stock drop, then the expert's testimony that viewed the announcement as a whole

would not be probative of materiality (i.e., it would fail to fit)."  602 F.3d 152, 174 (3d Cir. 2010).

Dr. Voetmann does not factor out any confounding events in his analyses.  0365a:12-13 (". . . any other company specific piece of information was not factored out . . . .").  Therefore, as in Schiff, Dr. Voetmann's proposed testimony, analyses, and exhibits are not probative of materiality and should be excluded.  602 F.3d at 174 (affirming preclusion of proffered expert testimony concerning price impact when expert failed to factor out confounding events in analysis).  "[T]he Court, as the 'gatekeeper' for expert testimony, has a duty to screen expert opinion testimony for relevance and reliability." Daddio v. A.I. DuPoint Hosp. for Children of the Nemours Foundation, 650 F. Supp. 2d 387, 402 (2009).

In the event the Court disagrees with the Commission's analysis with respect to Rules 401, 402, and 403, this Court should alternatively exclude Dr. Voetmann's proposed testimony, analyses, and exhibits as set forth herein are neither relevant nor reliable under Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Daddio, 650 F. Supp. 2d at 402 (granting motion to preclude expert testimony under Rule 702 notwithstanding arguments that objection was waived for not raising it in Daubert motion).

## **CONCLUSION**

For the foregoing reasons, the Commission's motion in limine should be granted.


Dated: November 20, 2015                                    Respectfully Submitted,


                                                            /s/ Christopher R. Kelly
                                                            David L. Axelrod
                                                            Christopher R. Kelly

                                                            Attorneys for Plaintiff:

                                                            SECURITIES AND EXCHANGE
                                                            COMMISSION
                                                            Philadelphia Regional Office
                                                            One Penn Center
                                                            1617 JFK Blvd., Suite 520
                                                            Philadelphia, PA 19103