IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>v.<br><br>BONAN HUANG, et al.<br><br>      Defendants. | Case No. 2:15-cv-00269-MAK |

**PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION'S PRETRIAL MEMORANDUM**

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits the following pretrial memorandum, in accordance with this Court's September 9, 2015 and November 9, 2015 Scheduling Orders, the Court's Policies and Procedures, and Local Rule of Civil Procedure 16.1(c).

### I.    NATURE OF THE ACTION

The Securities and Exchange Commission filed this insider trading action against defendants Bonan Huang and Nan Huang pursuant to Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### II.    STATEMENT OF THE CASE

This enforcement action involves insider trading by defendants Bonan Huang and Nan Huang. From at least January 2012 to January 16, 2015, defendants Bonan Huang and Nan Huang were employed by Capital One as Senior Data Analysts. Bonan Huang was responsible for analyzing potential fraudulent credit card transactions, and Nan Huang was responsible for providing data used in the evaluation of Capital One associates' job performance.

As employees of Capital One's Fraud Decision Support Services department, Bonan Huang and Nan Huang had access to Capital One's database of credit card transactional data, referred to as the Teradata Database Management System ("Teradata"). Among other things, Teradata held data concerning individual credit card transactions and authorizations at each merchant accepting Capital One credit cards. The aggregated credit card transaction data stored in Teradata was Capital One's proprietary, nonpublic information that was supposed to be used solely for Capital One's internal purposes, such as resolving fraud inquiries or billing issues.

Defendants repeatedly stole merchant credit card revenue data from Teradata to analyze and use for their personal stock trading. From at least February 2012 through January 2015, defendants downloaded aggregated Capital One credit card revenue data from Teradata for numerous publicly-traded consumer retail companies, including Chipotle restaurants, Macy's department stores, and luxury retailer Coach. Indeed, in 2014 alone, Bonan Huang ran a total of at least 12,069 searches for credit card transaction and authorization information on specific merchants, and Nan Huang ran a total of at least 3,173 searches for such information. In comparison, all of the more than 2,000 other employees of Capital One with access to Teradata collectively ran a total of 3,811 such searches during that same time period.

Defendants' conduct violated Capital One's policies. Defendants had an obligation not to use Capital One's information or computing equipment for personal gain. Under Capital One's Code of Business Conduct and Ethics ("Code of Conduct"), defendants were explicitly warned: "All nonpublic confidential and proprietary business information . . . can be used only for Capital One's business purposes or legally authorized purposes." Similarly, Capital One's End User Responsibilities and Acceptable Use Standard directed: "Use all computing assets primarily for business purposes. Ensure that any personal use does not interfere with normal business

activities, involve any illegal or illicit behaviors, associate with any for-profit outside business activity, involve solicitation, or impact the Capital One brand."

Defendants' repeated downloading of Capital One data for their personal use violated Capital One's policies.  While defendants had access to Teradata as part of their employment, they had no business reason to conduct these types of searches and download Capital One's data in this way.

The undisputed facts demonstrate that defendants used Capital One's credit card revenue data to trade securities.  Defendants' access to and theft of this data drove their investment strategy.  They spent countless hours accessing Teradata, compiling spreadsheets, and conducting analysis by aggregating and evaluating Capital One's proprietary data to determine what securities would be profitable for them to trade.  In effect, the defendants used the stolen data to calculate the total revenue that would be reported by the company and compare it with published predictions.

Between February 2012 and January 2015, defendants placed thousands of trades relating to 171 companies for which they searched for and downloaded merchant-specific information from Teradata.  Defendants executed these trades over the internet from Virginia, using brokers located in Illinois and other states.  Defendants' theft of Capital One's data followed a regular pattern.  Defendants searched Teradata for merchant revenue data and then traded in securities of those companies.  To leverage the information advantage defendants gained from the stolen data they primarily traded stock options.  A stock option, commonly referred to as an "option," gives its holder the option to buy or sell shares of an underlying stock at a specified price (the "strike" price) at a later date.  Options are generally sold in "contracts," which give the option holder the opportunity to buy or sell 100 shares of an underlying stock.  Trading options are generally

perceived as a riskier trading tool than directly buying or selling shares of stock because if the option does not go above a strike price (for a call) or below the strike price (for a put) before it expires, the option has no value.

Defendants' trading activities were not only extensive, but also extraordinarily profitable. From January 2012 to December 2014, Bonan Huang turned an initial balance of $11,343 into $1,712,692 (his ending balance plus net withdrawals), and Nan Huang turned an initial balance of $11,459 into $1,492,970 (his ending balance plus net withdrawals). Accordingly, during this time, Bonan Huang generated a three-year return of 14,999%, or 432% per year; and Nan Huang generated a three-year return of 12,929%, or 407% per year. Defendants' trading success far outpaced commonly-viewed indices and the best hedge funds in the United States. Defendants' three-year trading returns vastly outperformed the S&P 500 index (64% three-year return), the consumer discretionary sector index (93% three-year return), and the median hedge fund return (24.3% three-year return). Indeed, securities industry professionals who are paid extremely well to make money in the stock market could not touch the astronomical returns of the Capital One fraud analyst defendants.

Beginning in December 2014, Capital One began investigating defendants' unauthorized use of Capital One's data and concluded that defendants violated the Code of Conduct by repeatedly downloading Capital One's merchant credit card revenue data for their own personal use. Nan Huang had no legitimate work-related reason to search for any merchant-related credit card revenue information, and Bonan Huang had no legitimate work-related reason to search for merchant specific information in the manner and scope in which he was. Accordingly, on January 16, 2015, defendants were fired for cause and directed to turn in their work-issued computers and smartphones.

On January 16, 2015—the same day Capital One fired defendants—Nan Huang booked a one-way ticket from Dulles Airport to Beijing, and left for China the next day.  On January 22, 2015—the day Bonan Huang was served with the Complaint—he booked a one-way ticket from Dulles Airport to Beijing, and promptly left for China.  Both defendants have since refused to return to the United States to defend the case for fear of being arrested.  Defendants have asserted their Fifth Amendment right in response to all discovery (including to producing certain documents).

### III.   ESTIMATED DAYS OF TRIAL

The Commission estimates that it will take approximately three trial days to present its case.

### IV.   WITNESSES[1]

The Commission expects to present the following witnesses who will testify in accordance with the summaries provided.

**A.   Expert Witnesses**

1. **Steven Graham**
   Financial Economist
   Office of Litigation Economics
   Division of Economic and Risk Analysis
   U.S. Securities and Exchange Commission
   Burnett Plaza
   801 Cherry Street
   Suite 1900, Unit 18
   Fort Worth, TX 76102

   Mr. Graham will testify regarding whether a reasonable investor would consider Capital One's transaction information to be important when making a decision to buy or sell securities.  In forming his opinion that it was, Mr.

---

[1]   In addition to the witnesses identified below, and the documents identified in the Commission's exhibit list, the Commission reserves the right to call any witness, or to offer any document, identified by defendants or in their pretrial memoranda or exhibit lists, as well as any document or witness necessary for rebuttal or impeachment.

Graham performed analyses that demonstrated that: (1) the Company transaction information that defendants obtained from Teradata is statistically significantly correlated with and predictive of actual reported sales for 132 companies; (2) the Company transaction information that defendants obtained from Teradata is statistically significantly correlated with and predictive of revenue surprises; (3) defendants were able to generate exceptionally high rates of returns on their investments; and (4) a company's revenue is a commonly-discussed performance metric in company press releases and analyst reports. Mr. Graham also will testify regarding the contents of the files on defendants' work-issued computers, including, for instance, details regarding the instances in which defendants' improperly obtained Capital One's data, the other types of securities-trading-related data on defendants' computers, and the analyses defendants performed on the Capital One data.

2. **Matthew D. Cain, Ph. D**
   Financial Economist
   Office of Litigation Economics
   Division of Economic and Risk Analysis
   U.S. Securities and Exchange Commission
   100 F Street, NE
   Washington, DC 20549

   Dr. Cain will testify regarding the ill-gotten gains that defendants obtained through their trading on Capital One's transaction data. Dr. Cain found that Bonan Huang obtained $2,294,696 in ill-gotten gains, and Nan Huang obtained $4,403,545 in ill-gotten gains. Dr. Cain also will testify regarding defendants' trading activity, including, for instance, the number of trades, the number of earnings announcements traded around, the duration of trades, and the number of companies traded in.

B. **Fact Witnesses**

1. **Dwight C. Lee Brooks**
   Senior Director, Data Analytics
   Capital One Services, LLC
   c/o Timothy P. Peterson
   Murphy & McGonigle,
     A Professional Corporation
   555 13th Street, N.W.
   Suite 410 West
   Washington, DC 20004

   Mr. Brooks will testify regarding: (1) defendants' employment with Capital One; (2) defendants' duties and responsibilities to Capital One; (3) the information on Teradata; (4) defendants' access to Teradata; (5) defendants' searches and improper use of Capital One's data; (6) the nonpublic nature of

Capital One's data on Teradata; (7) defendants' breach of Capital One's policies and resulting termination for cause; and (8) general information about Capital One.

2. **Shanna Hajdun Blair**
   Computer Forensic Analyst
   Division of Enforcement - ITFL
   U.S. Securities and Exchange Commission
   100 F Street, N.E.
   Washington, DC 20549-4041

   In the event necessary, Ms. Hajdun will provide foundational and other evidentiary bases for admitting into evidence certain documents found on defendants' work-issued computers.

3. **Dustin E. Ruta**
   Enforcement Staff Accountant
   U.S. Securities and Exchange Commission
   1617 JFK Boulevard, Suite 520
   Philadelphia, PA 19103

   Mr. Ruta will testify regarding: (1) the manner in which defendants were able to make money through their insider trading scheme; (2) the Commission's discovery requests served in this action and defendants' discovery responses, answer, and initial disclosures; and (3) the fact that defendants trades were accomplished via interstate commerce.

4. **Custodian Witnesses**: In the event necessary, the Commission intends to call custodian witnesses to provide foundational and other evidentiary bases for admitting into evidence certain documents from the following entities:

   a. **Apex Clearing**
   b. **Bank of America**
   c. **Cor Clearing, LLC**
   d. **E*Trade Financial**
   e. **Interactive Brokers**
   f. **OptionsHouse**
   g. **Scottrade, Inc.**
   h. **TradeStation Securities, Inc.**
   i. **United Airlines**

C. **Testimony by Deposition**

The Commission does not intend to offer any affirmative testimony by deposition.

## V.    EXHIBITS

A schedule of the Commission's exhibit list is attached hereto as Exhibit A.  Although the Commission has not yet received defendants' objections to Plaintiff's exhibits, the Commission experts to receive them by Wednesday, November 25, 2015, after which the Commission will submit the contested exhibits, if any, to the Court.

In addition to the exhibits on this list, the Commission intends to present certain summary exhibits, pursuant to Rule 1006 of the Federal Rules of Evidence.  As soon as these summaries are completed the Commission will provide them to defendants.

## VI.    STIPULATIONS

### A.    Admitting certain documents as Business Records

The Commission has prepared and sent to defendants a proposed stipulation regarding the admissibility of documents, such as the trading records and airplane records, as business records. Ex. B.  To the extent defendants agree with the stipulation, it will save time and streamline the presentation of evidence.

### B.   Fact Stipulations

The Commission has prepared and sent to defendants a proposed stipulation regarding certain facts, such as chain of evidence for certain exhibits.  Ex. C.  To the extent, defendants agree with the stipulation, it will save time and streamline the presentation of evidence.

## VII.     RELIEF

The Commission respectfully requests that, should the jury find in favor of the Commission, the Court set a briefing schedule to determine the proper amount of disgorgement and penalty.  <u>SEC v. Maxxon, Inc.</u>, 465 F.3d 1174, 1179 (10th Cir. 2006); <u>SEC v. Koenig</u>, 532 F. Supp. 2d 987, 993-94 (N.D. Ill. 2007), <u>aff'd</u> 557 F.3d 736 (7th Cir. 2009); <u>SEC v. Lipson</u>, 129 F. Supp.2d 1148 (N.D. Ill. 2001).

### A.     Monetary Damages Claimed

Although not technically damages, the Commission seeks $2,294,696 from Bonan Huang in disgorgement.  This represents Bonan Huang's ill-gotten gains from the securities fraud claim plead in the Complaint.  The Commission seeks $4,403,545 from Nan Huang in disgorgement.  This represents Nan Huang's ill-gotten gains from the securities fraud claim plead in the Complaint.  From each defendant, the Commission also seeks prejudgment interest on the amount of disgorgement, and a civil penalty, pursuant to 15 U.S.C. § 78u-1.

### B.     Injunctive Relief

The Commission seeks a permanent injunction enjoining defendants from future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## VIII. DEFENDANTS' OUTSTANDING ISSUES

Defendants raised two outstanding issues in their Pretrial Memorandum that require a response.

First, defendants contend that the Commission has not responded to defendants' interrogatories served on September 25, 2015. In fact, the Commission served its objections and responses to defendants' interrogatories on October 28, 2015 on the grounds that the discovery requests were not in compliance with the Court's October 1, 2015 Amended Scheduling Order. See Ex. D. At no point have defendants raised any issue with the Commission's objections and responses.

Second, defendants assert that they have been unsuccessful in accessing the forensic files of defendant's work-issued computers, and that the Commission was unable to explain to defendants how to view the data. Until today, however, the last the Commission heard from defendants about this issue was on October 22, 2015, at which point defense counsel told the Commission that defendants were successfully able to gain access to the files. See Ex. E.

                                  Respectfully submitted,

                                  /s/ Christopher R. Kelly
                                  David L. Axelrod
                                  Christopher R. Kelly

                                  Attorneys for Plaintiff:

                                  SECURITIES AND EXCHANGE
                                  COMMISSION
                                  Philadelphia Regional Office
                                  One Penn Center
                                  1617 JFK Blvd., Suite 520
                                  Philadelphia, PA 19103
                                  Telephone: (215) 597-3100

Dated: November 23, 2015